**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 18-50018 |
| ASCO LIQUIDATING COMPANY, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DISCLOSURE STATEMENT TO JOINT PLAN OF LIQUIDATION**
**PROPOSED BY ASCO LIQUIDATING COMPANY AND THE COMMITTEE OF**
**UNSECURED CREDITORS FILED JULY 26, 2018**

**Submitted By:**

/s/Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
James E. Vaughan, NCSB #12669
*Attorneys for ASCO Liquidating Company*

OF COUNSEL:

BLANCO TACKABERY
& MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
E-mail: asr@blancolaw.com
        jev@blancolaw.com

BTM:705211v7

# TABLE OF CONTENTS

**Page**

I.     DEFINITIONS ................................................................................. 1

II.    INTRODUCTION .......................................................................... 1

    A.    Purpose of This Disclosure Statement ............................................ 1

    B.    Disclosure Statement Approval; Deadlines for Voting and Objecting to Plan; Date of Plan Confirmation Hearing ................................... 2

        1.    Time and Place of the Hearing on Adequacy of the Disclosure Statement ............................................................... 2

        2.    Deadline For Voting to Accept or Reject the Plan ..................... 3

        3.    Deadline For Objecting to the Confirmation of the Plan ................... 4

        4.    Time and Place of the Confirmation Hearing ........................... 4

        5.    Identity of Person to Contact for More Information .......................... 5

    C.    Disclaimer ................................................................................. 5

    D.    Plan Proponents' Recommendation ................................................ 7

III.    BACKGROUND ........................................................................... 7

    A.    Description and History of Debtor's Business ................................. 7

    B.    Insiders of Debtor ....................................................................... 9

    C.    Management of Debtor Before and During the Bankruptcy ...................... 11

    D.    Debtor's Prepetition Indebtedness ............................................... 11

        1.    Wells Fargo Prepetition Debt .............................................. 11

        2.    AC Delco Distribution Agreement and General Motors Credit Account ................................................................. 11

        3.    Motorcraft Warehouse Distributor Sales Agreement and Ford Credit Account ....................................................... 12

        4.    Trade Debt ................................................................... 12

    E.    Events Leading to Chapter 11 Filing ............................................ 12

        1.    Competition ................................................................... 12

        2.    Declining Franchised Dealer Sales ....................................... 12

        3.    Pressure from Trade Vendors ............................................. 13

# TABLE OF CONTENTS
(continued)

**Page**

|   |   |   |   |   |
|---|---|---|---|---|
|  | | 4. | Inventory Valuation | 13 |
| IV. | | | THE CHAPTER 11 CASE | 14 |
|  | A. | | Significant Events During the Bankruptcy Case | 14 |
|  |  | 1. | Commencement of the Chapter 11 Case | 14 |
|  |  | 2. | First Day Relief | 14 |
|  |  | 3. | DIP Financing and Use of Cash Collateral | 15 |
|  |  | 4. | Employment of Professionals | 15 |
|  |  | 5. | Appointment of Committee and Retention of Committee Counsel | 16 |
|  |  | 6. | Auction Sale of Substantially All Debtor's Assets | 16 |
|  |  | 7. | Potential Adversary Proceedings and Other Post-Confirmation Causes of Action | 19 |
|  |  | 8. | General Motors Claim Objection | 20 |
|  |  | 9. | Claim Bar Dates | 20 |
|  |  | 10. | 401(k) Plan Termination | 21 |
|  |  | 11. | Health Care Plan Termination | 21 |
|  | B. | | Current and Historical Financial Conditions | 22 |
| V. | | | SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND INTERESTS | 22 |
|  | A. | | Introduction | 22 |
|  | B. | | Classification of Claims and Interest | 22 |
|  |  | 1. | Substantial Similarity of Claims | 23 |
|  |  | 2. | Impairment of Claims | 23 |
|  | C. | | Unclassified Claims | 23 |
|  | D. | | Classified Claims and Equity Interests | 26 |
|  |  | 1. | Class 1:  Ford Secured Claim | 26 |
|  |  | 2. | Class 2:  Convenience Claims | 27 |
|  |  | 3. | Class 3:  General Unsecured Claims | 27 |

# TABLE OF CONTENTS
(continued)

**Page**

    4.     Class 4:  Equity Interests ....................................................... 27

E.    Means of Implementing the Plan .................................................... 29

    1.     Creation of the Liquidating Trust ..................................... 29

    2.     Treatment of the Liquidating Trust for Federal Income Tax Purposes ........................................................................... 30

    3.     Termination of the Committee and Creation of Liquidating Trust Committee ................................................................ 31

    4.     Operation of the Liquidating Trust Committee ................ 32

    5.     Rights and Duties of the Liquidating Trust Committee ................. 33

    6.     Role of the Liquidating Trust Committee .......................... 33

    7.     General Powers of the Liquidating Trustee ....................... 34

    8.     Obligations of the Liquidating Trustee ............................. 37

    9.     Resignation, Removal of Liquidating Trustee and Appointment of Successor .............................................................. 37

    10.    Appointment of Successor Liquidating Trustee ................ 38

    11.    Settlement Authority ......................................................... 38

    12.    Bonding of Liquidating Trustee ....................................... 39

    13.    Post-Confirmation Operating Reports .............................. 39

    14.    Dissolution of Debtor ....................................................... 39

    15.    Full and Final Satisfaction Against Debtor and Liquidating Trust ............................................................................. 39

    16.    Establishment of Liquidating Trust Expense Reserve and Disputed Claims Reserve .................................................. 40

    17.    Limitation on Liability ...................................................... 40

    18.    Reliance on Documents ..................................................... 42

    19.     Requirement of Undertaking .......................................... 42

    20.    Termination of the Liquidating Trust ............................... 42

F.    Risk Factors ................................................................................... 43

    1.     Certain Bankruptcy Considerations .................................. 43

    2.     Estimation of Claims ........................................................ 43

# TABLE OF CONTENTS
(continued)

**Page**

3.    Estimation of Distribution................................................ 44

G.    Claims Objections................................................ 44

H.    Executory Contracts and Unexpired Leases ................................ 45

I.    Tax Consequences of Plan................................................ 45

VI.    DISTRIBUTIONS UNDER THE PLAN................................................ 46

A.    Delivery of Distributions................................................ 46

B.    Transition of Distributions................................................ 47

C.    Manner of Payment................................................ 47

D.    Distributions to Holders of Unclassified Claims................................ 47

E.    Distributions to Holders of Claims in Classes 1 and 2 ................................ 48

F.    Distributions to Holders of Claims in Class 3................................ 48

G.    No Distributions to Holders of Claims in Classes 4 and 5................................ 48

H.    Distribution to the Disputed Claims Reserve ................................ 48

I.    Minimum Distributions and Rounding ................................ 49

J.    Right of Setoff and Recoupment ................................ 49

K.    Undeliverable Distributions................................................ 49

VII.    CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 50

A.    Parties Entitled to Vote................................................ 50

B.    Votes Necessary to Confirm the Plan under Section 1129(a ................................ 51

C.    Feasibility Standard................................................ 51

D.    Best Interest of Creditors Test................................................ 52

E.    Liquidation Analysis ................................................ 52

F.    Other Requirements of Section 1129(a ................................ 52

## TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | G. | "Cramdown" Under Section 1129(b | 53 |
| | | 1. Discriminate Unfairly | 53 |
| | | 2. Fair and Equitable Test | 53 |
| VIII. | | EFFECT OF CONFIRMATION OF PLAN | 54 |
| | A. | No Discharge of Debtor | 54 |
| | B. | Modification of Plan | 54 |
| | C. | Plan Injunction | 54 |
| | D. | Exculpation | 55 |
| | E. | Cancellation of Instruments and Agreements | 55 |
| | F. | Vesting of Assets | 55 |
| | G. | Final Decree | 56 |
| IX. | | ALTERNATIVES TO THE PLAN | 56 |
| X. | | CONCLUSION | 56 |

**YOUR RIGHTS MAY BE AFFECTED.   YOU SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.   THE BANKRUPTCY COURT IS REQUIRED TO MAKE A DETERMINATION OF THE ADEQUACY OF THIS DISCLOSURE STATEMENT AS CONTAINING INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE THE HOLDERS OF CLAIMS AND EQUITY INTERESTS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO ACCEPTANCE OR REJECTION OF THE PLAN.**

## I.     DEFINITIONS

Capitalized terms not defined in the Disclosure Statement shall have the meanings ascribed to them in the Plan.

## II.     INTRODUCTION

On January 8, 2018, Petition Date, ASCO Liquidating Company, formerly Auto Supply Company, Inc., the Debtor, commenced this Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of United States Bankruptcy Code, Case No. 18-50018, in United States Bankruptcy Court for the Middle District of North Carolina.   Since the Petition Date, Debtor has remained in possession of its assets and managed its business as a debtor-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.   On January 22, 2018, the Bankruptcy Administrator for the Middle District of North Carolina appointed an official committee of unsecured creditors, the Committee, pursuant to Section 1102 of the Bankruptcy Code.

This Disclosure Statement, including all exhibits attached hereto, as may be amended, supplemented or modified, has been filed with the Bankruptcy Court in the Chapter 11 Case.  This Disclosure Statement contains information about Debtor and describes the Joint Plan of Liquidation filed by Debtor and the Committee of Unsecured Creditors on July 26, 2018, the Plan.   Debtor together with the Committee are the Plan Proponents.  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.   This Disclosure Statement is intended to provide adequate information to known Holders of Claims and Equity Interests pursuant to Section 1125(f)(1) of the Bankruptcy Code.

[*On* _____, *2018, the Bankruptcy Court approved this Disclosure Statement as containing adequate information within the meaning of Section 1125(a) of the Bankruptcy Code.*]

### A.     Purpose of This Disclosure Statement

This Disclosure Statement describes Debtor's prepetition history and the factors that contributed to the decision to seek Chapter 11 protection, the

significant events that have occurred during the pendency of the Chapter 11 Case, and how the Plan proposes to treat Claims and Equity Interests (*i.e.*, what Holders of Claims and Equity Interests will receive if the Plan is confirmed). In addition, this Disclosure Statement discusses the Plan confirmation process and the voting procedures that Holders of Claims in Impaired Classes must follow for their votes to be counted, including information on who can vote on or object to the Plan. This Disclosure Statement describes what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan and the effect of confirmation of the Plan on Holders of Claims and Equity Interests. Finally, this Disclosure Statement explains why the Plan Proponents believes the Plan is feasible, and how the treatment of Claims or Equity Interests under the Plan compares to what Holders of such Claims or Equity Interests would receive under alternate liquidation scenarios other than the Plan.

Debtor provides this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to each Holder of a Claim or Equity Interest either scheduled by Debtor, or filed as a Proof of Claim in the Chapter 11 Case. Each Holder of a Claim or Equity Interest will receive a copy of this Disclosure Statement along with (i) a copy of the Plan; (ii) Order Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections, Combined with Notice of Hearing (the "Confirmation Hearing Order") setting forth the time and manner for submitting an Official Ballot to accept or reject the Plan, the date, time and place of the Confirmation Hearing to consider confirmation of the Plan, and the time for filing objections to the confirmation of the Plan; (iii) a letter from the Committee; and (iv) if entitled to vote on the Plan, an original Official Ballot and balloting instructions to be used in voting to accept or reject the Plan (collectively, the "Solicitation Package"). Debtor submits this Disclosure Statement in connection with the solicitation of votes to accept or reject the Plan.

The purpose of this Disclosure Statement is to provide to Holders of Claims and Equity Interests with such information as would enable a hypothetical, reasonable investor, typical of the Holders of Claims and Equity Interests being solicited, to make an informed judgment on the Plan. This Disclosure Statement is intended solely for that purpose and for the use of known Holders of Claims and Equity Interests, and may not be relied upon for any purpose other than to determine how to vote on the Plan.

### B.    Disclosure Statement Approval; Deadlines for Voting and Objecting to Plan; Date of Plan Confirmation Hearing

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which Plan Proponents will seek confirmation of the Plan.

1.    *Time and Place of the Hearing on Adequacy of the Disclosure Statement.* The Bankruptcy Court has scheduled a hearing to consider

the adequacy of this Disclosure Statement for [_____, *2018, at _____ _.M.*] prevailing Eastern Time at the United States Bankruptcy Court, 226 S. Liberty Street, Winston-Salem, North Carolina ("Disclosure Statement Hearing").   At the Disclosure Statement Hearing, Debtor will request that the Bankruptcy Court approve this Disclosure Statement as containing adequate information as required by Section 1125(b) of the Bankruptcy Code.  Adequate information is information sufficient to enable a hypothetical, reasonable investor, typical of the Holders of Claims being solicited, to make an informed judgment on the Plan.

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE PLAN.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN.**

2.      *Deadline For Voting to Accept or Reject the Plan.*   After approval of this Disclosure Statement, an Official Ballot for acceptance or rejection of the Plan will be sent to all Holders of Claims in the Solicitation Package.  All Holders of Claims are encouraged to exercise the right to vote to accept or reject the Plan upon receipt and review of the Solicitation Package.  Holders of Claims entitled to vote to accept or reject the Plan, must (i) complete the Official Ballot in accordance with the instructions set forth therewith and indicate a decision either to accept or reject the Plan in the boxes indicated on the face of the Official Ballot; (ii) make sure that the exact amount of the claim and the name of the Holder of the Claim is correctly identified in the Official Ballot; (iii) sign and date the Official Ballot and print or type the name of the person executing the Official Ballot on behalf of the Holder of a Claim; and (iv) return the original Official Ballot to Ashley S. Rusher, Counsel for Debtor, by regular mail to P.O. Drawer 25008, Winston-Salem, NC 27114-5008, or by overnight delivery to 110 S. Stratford Road, Suite 500, Winston-Salem, NC 27104 on or before the Voting Deadline (set forth below).  See **Section V(A)** below for a discussion of voting eligibility requirements.

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has established [*5:00 P.M. prevailing Eastern Time on* _____, *2018,*] as the Voting Deadline to return an original Official Ballot for acceptance or rejection of the Plan.  The original Official Ballot must be mailed so that it is actually received by Debtor's Counsel by the Voting Deadline.

**TO ENSURE THE VOTE IS COUNTED EACH HOLDER OF A CLAIM MUST TAKE CARE TO FOLLOW THE BALLOTING INSTRUCTIONS. A BALLOT WHICH IS NOT ON THE OFFICIAL BALLOT FORM WILL NOT BE COUNTED. A FACSIMILE OR ELECTRONIC COPY OF AN OFFICIAL BALLOT SENT TO DEBTOR'S COUNSEL WILL NOT BE COUNTED, ABSENT PRIOR WRITTEN CONSENT OF THE PLAN PROPONENTS. AN OFFICIAL BALLOT WHICH FAILS TO IDENTIFY THE HOLDER OF THE CLAIM WILL NOT BE COUNTED. AN OFFICIAL BALLOT WHICH FAILS TO IDENTIFY THE AMOUNT OF THE CLAIM WILL NOT BE COUNTED. AN OFFICIAL BALLOT WHICH FAILS TO INDICATE A VOTE FOR EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED. AN OFFICIAL BALLOT WHICH IS UNSIGNED, OR FOR WHICH THE PLAN PROPONENTS CANNOT IDENTIFY THE NAME OF THE PARTY EXECUTING THE OFFICIAL BALLOT WILL NOT BE COUNTED. AN OFFICIAL BALLOT RETURNED TO ANY PARTY OTHER THAN DEBTOR'S COUNSEL WILL NOT BE COUNTED. AN OFFICIAL BALLOT RETURNED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.**

3.     *Deadline For Objecting to the Confirmation of the Plan*.    The deadline for filing any objection to the Plan is [*5:00 P.M. prevailing Eastern Time on _____, 2018*,] as set forth in the Confirmation Hearing Order contained in the Solicitation Package. Objections to the Plan must be electronically filed with the Bankruptcy Court and served on (i) Counsel for Debtor, Ashley S. Rusher, Blanco Tackabery & Matamoros, P.A., P.O. Drawer 25008. Winston-Salem, NC 2711405008; (ii) Counsel for the Committee, Joseph M. Coleman, Kane Russell Coleman & Logan PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, TX  75201; the Bankruptcy Administrator, Robert E. Price, Jr., P.O. Box 1828, Greensboro, NC  27402, and other parties in interest who have requested service of papers filed in this Chapter 11 Case.

4.     *Time and Place of the Confirmation Hearing*.    Pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Bankruptcy Court has scheduled a Confirmation Hearing on the Plan. The date, time and place for the Confirmation Hearing is [_____, *2018, at _____ _.M.*] at the United States Bankruptcy Court, 226 S. Liberty Street, Winston-Salem, North Carolina  as set forth in the Confirmation Hearing Order contained in the Solicitation Package.

5.      *Identity of Person to Contact for More Information.*  Holders of Claims wanting additional information about the Plan should contact Counsel for Debtor, Ashley S. Rusher or James E. Vaughan, P.O. Drawer 25008, Winston-Salem, NC 27114-5008; Telephone: 336-293-9000, E-mail: asr@blancolaw.com and jev@blancolaw.com.

## C.    Disclaimer

HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  IF ANY CONFLICTS EXIST BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW OR RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11 OF THE BANKRUPTCY CODE.  THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBMITTED TO THE SECURITIES AND EXCHANGE COMMISSION ("SEC") NOR ANY STATE AUTHORITY FOR APPROVAL, AND NEITHER THE SEC NOR ANY STATE AUTHORITY HAS PASSED ON THE ACCURACY OF THE INFORMATION CONTAINED HEREIN.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

HOLDERS OF CLAIMS SHOULD BE AWARE THAT THE PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

THIS DISCLOSURE STATEMENT, THE PLAN, EACH EXHIBIT, AND THE STATEMENTS HEREIN AND THEREIN, CONSTITUTE AN OFFER TO COMPROMISE WITHIN THE MEANING OF RULE 410 OF THE FEDERAL RULES OF EVIDENCE, ARE MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND MAY NOT BE USED FOR ANY LITIGATION PURPOSES WHATSOEVER. ACCORDINGLY, NO STATEMENT IN THIS DISCLOSURE STATEMENT OR THE PLAN SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, WAIVER, OR RELEASE OF ANY CLAIM OR DEFENSE.   WITHOUT DEBTOR'S CONSENT, THIS DISCLOSURE STATEMENT IS NOT ADMISSIBLE IN

ANY NON-BANKRUPTCY PROCEEDING INVOLVING DEBTOR OR ANY OTHER PARTY.

THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN DEBTOR, EACH OF WHOM SHOULD CONSULT THEIR OWN ADVISORS AND ATTORNEYS.   IRS CIRCULAR 230 NOTICE: TO THE EXTENT THIS DISCLOSURE STATEMENT ADDRESSES ANY FEDERAL TAX ISSUES, THE INFORMATION IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, AND DOCUMENTS RELATED TO THE PLAN.  ALTHOUGH DEBTOR BELIEVES THAT THE SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, STATUTORY PROVISIONS, OR DOCUMENTS.  PLEASE CONTACT DEBTOR'S COUNSEL IF YOU WISH TO OBTAIN COPIES OF, OR HAVE ACCESS TO, RELEVANT DOCUMENTS OR OTHER INSTRUMENTS REFERENCED HEREIN.

FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY DEBTOR'S MANAGEMENT AND ITS PROFESSIONALS.  DEBTOR HAS ENDEAVORED TO BE ACCURATE IN THIS DISCLOSURE STATEMENT IN ALL MATERIAL RESPECTS. ALTHOUGH DEBTOR BELIEVES THAT THE CONTENTS OF THIS DISCLOSURE STATEMENT ARE COMPLETE AND ACCURATE, DEBTOR CANNOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY.

CERTAIN INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND FORECASTS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS.  THE INFORMATION HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND THUS HAS NOT BEEN DETERMINED TO BE PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

NO REPRESENTATIONS CONCERNING DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.   ANY OTHER REPRESENTATIONS OR INDUCEMENTS

**MADE BY ANY PERSON TO SECURE YOUR VOTE SHOULD NOT BE RELIED UPON.**

### D.    Plan Proponents' Recommendation

The Plan Proponents recommend Holders of Claims support the Plan and vote to accept the Plan.  It is the opinion of the Plan Proponents that the treatment of Claims under the Plan provides the greatest recovery for Holders of Claims than any other bankruptcy or non-bankruptcy alternative available to Debtor. Confirmation of the Plan is in the best interest of Debtor, its Estate and all Holders of Claims.

**BY THIS DISCLOSURE STATEMENT, PLAN PROPONENTS SOLICIT YOUR VOTE ACCEPTING THE PLAN, AND ASK THAT YOU RETURN YOUR OFFICIAL BALLOT NOTING YOUR ACCEPTANCE OF THE PLAN ON OR BEFORE THE VOTING DEADLINE**.

## III.   BACKGROUND

### A.    Description and History of Debtor's Business

Debtor is a corporation organized and existing under the laws of the State of North Carolina.  Its principal business was the supply of original equipment manufacturer automotive replacement parts ("OEM Parts") and aftermarket automotive replacement parts ("Aftermarket Parts") for passenger vehicles and light duty trucks to automotive repair professionals.  Its customers ranged from franchised automotive dealers, independent automotive dealers, repair shops, automotive fleets, government garage facilities, to the individual automobile enthusiast.  Boasting an inventory of over Three Thousand (3,000) part and Seventy-Five Thousand (75,000) SKU numbers, Debtor prided itself in delivering parts quickly to its customers from three (3) distribution centers, fourteen (14) retail store locations throughout North Carolina, and seven (7) battery trucks.

The company began as a family owned business founded in 1954 by Charles Key, Sr. and a partner.  By 1968 Charles Key, Sr. was the sole owner of the company which had grown to thirteen (13) stores and one distribution center.  This attracted the attention of Memphis-based parts company, Parts, Inc. and in 1981 Parts, Inc. acquired the company and a related entity called Key Parts, Inc.  In 1986, Charles A. Key, Jr. and Carla Key Luper and her husband R. Daniel Luper re-acquired the two parts stores located in Winston-Salem from Parts, Inc. and incorporated Auto Supply Company, Inc.  Operating again as a family-owned business, Debtor grew and concentrated its sales to independent installers and new car dealer markets.

Debtor maintained its headquarters and principal place of business in Winston-Salem, North Carolina.  Its business offices, primary distribution center,

and one retail store were located at 3740 N. Patterson Avenue, Winston-Salem, North Carolina ("Headquarters"). The other retail stores were located around the State of North Carolina as follows (together with the N. Patterson Avenue store location, the "Retail Stores"):

| Store Number | Location |
|---|---|
| Store #2 | 646 Michael Wylie Drive, Suite A_D Charlotte, NC  28217 |
| Store #3 | 1007 S. Marshall Street Winston-Salem, NC 27101 |
| Store #4 | 2008 Yonkers Road Raleigh, NC  27604 |
| Store #5 | 1926 W. Green Drive High Point, NC  27260 |
| Store #6 | 403 E. Bodenhamer Street Kernersville, NC  27284 |
| Store #9 | 1112 1st Avenue SW Hickory, NC  28602 |
| Store #10 | 2636 Lewisville Clemmons Road Clemmons, NC  27102 |
| Store #11 | 1032 Winston Street Greensboro, NC  27405 |
| Store #16 | 813 Merita Street Mount Airy, NC  27030 |
| Store #17 | 525 S. Church Street Burlington, NC  27215 |
| Store #22 | 2351 Carolina Beach Road Wilmington, NC  28401 |
| Store #25 | 6502 Windmill Way Wilmington, NC  28405 |
| Loop Road Auto Parts | 122 Yeargan Road Garner, NC  27529 |

Debtor provided centralized administrative support services to its Retail Stores and Distribution Centers from its Headquarters including, but not limited to, managing a centralized cash management system, cost accounting, logistics, human resources administration, and management and coordination of daily operation of

Debtor's business at the Retail Stores and Distribution Centers. Debtor maintained payroll and operating bank accounts, books and records in Winston-Salem, North Carolina.

Debtor does not own any real estate. It leased each of the Retail Stores and Distribution Centers from a third party landlord. Eleven locations were leased from various landlords who are not related to, nor affiliated with, Debtor in any manner. Four locations were leased from two affiliates of Debtor, Partland, LLC ("Partland") and Tuwella, LLC ("Tuwella").

As of the Petition Date, Debtor had approximately 131 full time employees, 146 part time employees and 32 seasonal employees. Debtor's employees were trained retail sales, marketing and automotive technicians who provide consistent and exceptional quality of customer care to Debtor's customers. All employees received either an established salary or were hourly wage earners.

## B.     Insiders of Debtor

"Insiders" are those persons and entities defined in Section 101(31) of the Bankruptcy Code. Debtor's insiders and their relationship to Debtor are set forth on the chart below. Insiders employed by Debtor continued to receive their regular monthly compensation, loan payments or rent payments during the two years preceding the bankruptcy filing except as follows: (i) payments to Charles A. Key, Jr. on a loan made to Debtor ceased on or about March, 2017; (ii) payments to R. Daniel Luper on a loan made to Debtor ceased on or about March, 2017; (iii) payments to Tuwella on a loan made to Debtor ceased on or about November, 2016; (iv) payments to R. Daniel Luper for stock redemption after his retirement ceased on or about October 31, 2015; (v) payments of rent to Partland ceased on or about February, 2017; (vi) payments of rent to Tuwella ceased on or about February, 2017. All payments from Debtor to an insider during the two years prior to the commencement of Debtor's bankruptcy case is disclosed on the chart below.

| Insider Name | Relationship to Debtor | Compensation Paid During Two Years Preceding Bankruptcy Filing |
|---|---|---|
| Charles A. Key, Jr. | President, Director, Shareholder | 2016: $201,789.00 <br> 2017: $197,442.00 |
| R. Daniel Luper | Vice President(Retired), Director, Shareholder | 2016: $7,317.00 <br> 2017: $5,499.00 |
| Karl M. Kapp | Chief Financial Officer, Secretary | 2016: $156,495.00 <br> 2017: $159,988.00 |
| Partland, LLC | Landlord under lease of Headquarters Facility | 2016: $190,476.00 |

| Insider Name | Relationship to Debtor | Compensation Paid During Two Years Preceding Bankruptcy Filing |
|---|---|---|
| | (owned by Charles Key, Jr., R. Daniel Luper and extended family members) | 2017:   $31,872.00 |
| Tuwella, LLC | Landlord under leases of three Retail Stores (owned by Charles Key, Jr., R. Daniel Luper and extended family members) | 2016:  $142,860.00<br>2017:   $31,350.00 |

During the pendency of this bankruptcy case Charles A. Key, Jr. and Karl M. Kapp received their regular monthly compensation and benefits.  Partland and Tuwella did not receive post-petition rent payments.  All compensation paid during the pendency of this Chapter 11 Case is listed on the chart below.

| Insider Name | Relationship to Debtor | Compensation Paid Since Bankruptcy Filing |
|---|---|---|
| Charles A. Key, Jr. | President, Director, Shareholder | $27,824.00 |
| R. Daniel Luper | Vice President(Retired), Director, Shareholder | $0.00 |
| Karl M. Kapp | Chief Financial Officer, Secretary | $31,357.00 |
| Partland, LLC | Landlord under lease of Headquarters Facility (owned by Charles Key, Jr., R. Daniel Luper and extended family members) | $0.00 |
| Tuwella, LLC | Landlord under leases of three Retail Stores (owned by Charles Key, Jr., R. Daniel Luper and extended family members) | $0.00 |

### C.      Management of Debtor Before and During the Bankruptcy

Charles A. Key, Jr. served as President of Debtor both before and during this Chapter 11 Case.  R. Daniel Luper served as Vice President of Debtor both before and during this Chapter 11 Case, but retired in 2005 from day-to-day operations of Debtor.  Karl M. Kapp served as the Chief Financial Officer of Debtor both before and during this Chapter 11 Case.  Along with other senior managers, Mr. Key and Mr. Kapp had responsibility for the day-to-day operations of Debtor.

### D.      Debtor's Prepetition Indebtedness

1.      *Wells Fargo Prepetition Debt.*  Pursuant to a Credit Agreement, dated as of December 11, 2014, (as amended and modified from time to time, the "Credit Agreement") by and among Debtor, Partland and Wells Fargo, and the other "Loan Documents" (as defined in the Credit Agreement), Debtor and Partland were jointly and severally liable to Wells Fargo for: (i) a revolving line of credit ("Revolving Facility") through Wells Fargo in the original amount of $15,000,000.00 and (ii) a term loan ("Term Loan") with Wells Fargo in the amount of $1,650,000.00 (the Revolving Facility and the Term Loan and such other "Obligations" (as defined in and owed to Wells Fargo under such Loan Documents, the "WF Debt"). The WF Debt was secured by properly perfected security interests in substantially all of Debtor's and Partland's assets, including, without limitation, all Accounts, Inventory, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, General Intangibles, Accessions and Supporting Obligations, and the real property owned by Partland (such assets, the "Collateral").  The aggregate outstanding balances owed under the Revolving Facility and the Term Loan as of the Petition Date was approximately $10,106,684.00.

2.      *AC Delco Distribution Agreement and General Motors Credit Account.*  Debtor had a Distribution Agreement ("Distribution Agreement") with General Motors to market and sell AC Delco and General Motors Aftermarket Parts and products at its Retail Stores, which Distribution Agreement was modified, amended and renewed from time to time.  Debtor has been an AC Delco distributor since 1999.  Debtor purchased AC Delco products on credit terms ("GM Credit Account"). To secure the debt, General Motors has a purchase money security interest in the AC Delco product sold to Debtor, as well as a blanket lien on all other personal property assets owned by Debtor pursuant to a Security Agreement executed by Debtor on September 11, 2003.   The outstanding balance owed under the Credit Account as of the Petition Date was approximately $3,598,647.00.  General Motors subordinated its liens to Wells Fargo by written Intercreditor and Subordination Agreement dated September 11, 2014.

3.    *Motorcraft® Warehouse Distributor Sales Agreement and Ford Credit Account*.  Debtor had a Warehouse Distributor Sales Agreement ("Distributor Agreement") with Ford to market and sell Motorcraft® and Ford Aftermarket Parts and products at its Retail Stores, which Distributor Agreement was modified, amended and renewed from time to time.  Debtor has been a Motorcraft® distributor since 2002.  Debtor purchased Motorcraft® products on credit terms ("Ford Credit Account").  To secure the debt, Ford has a purchase money security interest in the Motorcraft® product sold to Debtor pursuant to a Security Agreement executed by Debtor on September 14, 2014.  The outstanding balance owed under the Ford Credit Account as of the Petition Date was $3,040,981.00.  Ford subordinated its liens to Wells Fargo by written Subordination Agreement dated August 28, 2014.

4.    *Trade Debt*.  Debtor has general unsecured trade debt for goods and services provided to Debtor in the approximate amount of $3,265,365.30, exclusive of the prepetition claims of Insiders totaling approximately $1,094,078.63 and the Ford Deficiency Claim in the amount of $2,541,842.73.

### E.    Events Leading to Chapter 11 Filing

Debtor's business has been adversely impacted by several identifiable trends in the OEM Parts and Aftermarket Parts industry, including competition, declining franchised dealer sales, accumulating unsecured trade debt coupled with pressure from trade vendors to pay such debt and a 2017 inventory valuation which affected Debtor's availability under its Wells Fargo Revolving Facility.

1.    *Competition*.  Competitive pressures from several national retail "mega-chains" have resulted in significant consolidation in the industry in recent years.  Smaller retail operations have been bought out by the large national retail chains.  This has resulted in an overall decline in the marketplace of smaller companies and family-owned businesses.   It is increasingly more difficult for smaller retail operations to maintain the level of inventory necessary for immediate delivery of parts expected by customers.  Retail Stores are required to keep on hand a substantial inventory at all times at a tremendous cost to keep customers loyal and out of the larger retail chains.

2.    *Declining Franchised Dealer Sales*.  For over 30 years, General Motors and Ford permitted their warehouse distributors, like Debtor, to sell to their respective franchised dealers, rather than the franchised dealers being supplied directly by General Motors and Ford. Distributors, like Debtor, concentrated a significant portion of their business on sales to franchised dealers, because the profit margin in that line of business was very solid.  In 2013, the industry saw a

paradigm shift when General Motors announced that it would begin incentivizing sales to franchised dealers directly from General Motors, essentially cutting the warehouse distributors like Debtor out of that market. Every distributor which historically supplied parts to franchised dealers experienced an immediate decline in sales, and hence, revenues. By way of example, in 2012, Debtor's General Motors franchised dealer revenues were in excess of $17.2 million. In 2013 that number decreased to $10.5 million, then to $5 million in 2014, to $3.9 million in 2015, and to $3.6 million in 2016. Franchised dealer sales in 2017 reached only $1.5 million in revenues.

To offset the General Motors shift in business policy, in August, 2013, Debtor purchased from Uni-Select its book of Ford franchised dealer business. This sale not only provided a large book of replacement franchise dealer business to Debtor, but it also eliminated one of Debtor's largest competitors. Debtor expected to grow its business with the acquisition due to the solid profit margins in that line of business. Nevertheless, the margins for the Ford franchise dealer sales were less than those experienced historically for the General Motors franchised dealer sales.

In light of this industry trend, which brought about declining revenues and profit margins, Debtor changed its business model in first quarter 2017 to move away from franchised dealer sales and focus solely on the OEM Parts and Aftermarket Parts sales to automobile repair shops, fleets, government garage facilities, national chains and individual automobile enthusiasts. Debtor believed that this change in business model, given time, would increase the profitability of the company. Nevertheless, Debtor's revenues continued to decline throughout 2017 during this transition and rebuilding period.

3.      *Pressure from Trade Vendors*. Over the past five (5) years, Debtor accumulated substantial unsecured trade debt which it was unable to consistently pay on a current basis. Many of Debtor's trade vendors began pressuring Debtor to pay credit accounts at a more accelerated pace than Debtor's Revolving Facility and sale of in-stock inventory would permit. Key vendors began withholding shipments on new inventory unless significant payments on credit accounts were made. This pressure created stress on Debtor's working capital line of credit and inventory levels for the business.

4.      *Inventory Valuation*. In June, 2017, Hilco, Inc. prepared the annual inventory valuation at the direction of Wells Fargo. Hilco released its appraisal report on October 26, 2017 ("Hilco Report"). The Hilco Report showed a decline in the value of Eligible Inventory, based largely on trends in the OEM Parts and Aftermarket Parts industry as

a whole, and less on Debtor's actual Eligible Inventory. The Hilco Report caused Wells Fargo to declare a default under the Revolving Facility, require a forbearance agreement and constrict the availability under Debtor's working capital line of credit further exacerbating Debtor's cash flow issues.

The combination of these factors tightened Debtor's liquidity, negatively affecting its ability to adequately stock its Retail Stores with inventory, thereby resulting in decreased sales volume. Notwithstanding the liquidity problems suffered by Debtor over the past year, it believed its business strategy and future prospects remained fundamentally strong. So much so, that it attracted the attention of a number of suitors in the industry who saw the value of moving in to the North Carolina market through the acquisition of a turnkey going concern operation like Debtor. In order to implement the strategic acquisition of Debtor and obtain the highest and best price from potential suitors for the benefit of Debtor's creditors, the protection of Chapter 11 was essential. Debtor believed a strategic acquisition would preserve Debtor's business, maintain jobs for its employees, and continue to enhance the communities in which Debtor operates its Retail Stores and Distribution Centers. The principal purpose of filing the Chapter 11 Case was to effectuate a sale of Debtor's operating business and assets as a going concern.

## IV.    THE CHAPTER 11 CASE

### A.    Significant Events During the Bankruptcy Case

1.    <u>Commencement of the Chapter 11 Case.</u> On January 8, 2018, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. It has continued in the management and possession if its business and property as a debtor-in-possession. No trustee or examiner has been appointed in the Chapter 11 Case. Concurrent with the filing of the Chapter 11 Case, Debtor filed its Schedules and Statement of Financial Affairs [Docket No. 1].

2.    <u>First Day Relief</u>. Concurrent with the filing of the Chapter 11 Case, Debtor filed several "first-day" motions ("<u>First Day Motions</u>") with the Bankruptcy Court [Docket Nos. 3 – 9]. The First Day Motions, as more fully explained therein, were intended to minimize the effects of the Chapter 11 Case on Debtor's business operations post-petition. Pursuant to the First Day Motions, Debtor sought and obtained approval to, among other things, (i) continue to use its existing bank accounts and business forms and maintain its prepetition cash management system; (ii) pay its employees their wages, compensation and benefits earned prepetition, but not yet paid, and to continue with employee benefits programs post-petition; (iii) establish adequate assurance payments and procedures with respect to utility providers; (iv) maintain and administer certain prepetition

customer loyalty programs and practices in the ordinary course of Debtor's business and to pay and honor related prepetition obligations under such programs and practices; (v) continue prepetition insurance programs and policies and to pay the prepetition premiums or portion of premiums which came due post-petition; and (vi) pay prepetition sales and use taxes which came due post-petition. The relief granted by the Orders [Docket Nos. 70, 72, 156 – 159] entered on the First Day Motions enabled Debtor to retain its prepetition employees, pay in the ordinary course of business the priority claims of employees, utility providers, and taxing authorities, maintain its necessary and required insurance coverage, and honor its most loyal customers through its rewards programs and practices. Additional information with respect to the First Day Motions, and the related relief sought therein by Debtor may be obtained from the First Day Motions [Docket Nos. 3 – 9] and the Declaration of Charles A. Key, Jr. in Support of Chapter 11 Petition and First Day Motions [Docket No. 2].

3.    <u>DIP Financing and Use of Cash Collateral</u>. Debtor successfully negotiated with Wells Fargo terms for Debtor's post-petition use of cash collateral and payment of adequate protection to Wells Fargo, in addition to the extension of additional post-petition financing from Wells Fargo to fund operations of Debtor during the pendency of the Chapter 11 Case. Concurrent with the filing of the Chapter 11 Case and other First Day Motions, Debtor filed a motion seeking an interim order (A) authorizing the use of cash collateral by Debtor, (B) authorizing Debtor to incur post-petition debt, (C) granting adequate protection and providing security to Wells Fargo, and (D) setting a final hearing authorizing Debtor to use cash collateral and incur debt on a final basis ("<u>DIP Financing Motion</u>") [Docket No. 10]. The Bankruptcy Court approved the relief requested in the DIP Financing Motion on an interim basis by order entered on January 12, 2018, ("<u>Interim DIP Order</u>")[Docket No. 60], and thereafter on a final basis by order entered on January 30, 2018 ("<u>Final DIP Order</u>")[Docket No. 145]. The Final DIP Order authorized Debtor to use cash collateral pursuant to the DIP Budget approved by the Bankruptcy Court. It further authorized Debtor to continue to borrow funds under the existing Revolving Facility with Wells Fargo up to a maximum over-advance in the amount of $725,000.00 (advance over that permitted under the loan covenants establishing the borrowing base), and granted post-petition liens and superpriority administrative expense status to Wells Fargo on the DIP Financing indebtedness.

4.    <u>Employment of Professionals</u>. The Bankruptcy Court approved employment of the following professionals:

- Ashley S. Rusher and the law firm of Blanco Tackabery & Matamoros, P.A., as bankruptcy attorneys for Debtor [Docket No. 180];

- Elaine T. Rudisill and the firm of The Finley Group, as financial advisors to Debtor [Docket No. 194]; and

- Dixon Hughes Goodman, PLLC as tax and audit accounting professionals [Docket No. 272].

5.    <u>Appointment of Committee and Retention of Committee Counsel</u>.  On January 22, 2018, the Bankruptcy Administrator for the Middle District of North Carolina appointed the Committee pursuant to Section 1102 of the Bankruptcy Code.  The six (6) members of the Committee are:  Federal-Mogul Motorparts, Standard Motor Products, Global Parts Distributors, LLC, The Timken Corporation, US Pack Logistics and Cardone Industries, Inc. [Docket No. 97].  The Committee selected Kane Russell Coleman Logan PC ("<u>Kane Russell</u>") as Counsel for the Committee and selected Waldrep LLP ("<u>Waldrep</u>") as Local Counsel for the Committee.  On February 16, 2018, the Bankruptcy Court entered orders granting the Applications for employment of Kane Russell and Waldrep *nunc pro tunc* to January 25, 2018 [Docket Nos. 186 and 187].

6.    <u>Auction Sale of Substantially All Debtor's Assets</u>.  Prior to the filing of the Chapter 11 Case Debtor had marketed its business and assets to several interested suitors. To accomplish a successful sale of the business and assets in an orderly and transparent fashion, and obtain the highest and best price from potential suitors for the benefit of Debtor's creditors, Debtor obtained an offer from Fisher Auto Parts, Inc., a Virginia corporation ("<u>Fisher</u>") to purchase substantially all of Debtor's Assets in a Section 363 Sale pursuant to the terms of an Asset Purchase Agreement (the "<u>Stalking Horse Offer</u>").   To ensure maximum value would be received for the assets, Debtor negotiated for Fisher to act as and be designated a "stalking horse" bidder, which permitted Debtor to continue to market its business and assets to other interested strategic buyers or investors.  In the event competitive bids were received by Debtor, Fisher's offer would be an opening bid at an Auction Sale, and other interested parties would be invited to submit competitive bids.

On January 10, 2018, Debtor filed a motion with the Bankruptcy Court seeking, among other things, authority to sell substantially all of Debtor's assets to Fisher as the Stalking Horse Bidder, or to a higher bidder at an Auction Sale, to sell the assets free and clear of all liens, claims and encumbrances and to transfer such liens, claims and

encumbrances to the proceeds of sale, approval of the form of the asset purchase agreement and the expense reimbursement provision contained therein, approval of the Auction Sale process and auction bidding procedures, and authorizing the assumption and assignment of contracts and leases as a part of the Auction Sale. ("Sale and Auction Bidding Procedures Motion") [Docket No. 38].

On January 31, 2018, the Court entered an interim Order approving, among other things, the form of asset purchase agreement, the auction bidding procedures, and the notice of Auction Sale ("Sale and Auction Bidding Procedures Order") [Docket No. 147].  Pursuant to the Sale and Auction Bidding Procedures Order, Debtor conducted an Auction Sale of substantially all of Debtor's assets on February 28, 2018, at the law offices of Blanco Tackabery & Matamoros, P.A., 110 S. Stratford Road, Suite 500, Winston-Salem, North Carolina.  The proceedings were transcribed by court reporter.  Three Prospective Upset Bidders (as defined in the Auction Bidding Procedures) submitted Acceptable Upset Bids (as defined in the Auction Bidding Procedures) and participated in the Auction Sale.  Those participating as Qualified Bidders (as defined in the Auction Bidding Procedures) were Elliott Auto Supply Co., Inc. d/b/a Factory Motor Parts ("FMP"), Icahn Automotive Group, LLC d/b/a Auto Plus Auto Parts, and Fisher.  Upon consultation with The Finley Group, the Bankruptcy Administrator, the Committee, Wells Fargo, General Motors and Ford, Debtor designated FMP as the Successful Bidder (as defined in the Auction Bidding Procedures), for having submitted the highest and best bid in the amount of $17,500,000.00.  Debtor designated Fisher as the Back-Up Bidder (as defined in the Auction bidding Procedures) with a bid in the amount of $17,150,000.00.

On March 1, 2018, the Court entered a Final Order approving the sale of the assets to FMP free and clear of liens, claims and encumbrances, transferring liens, claims and encumbrances to the proceeds of sale, and authorizing the assumption and assignment of certain executory contracts and leases in connection with the sale of the assets ("Asset Sale" and "Final Sale Order") [Docket No. 203].  Debtor and FMP closed the Asset Sale on March 12, 2018.  The final sale price after adjustments as contemplated by the Asset Purchase Agreement was 17,470,003. 00.

The Bankruptcy Court authorized and directed Debtor in the Final Sale Order to pay at the closing the following items from the proceeds of sale: (i) the Expense Reimbursement (as defined in the Auction Bidding Procedures) to Fisher in the amount of $300,000.00; (ii) any closing costs and prorations required to be paid in accordance with the

Asset Purchase Agreement ($50,000.00 reserved); (iii) the Success Fee to The Finley Group in the amount of $165,000.00; (iv) the Aggregate Debt to Wells Fargo, in accordance with and as defined in the Final DIP Order in the amount of $10,121,401.05; and (v) the principal amount of the Allowed secured claim of General Motors in the amount of $3,455,736.92.   The remaining portion of the sale proceeds in the amount of $3,377,865.03 was delivered to The Finley Group to be held in escrow pending further order of the Court ("Net Sale Proceeds").

While Debtor has sold substantially all of its assets, there were certain Excluded Assets from the sale, including Debtor's investment securities, insurance policies on the life of any shareholder(s) of Debtor, all tax refunds due to Debtor, all employee benefit plans of Debtor, causes of action or avoidance actions which are derived pursuant to Chapter 5 of the Bankruptcy Code, and all Motorcraft® branded inventory.

7.     Private Sale of Motorcraft® Inventory.   Debtor has negotiated the sale of the Motorcraft® inventory to FMP for a purchase price of $150,000.00 and an additional credit from Ford against its Secured Claim in the amount of $350,000.00, for a total credit in the amount $500,000.00.   Debtor shall file a motion for authority to sell the Motorcraft® inventory and a motion to compromise and settle the Ford Deficiency   Claim.   Debtor believes the sale of the Motorcraft® inventory for a credit against the Ford Deficiency Claim in the amount of $500,000.00 is a fair and reasonable liquidation value for the Motorcraft® inventory.

8.     Claims and Causes of Action By and Against Insiders.   Partland filed a proof of claim against the Estate in the amount of $186,579.22 for pre-petition unpaid rent asserted pursuant to a lease agreement between Debtor and Partland, and filed a Motion for Allowance of post-petition administrative claim for rent seeking the amount of $38,372.94 [Docket No. 266].   Tuwella filed an Objection to Cure Amounts asserting a Cure Amount under Tuwella leases assumed by FMP as a part the asset sale in the amount of $236,934.00.   Tuwella also filed a proof of claim against the Estate in the amount of $156,963.71 for prepetition money loaned pursuant to a promissory note.   Key filed a proof of claim against the Estate in the amount of $244,855.91 for prepetition money loaned pursuant to a promissory note.   R. Daniel Luper ("Luper") filed a proof of claim against the Estate in the amount of $217,136.38 for prepetition money loaned pursuant to a promissory note.   Luper also has a scheduled claim in the case in amount of $24,406.21 pursuant to a stock redemption agreement with Debtor.   Total insider claims asserted against the

Estate are in the aggregate amount of $1,105,248.37, including $829,941.43 in asserted general unsecured claims and $275,306.94 in asserted administrative claims. Debtor and the Committee have asserted certain claims and Causes of Action against Partland for contribution and equitable subrogation, and against Key and Luper for recharacterization of debt to equity. Partland, Key and Luper asserted complete defenses to the claims and Causes of Action asserted. Debtor, the Committee, Key, Luper, Partland and Tuwella engaged in a pre-litigation mediated settlement conference and reached a global settlement of all claims by and against the Estate. Debtor and the Committee shall file a motion to compromise the claims and Causes of Action of the Estate, on the one hand, and the filed Claims of Key, Luper, Partland and Tuwella, on the other hand. Debtor believes the proposed settlement is fair and equitable. If the proposed settlement is approved by the Court, the terms and conditions of any such compromise and settlement as set forth in the Final Order approving such compromise and settlement shall control, notwithstanding any other provisions in the Plan.

9.    <u>Potential Adversary Proceedings and Other Post-Confirmation Causes of Action</u>. There has been no litigation pending during the Chapter 11 Case in a forum other than the Bankruptcy Court and no adversary proceedings have been filed in the Chapter 11 Case. The Plan contemplates the establishment of a Liquidating Trust. The Liquidating Trustee under the Liquidating Trust shall investigate whether there are Causes of Action to be brought for the benefit of the Liquidating Trust, and hence the Holders of Claims, including, without limitation (i) Avoidance Actions consisting of all causes of action or avoidance actions which are derived pursuant to Chapter 5 of the Bankruptcy Code, and any state or federal fraudulent transfer or voidable preference statutes; (ii) all claims under insurance policies of Debtor; (iii) all legal and equitable defenses to claims or causes of action asserted against Debtor; and (iv) any other claims, demands, defenses, causes of action of any kind or nature whatsoever held by, through or on behalf of Debtor and/or the Estate against any other person, whether or not such claims or causes of action are identified in this Disclosure Statement. If the Plan is confirmed, the Liquidating Trustee under the Liquidating Trust shall have standing and authority to do so, and may pursue such Causes of Action.

Except as otherwise provided herein or by Order of the Bankruptcy Court, the Plan Proponents expressly reserve, retain and preserve for the benefit of the Estate and the Liquidating Trust all claims of Debtor and the Estate and all Causes of Action.

10.    <u>General Motors Claim Objection</u>.    On March 26, 2018, Debtor and the Committee filed a Joint Limited Objection to the Proof of Claim Filed by General Motors [Docket No. 224].    On March 6, 2018, General Motors filed the Proof of Claim asserting a secured claim in the amount of $4,447,125.25.    General Motors asserts that as of March 12, 2018, Debtor owed General Motors the principal amount of $3,455,736.92 and "interest/late fees" of $1,006,760.33 for the total of $4,462,497.25.    Debtor and the Committee object to that portion of the claim designated as "interest/late fees" and seek to have that portion of the claim disallowed.    GM filed a response to the objection [Docket No. 259].    The Allowed amount of the GM Claim has a dramatic impact on the distribution to Holders of Claims in Class 3.    Debtor and the Committee negotiated a settlement with GM which will greatly reduce the Allowed amount of GM's Claim.    Debtor has filed a motion to compromise and settle the GM Claim. Debtor believes the proposed settlement if fair and equitable.

11.    <u>Claim Bar Dates</u>.    On January 9, 2018, the Clerk of the Bankruptcy Court issued a Notice of Chapter 11 Bankruptcy Case which fixed May 3, 2018 as the last day for filing Proofs of Claim in this Chapter 11 Case against Debtor arising prior to the Petition Date, except for those Claims of Governmental Units, which must be filed by July 7, 2018 (collectively, and as applicable, the "<u>Bar Date</u>").    The Plan provides that any Claim required to be filed before the Bar Date that was not timely filed or otherwise scheduled by Debtor is forever barred from assertion against Debtor, the bankruptcy Estate, or property thereof, and the Holder of such Claim is not entitled to vote on the Plan or to participate in any distribution in the Chapter 11 Case.

Debtor shall file a Motion seeking an order establishing [•], 2018 as the last day for filing Administrative Expense Claims entitled to priority under Section 507(a)(2) ("<u>Administrative Bar Date</u>").    All Proofs of Claim for Administrative Expense Claims must be filed by the Administrative Bar Date, other than Claims for (i) fees payable to the Bankruptcy Administrator or otherwise payable to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930; (ii) any Administrative Expense Claim already fixed and approved by Order of the Bankruptcy Court prior to confirmation of the Plan establishing the Administrative Bar Date; (iii) any Administrative Expense Claim that has been paid in full prior to confirmation of the Plan; (iv) any Administrative Expense Claim for Professional Fee and Expenses as allowed pursuant to Section 330(a) of the Bankruptcy Code; (v) any Administrative Expense Claim of the Committee members for expense pursuant to Section 503(b)(3)(F) of the Bankruptcy Code; and (vi) any Administrative Expense Claim of a Governmental Unit that is subject

to Section 503(b)(1)(D) of the Bankruptcy Code. The Plan provides that any Administrative Expense Claim required to be filed before the Administrative Bar Date that was not timely filed is forever barred from assertion against Debtor, the Estate, the Liquidating Trust or property thereof, and the Holder of such Administrative Expense Claim is not entitled to participate in any distribution in the Chapter 11 Case with respect to such Administrative Expense Claim.

12.    401(k) Plan Termination. Prior to the Petition Date, Debtor maintained a 401(k) Plan for eligible employees, which was a qualified plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). BB&T Benefits processed employee payroll withholding ("401(k) Contributions") based on information provided by Debtor to BB&T Benefits. BB&T Benefits drafted from Debtor's operating account funds necessary to pay the 401(k) Contributions on Mondays, immediately following Friday payrolls. Debtor is current with all 401(k) Contributions payments. Approximately 224 employees participated in the 401(k) Plan. As of the Petition Date, the 401(k) Plan was fully funded with assets totaling $6,215,556.00. On January 8, 2018, Debtor terminated the Plan. The Plan Administrator provided written notice to all 401(k) Plan participants of the termination of the 401(k) Plan, along with instructions for seeking distribution of the 401(k) Plan assets in compliance with ERISA. As of this Disclosure Statement, all funds have been distributed from the 401(k) Plan assets to Plan participants. Debtor, will prepare and file with the Department of Labor the Annual Form 5500 for 2017, and will file a Final Form 5500 for 2018 for the one pay period in 2018 of contributions to the 401(k) Plan. Dixon Hughes Goodman, PLLC will perform a final audit of the 401(k) Plan as required by ERISA.

13.    Health Care Plan Termination. Prior to the Petition Date and post-petition, Debtor maintained a self-insured health care plan ("Health Plan") with Blue Cross/Blue Shield of North Carolina ("BC/BS") for eligible employees. Debtor maintained a group health care bank account which is a zero-based imprest account linked to its operating account. Every Thursday, self-funded health care claims for Debtor's employees administered by BC/BS for the previous week ended Friday were drafted by BC/BS from the Health Plan account. Every Tuesday, Debtor received notification from BC/BS regarding the amount of the Thursday draft. Debtor is current with all Health Plan payments. On January 31, 2018, Debtor provided written notice to all participants in the Health Plan that the Health Plan would be terminated effective as of and concurrent with the closing of the Asset Sale. The date of termination of the Health Plan was midnight March 11, 2018 ("Termination Date"). Debtor further provided written notice

to all participants that all claims arising prior to the Termination Date ("Health Claims") must be submitted to BC/BS for payment by May 31, 2018 ("Health Claims Bar Date").  Health Claims are Unclassified Claims under the Plan.  All Health Claims submitted through BC/BS on or before the Bar Date for serviced provided prior to the Termination Date shall be paid as Administrative Expense Claims. The Plan provides that any Health Claim not timely filed before the Health Claims Bar Date is forever barred from assertion against Debtor, the Estate, the Liquidating Trust, or property thereof, and the Holder of such Health  Claim is not entitled to participate in any distribution in the Chapter 11 Case.

## B.    Current and Historical Financial Conditions

Debtor's most recent Operating Statement is attached hereto as **Exhibit B** and a schedule of all post-petition monthly reports is attached hereto as **Exhibit C**. Debtor has timely filed all monthly reports with the Bankruptcy Court.  Upon written request to Ashley S. Rusher, P.O. Drawer 25008, Winston-Salem, NC 27114-5008, you may obtain copies of all of the monthly reports Debtor has filed with the Bankruptcy Court.  These reports also are available online through the Bankruptcy Court's CM/ECF System at www.ncmb.uscourts.gov.

## V.    SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Introduction

Plan Proponents propose an orderly liquidation of Debtor's remaining assets and a distribution of Cash to Holders of Claims on account of their Allowed Claims and according to the priorities established by the Bankruptcy Code.

To implement the Plan, a Liquidating Trust will be established on the Effective Date.  The Liquidating Trust will be administered by a Liquidating Trustee.  MEMA Financial Services Group, Inc. has been selected, and has agreed to serve as, the Liquidating Trustee.  On the Effective Date all Debtor's property, including the Assets will be transferred to the Liquidating Trust for the benefit of Holders of Claims, after payment of Unclassified Claims required to be paid on the Effective Date.  After the Effective Date the Liquidating Trustee shall have standing and authority to act on behalf of and for the benefit of the Holders of Allowed Claims, who are the beneficiaries of the Liquidating Trust.

### B.    Classification of Claims and Equity Interest

The Plan places Claims and Equity Interests in various Classes and describes the treatment each Class will receive.   The Plan Classifies Claims into four (4) Classes: Class 1 consists of the Secured Claim of Ford; Class 2  consists of the

Claims of general unsecured creditors in an amount less than or equal to $1,000.00 ("Convenience Claims"); Class 3 consists of the Claims of general unsecured creditors in an amount greater than $1,000.00; Class 4 consists of the Equity Interests of Charles A. Key, Jr. and R. Daniel Luper.

>    1.    Substantial Similarity of Claims.  Pursuant to Section 1122 of the Bankruptcy Code, the Plan classifies Claims and Equity Interests in a particular Class only to the extent that the Claim or Equity Interest is substantially similar to other Claims and Equity Interests in that Class and qualifies within the description of that Class.  Plan Proponents believe the Plan classifies substantially similar Claims and Equity Interest in the same Class and meets the requirements of Section 1122 of the Bankruptcy Code.

>    2.    Impairment of Claims.    Pursuant to Section 1124 of the Bankruptcy Code, the Plan also states whether each Class of Claims and Equity Interests is Impaired or unimpaired.   A Class of Claims is Impaired under the Plan if the Plan alters the legal, equitable or contractual rights of the Holders of the Claims in such Class.  If the Plan leaves unaltered the rights of the Holders of the Claims in a Class, then such Class of Claims is unimpaired. Plan Proponents believe the Impaired Classes under the Plan are Classes 1, 3, 4 and 5.

## C.    Unclassified Claims

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain types of Claims are automatically entitled to specific treatment.  They are not considered Impaired, and Holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.

Administrative Expense Claims are costs or expenses of administering Debtor's Chapter 11 Case which are Allowed under Section 503(b) and have priority under Section 507(a)(2) of the Bankruptcy Code.  Administrative Expense Claims include, but are not limited to, (i) ordinary course of business claims incurred during the operation of Debtor's business post-petition, (ii) Health Claims submitted to Debtor's self-insured Health Plan administered by BC/BS, (iii) Professional Fees and Expenses Claims incurred by Debtor, and (iv) Section 503(b)(9) Administrative Claims for the value of any goods sold to Debtor in the ordinary course of business received within 20 days before the Petition Date as described in Section 503(b)(9) of the Bankruptcy Code.   The Bankruptcy Code requires that all Administrative Expenses Claims be paid in full on the Effective Date, unless a particular Holder of a Claim agrees to a different treatment. Administrative Expense Claims are Unclassified Claims under the Plan.

Priority Tax Claims are Unsecured Claims for income, employment, excise, sales and use and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that all Priority Tax Claims be paid in full in deferred cash payments over a period not to exceed five (5) years after the Petition Date.  Inasmuch as the Plan is a liquidating plan, Priority Tax Claims will be paid in full on the Effective Date.  Priority Tax Claims are Unclassified Claims under the Plan.

Priority Claims are Unsecured Claims for a variety of expenses, most of which have no application to this Chapter 11 Case.  In this Chapter 11 Case, such Priority Claims could be Unsecured Claims for wages, commissions, salary, employee benefits earned within one hundred eighty (180) days before the Petition Date.  Priority Claims will be paid in full on the Effective Date.  Priority Claims are Unclassified Claims under the Plan.

Statutory Fees are the fees and costs due and owing to the Clerk of Court for filing fees, mailing costs and other miscellaneous fees incurred by the Estate during the pendency of the Chapter 11 Case, and the quarterly fees due and owing to the Bankruptcy Administrator for the Middle District of North Carolina all as provided for in 28 U.S.C. § 1930.  Statutory Fees are Unclassified Claims under the Plan. Statutory Fees shall be paid according to the schedule providing for such payments on a quarterly basis in the Clerk's Memorandum [Docket No. 14].

The following chart lists Debtor's estimated Administrative Expense Claims, Priority Tax Claims, Priority Claims and Statutory Fees and their proposed treatment under the Plan, subject to the allowance procedures and the deadlines provided in the Plan:

| Type | Estimated Amount Owed as of the Effective Date | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date Allowed under Section 503(b)(1) and having priority under Section 507(a)(2). | $10,000.00 | All such Claims have been paid, in full, in the ordinary course of business, or will be paid in full when they become due, according to ordinary business terms from Cash on hand and, as necessary, the Net Sale Proceeds.  Holders of Administrative Expense Claims must file such Claims prior to the Administrative Bar Date. |

| Type | Estimated Amount Owed as of the Effective Date | Proposed Treatment |
|---|---|---|
| Expenses Arising as a Result of Employee Health Claims Submitted to BC/BS of North Carolina under Debtor's Self-insured Health Care Plan Allowed under Section 503(b)(1) and having priority under Section 507(a)(2) | $0.00 | All such Claims have been paid, in full, in the ordinary course of business, or will be paid in full when they become due from Cash on hand and, as necessary, the Net Sale Proceeds. Holders of Health Claims incurred prior to March 12, 2018, must file such Health Claims prior to the Health Claims Bar Date. |
| Section 503(b)(9) Administrative Claims Allowed under Section 503(b)(9) and having priority under Section 507(a)(2) | $143,576.00 | All Section 503(b)(9) Administrative Claims shall be paid in full on the Effective Date, from Cash on hand and, as necessary, the Net Sale Proceeds. Holders of 503(b)(9) Administrative Claims must file such Claims by the Administrative Bar Date, unless a Reclamation Claim Demand has been timely served on Debtor and the Section 503(b)(9) Administrative Claim has been resolved by prior Order of the Bankruptcy Court. |

| Type | Estimated Amount Owed as of the Effective Date | Proposed Treatment |
|---|---|---|
| Professional Fees and Expenses Claims, as approved by the Bankruptcy Court and Allowed under Section 503(b)(2) and having Priority under Section 507(a)(2) | $350,000.00 (estimated as of Effective Date) | All Professional Fees shall be paid in full on the Effective Date, or according to court order if such fees have not been approved by the Bankruptcy Court on the Effective Date, from the Net Sale Proceeds. |
| Priority Tax Claims having Priority under Section 507(a)(8) | $46,702.93 | All such Claims have been paid in full, or will be paid in full on or before the later of the Effective Date or the date such Claim becomes due, from Cash on hand and, as necessary, the Net Sale Proceeds. |
| Priority Claims having Priority under Section 507(a)(4) and (5) | $0.00 | All such Claims have been paid in full, or will be paid in full on or before the later of the Effective Date or the date such Claim becomes due, from Cash on hand and, as necessary, the Net Sale Proceeds. |
| Statutory Fees payable under 28 U.S.C. § 1930 | $4,875.00 | All such Claims have been paid in full, or will be paid in full on or before the later of the Effective Date or the date such Claim becomes due, from Cash on hand and, as necessary, the Net Sale Proceeds. |

**D.    Classified Claims and Equity Interests**

The following describes the Plan's classification of those Claims and Equity Interests required to be classified under the Bankruptcy Code:

1.    <u>Class 1:  Ford Secured Claim</u>.  Ford has a security interest in Motorcraft® branded parts and products pursuant to a Security Agreement executed by Debtor on September 14, 2014.  Ford filed a Proof of Claim asserting a total outstanding balance due on the Ford Credit Account in the amount of $3,041,842.73.  The book value of the collateral securing Ford's Claim is in the amount of $1,040,936.67.  The liquidation value of the collateral is in the amount of $500,000.00.

The Allowed Secured Claim of Ford provided for in Class 1 is $500,000.00.

2.     Class 2: Convenience Claims.  The Convenience Claims consist of Holders of Allowed Claims in an amount equal to lesser than $1,000.00 and those Holders of Claims in excess of $1,000.00 who agree to be treated as Class 2 Claims.   The total number of Convenience Claims is approximately 152.    The total dollar amount of the Convenience Claims is in the approximate amount of $42,000.00.

3.     Class 3: General Unsecured Claims.  The General Unsecured Claims consist of Holders of Allowed Claims in an amount greater than $1,000.00, including the Rejection Claims of counterparties to contracts and leases and including the Ford Deficiency Claim.  The total number of General Unsecured Claims is approximately 315.  The total dollar amount of the General Unsecured Claims is in the amount of approximately $6,901,287.00.

4.     Class 4: Equity Interests.  The Equity Interests consist of the shareholder interest of Charles A. Key, Jr. and R. Daniel Luper in Debtor.

**THE FOLLOWING CHART IS A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS AND THE POTENTIAL RANGE OF DISTRIBUTIONS UNDER THE PLAN. REFERENCE SHOULD BE MADE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.  THE ALLOWANCE OF CLAIMS MAY BE SUBJECT TO LITIGATION OR OTHER ADJUSTMENTS, AND ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS PROVIDED IN THE PLAN.  THE ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS WILL VARY DEPENDING UPON WHETHER ADDITIONAL ASSETS ARE RECOVERED FOR THE BENEFIT OF THE ESTATE, THE TOTAL AMOUNT OF COST OF ADMINISTRATION CLAIMS INCURRED IN THE CASE, INCLUDING PROFESSIONAL FEES APPROVED AND ALLOWED BY THE COURT, AND THE AMOUNT OF THE GENERAL UNSECURED CLAIMS THAT ARE ALLOWED AFTER RECONCILING FILED CLAIMS AGAINST THE CLAIMS SCHEDULED BY DEBTOR, AND ANY OBJECTIONS TO CLAIMS FILED BY DEBTOR**.

The following chart lists Plan Proponents' proposed treatment under the Plan, subject to the allowance procedures and the deadlines provided in the Plan for Classes 1 through 4:

| Class | Description | Impairment | Treatment | Estimated Recovery (%) |
|---|---|---|---|---|
| 1 | Secured Claim of Ford | Impaired, Entitled to Vote | Ford shall receive on or before the Effective Date the proceeds of sale of all of the Motorcraft® Inventory securing such Claim in full satisfaction of the Allowed Secured Claim based upon the value of the Motorcraft® Inventory as agreed upon between Ford and Debtor. The Ford Deficiency Claim shall be treated as a General Unsecured Claim in Class 3. | 100% |
| 2 | Convenience Claims | Unimpaired, Deemed to Have Accepted | Each Holder of an Allowed Convenience Claim shall be entitled to receive on the Effective Date, in full and final satisfaction of such Claim, Cash in an amount equal to the full amount of each Holder's Allowed Claim from Cash on hand and, as necessary, the Net Sale Proceeds. | 100% |
| 3 | General Unsecured Claims | Impaired, Entitled to Vote | Each Holder of an Allowed General Unsecured Claim shall be entitled to receive, in full and final satisfaction of such Claim, on one or more distribution Dates, a *Pro Rata* Share of the beneficial interests in the Liquidating Trust. | 30 to 41% |

| Class | Description | Impairment | Treatment | Estimated Recovery (%) |
|---|---|---|---|---|
| 4 | Equity Interest of Shareholders | Impaired, Deemed Rejected | On the Effective Date, all Equity Interests in Debtor shall be cancelled, annulled, and voided, and Holders thereof shall be entitled to no distribution or recovery on account of such Equity Interests. Upon entry of an order approving the Final Report and closing this case, Debtor shall be deemed dissolved. | 0% |

### E.    Means of Implementing the Plan

The Plan will be funded by the Net Sale Proceeds, funds realized from the Causes of Action, if any.  The Plan creates a Liquidating Trust.  The Liquidating Trustee shall have standing and authority to act on behalf of and for the benefit of the Holders of Claims, including pursuing the Causes of Action.   The following is a summary of the provisions of the Plan relating to the creation of the Liquidating Trust and its purpose, and the power and authority of the Liquidating Trustee and the Liquidating Trust Committee.  The summary does not include all provisions of the Liquidating Trust Agreement and the Plan provisions describing the Liquidating Trust.  The Plan should be read in its entirety for additional terms regarding the Liquidating Trust.

1.    <u>Creation of the Liquidating Trust</u>.   Prior to the Effective Date, Plan Proponents shall execute the Liquidating Trust Agreement.   On the Effective Date, the Liquidating Trust shall be created.   The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.  On the Effective Date, Debtor shall transfer all Assets, including Cash and the Causes of Action to the Liquidating Trust and Debtor shall not retain any Assets, unless expressly authorized by the Liquidating Trustee.   On the Effective Date, the Liquidating Trust shall be created.   The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan and the Confirmation Order.  The terms of the employment of the Liquidating Trustee shall be part of the Plan Documents and approved as part of the Confirmation Hearing.  On the Effective Date, Debtor shall, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code,  transfer  the  Liquidating  Trust  Assets  to  the

Liquidating Trust. All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances of any kind or character. The Confirmation Order shall constitute a determination that the transfer of the assets to the Liquidating Trust is legal, valid, and binding consistent with the laws of the State of North Carolina and the Bankruptcy Code. The Liquidating Trust Assets will be held in trust for the benefit of the Holders of Allowed Claims, as the Liquidating Trust beneficiaries, pursuant to the terms of the Plan and the Liquidating Trust Agreement. Except as specifically set forth herein, Holders of Allowed Claims shall look solely to the Liquidating Trust for the satisfaction of their Claims. The Liquidating Trustee will make Distributions on account of Holders of Allowed Claims in accordance with the terms of the Plan. For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability or standing of the Liquidating Trustee to assert any Causes of Action transferred to the Liquidating Trust. In connection with any Causes of Action that are included in the Liquidating Trust, any attorney-client privilege, work-product privilege or protection, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) applicable to Debtor or the Estate will also exist for the benefit of the Liquidating Trust and will vest in the Liquidating Trustee and its representatives, and will also be preserved for and as to Debtor. The Liquidating Trust is authorized to take all necessary actions to benefit from such privileges. For federal income tax purposes, the transfer of the Assets to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Liquidating Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

2.    <u>Treatment of the Liquidating Trust for Federal Income Tax Purposes</u>. The Liquidating Trust will be established for the primary purpose of liquidating the remaining assets, including the Causes of Action and distributing the proceeds thereof along with the Net Sale Proceeds, in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust has no objective to continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust will liquidate the assets and distribute their proceeds in an expeditious but orderly manner, and will make timely Distributions to Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Liquidating Trust Agreement. The Liquidating Trust shall not unduly prolong its duration, and shall not be deemed a successor-in-interest of Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust for federal income-tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "IRC"). If the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Liquidating Trustee shall take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal-tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IRC), including, if necessary, creating or converting it into a North Carolina limited partnership or limited liability company that is so classified. For federal income-tax purposes, Holders of Allowed Claims will be treated as the grantors and owners of the Liquidating Trust; therefore, they will be responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in his sole discretion) will value the assets transferred to the Liquidating Trust based on the good faith determination of the value of such assets. The valuation will be used consistently by all parties (including Debtor, the Liquidating Trustee, and the Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court will resolve any dispute regarding the valuation of the assets.

3.      Termination of the Committee and Creation of Liquidating Trust Committee.  On the Effective Date, the Committee shall be dissolved and the retention and employment of Committee's Professionals shall terminate. The members of the Committee shall be released and discharged of and from (i) any and all claims or causes of action against such members relating directly or indirectly to the Chapter 11 Case; and (ii) all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case.

On the Effective Date, a Liquidating Trust Committee shall be created. The Liquidating Trust Committee shall consist of not less than three (3) nor more than six (6) members that are Liquidating Trust beneficiaries of the Liquidating Trust. The identity of the members of the Liquidating Trust Committee shall be disclosed by the Committee and filed with the Bankruptcy Court and served via ECF to parties in

interest not later than three (3) days prior to the Confirmation Hearing as part of the Plan Documents.

In the event the death or resignation of any member of the Liquidating Trust Committee reduces the total number of members to less than three (3), the remaining members of the Liquidating Trust Committee shall have the right to designate a successor member. If a Liquidating Trust Committee member assigns or releases its Claims against the Liquidating Trust or releases the Liquidating Trust from the obligation to pay its Claims, such act shall constitute a resignation from the Liquidating Trust Committee. Remaining members of the Liquidating Trust Committee shall endeavor to designate a successor within thirty (30) days of any such death or resignation; *provided*, *however*, until a successor member is designated or in the event a successor member is not, after diligent efforts, found, the remaining members of the Liquidating Trust Committee may continue to function despite its reduced number. Upon the Final Cash Distribution Date, the Liquidating Trust Committee, without further action or notice, shall be dissolved and the members thereof shall be released and discharged of and from all further involvement related to and arising from their service as Liquidating Trust Committee members.

4.      Operation of the Liquidating Trust Committee. The members of the Liquidating Trust Committee shall undertake their duties as specified in the Plan and Liquidating Trust Agreement. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability to any Holder of an Allowed Claim, Equity Interest Holder, Debtor, the Liquidating Trust, the Liquidating Trustee, any other parties in interest in the Chapter 11 Case, or any other Person and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions constituting gross negligence, willful misconduct, or fraud. The Liquidating Trust Committee shall have the right to retain counsel and other Professionals without further order of the Bankruptcy Court, which Professionals shall be paid their reasonable fees and expenses by the Liquidating Trust. In addition, the members of the Liquidating Trust Committee shall serve without compensation, but shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Liquidating Trust Committee consistent with the provisions of Section 503(b)(3)(F) of the Bankruptcy Code. The Bankruptcy Court shall retain jurisdiction to hear any disputes relating to the fees and expenses of the Liquidating Trust Committee's Professionals, which disputes, if any, shall be resolved by the Bankruptcy Court after notice and hearing.

5.    <u>Rights and Duties of the Liquidating Trust Committee</u>.    The Liquidating Trust Committee, who shall serve without compensation, shall expressly have no fiduciary duty, responsibility or any other duties of any kind or character to any Creditor, Holder of a Claim, party in interest or any other Person.    The sole purpose of the Liquidating Trust Committee is:  (i) to provide the Liquidating Trustee with a sounding board should the Liquidating Trustee desire input from representative Creditors;    (ii) to remove and/or appoint a successor Liquidating Trustee should the Liquidating Trustee appointed in the Confirmation Order resign, be removed, become incapacitated or be otherwise unable to continue to serve as Liquidating Trustee.  In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability or duty of any kind or character whatsoever to any Holder of a Claim, Person, Interest Holders, Debtor, the Liquidating Trust, the Liquidating Trustee, or any other parties in interest in the Chapter 11 Case and shall not be liable for any acts or omissions of any kind or character whatsoever while acting in that capacity.    In addition, the members of the Liquidating Trust Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable out-of-pocket expenses incurred in connection with their involvement as members of the Liquidating Trust Committee. The Liquidating Trust Committee shall have independent standing to appear and be heard and the Bankruptcy Court shall retain jurisdiction to hear, after Designated Notice, any disputes relating to the removal of the Liquidating Trustee, appointment of a successor Liquidating Trustee, and fees and expenses of the Liquidating Trust Committee, its individual members and Professionals.

6.    <u>Role of the Liquidating Trust Committee</u>.    The Liquidating Trust  Committee shall:

a.    Have no duties or obligations of any kind or character whatsoever to any Holder of a Claim, Interest Holder, Person, or current or former officer, director, shareholder, manager, member or employee of Debtor;

b.    Act solely as advisors and to be a sounding board to the Liquidating Trustee, upon the Liquidating Trustee's request;

c.    Be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to the Plan and in accordance with the terms of the Plan;

d.    Have authority to appoint a successor Liquidating Trustee and Liquidating Trust Committee members upon the removal, incapacitation or death of the Liquidating Trustee or Liquidating Trust Committee member, as the case may be;

e.    Review, approve, question and, if appropriate, object to the fees and expenses of the Liquidating Trustee and its Professionals; such approval may be by negative notice by the Liquidating Trustee to each of the Liquidating Trust Committee members.

f.    Perform such additional functions, if any, as may be agreed to by the Liquidating Trustee, or as are otherwise provided for in the Plan, the Confirmation Order, or the Liquidating Trust Agreement.

7.    <u>General Powers of the Liquidating Trustee</u>.    Subject to any limitations expressly and specifically set forth in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement.    The Liquidating Trustee may take all such actions as it deems necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

a.    Make all Distributions, after reserving amounts deemed appropriate by the Liquidating Trustee in its discretion, as contemplated under the Plan;

b.    Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Liquidating Trust Agreement or the Plan;

c.    Abandon any of the assets of the Liquidating Trust if the Liquidating Trustee, after consultation with the Liquidating Trust Committee, concludes that such assets are of no material benefit to the Creditors;

d.    Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party, intervenor or otherwise in any legal proceeding, administrative proceeding, arbitrative proceeding or other non-judicial proceeding and litigate claims and Causes of Action on behalf of the Liquidating Trust, including without limitation all state and federal causes of action or any other litigation which constitute a Liquidating

Trust Asset or otherwise benefits the Creditors and pursue to settlement or judgment such actions. The Liquidating Trustee shall have standing and may engage Professionals to prosecute Causes of Action, and otherwise represent the Liquidating Trust generally;

e.    Participate as a party-in-interest in any proceeding before the Bankruptcy Court involving the Chapter 11 Case;

f.    Act in the name of or in the place of the Liquidating Trust or the Debtor in any action before the Bankruptcy Court or any other judicial or administrative body;

g.    Take actions and exercise remedies against any entity or Person that owes money to or has breached the rights of Debtor, Estate or Liquidating Trust, including the remedies available under any deed of trust, security agreement, contract, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; and, declare, negotiate or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document;

h.    Reach an agreement with Debtor, its former employees or its counsel to take specific action on behalf of the Liquidating Trust or Debtor. Select and employ such Professionals, consultants, agents or employees, whether or not formerly employed or engaged by Debtor, as the Liquidating Trustee deems necessary to assist in the administration of the affairs of the Liquidating Trust and compensate such persons to whom the Liquidating Trustee may delegate actions, including executing tax returns, corporate dissolution instruments or other documents on behalf of Debtor after the Effective Date;

i.    Propose, and if appropriate, take steps to obtain Bankruptcy Court approval, of any amendment, modification or supplement to the Plan or the Liquidating Trust Agreement;

j.    File dissolution/termination documents with the appropriate governmental agencies to dissolve Debtor and the Liquidating Trust;

k.    Receive, conserve and manage the assets of the Liquidating Trust and sell, pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the

Liquidating Trustee deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

l.      Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

m.      Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Trust;

n.      Pay all lawful expenses, debts, and liabilities of the Liquidating Trust;

o.      Enforce all provisions of the Plan and the Confirmation Order;

p.      Protect, perfect and defend the title to any of the assets of the Liquidating Trust and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Trust;

q.      Carry insurance coverage, including insurance to protect the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Committee against claims brought against the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Committee acting within such capacities, in amounts as the Liquidating Trustee deems advisable.  Notwithstanding the above, the Liquidating Trustee shall be under no obligation to obtain or carry such insurance;

r.      Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation the Disputed Claims Reserve and the Liquidating Trust Expense Reserve) as in the Liquidating Trustee's judgment may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust;

s.      Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan; and

t.      Consult, in the discretion of the Liquidating Trustee, with the Liquidating Trust Committee regarding material matters relating to the Liquidating Trust, including the retention of, and fee arrangements with Professionals representing the Liquidating Trust.

8.      Obligations of the Liquidating Trustee.      Notwithstanding anything in the Plan or the Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall have the following duties to:

a.      To prepare and file with the Bankruptcy Court the Quarterly Report.  In addition, the Liquidating Trustee may, in its discretion, prepare periodic reports, as the Liquidating Trustee deems appropriate, providing information regarding the administration of the Liquidating Trust.  Such reports may include additional information regarding the administration of the Liquidating Trust;

b.      Maintain records and books of account relating to the Liquidating Trust's assets, the management thereof, Distributions and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust;

c.      Open, maintain, and close as appropriate bank accounts in the name of the Liquidating Trust and to deposit any Cash in accounts, as it deems appropriate, and, interest earned, if any, shall be added to the Liquidating Trust Assets and distributed in accordance with the Plan.  The Liquidating Trustee shall be authorized, but not obligated, to continue to use any bank accounts used by Debtor prior to the Effective Date.  The Liquidating Trustee shall not be obligated to deposit Cash Assets of the Liquidating Trust into an interest-bearing bank account;

d.      Establish and maintain the Disputed Claims Reserve, either via bookkeeping entries or bank account;

e.      File all reports and appropriate tax returns as necessary;

f.      Take such actions as are necessary to prosecute, determine not to prosecute, resolve or compromise, as appropriate, all Causes of Action;

g.      Conduct investigations deemed appropriate by the Liquidating Trustee, including, if deemed appropriate, examinations under Bankruptcy Rule 2004; and

h.      Conduct the administration of the Chapter 11 Case and the Plan, including to obtain a Final Decree and to pay any Statutory Fees.

9.      Resignation, Removal of Liquidating Trustee.   The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court, and providing the Designated Notice.  Any

such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; or (ii) the appointment of a successor Liquidating Trustee. The Liquidating Trust Committee may remove the Liquidating Trustee at its discretion upon unanimous vote of all members and upon approval of the Bankruptcy Court after the Designated Notice and opportunity for a hearing before the Bankruptcy Court, provided, however, that the Liquidating Trust Committee shall provide the Liquidating Trustee with thirty (30) days written notice of its intent to remove the Liquidating Trustee.  If the Liquidating Trustee believes that its removal is not in the best interests of the Creditors, then the Liquidating Trustee may oppose such removal and be heard by the Bankruptcy Court.  All reasonable fees and expenses incurred by the Liquidating Trustee and the Liquidating Trust Committee in pursuit of the removal or continuation of the Liquidating Trustee shall be paid by the Liquidating Trust.

10.    <u>Appointment of Successor Liquidating Trustee</u>.  In the event of the death or resignation of the Liquidating Trustee, the Liquidating Trust Committee shall designate a successor Liquidating Trustee.  Any successor Liquidating Trustee appointed hereunder shall execute and file with the Bankruptcy Court and provide Designated Notice of a statement accepting such appointment, setting forth the terms of engagement, and agreeing to be bound by the terms of the Plan, Confirmation Order and the Liquidating Trust Agreement and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.  In the case of a removal of the Liquidating Trustee, then such successor shall be effective upon order of the Bankruptcy Court.

11.    <u>Settlement Authority</u>.  After consultation with the Liquidating Trust Committee (including by negative notice), the Liquidating Trustee shall be authorized to resolve and enter into settlements of Causes of Action and otherwise resolve disputes, without notice or further order of the Bankruptcy Court; provided, however, that, with respect to matters involving more than $100,000.00 in controversy, the Liquidating Trustee shall only be authorized to resolve such matters upon approval by Final Order of the Bankruptcy Court after providing Designated Notice.  Notwithstanding the foregoing, in the event the Liquidating Trustee resolves, settles or otherwise compromises any Cause of Action any matter in which the amount in controversy is less than $10,000.00, then the Liquidating Trustee may finalize same without either Bankruptcy Court Order or prior notice to the Liquidating Trust Committee.

12.    <u>Bonding of Liquidating Trustee</u>.  The Liquidating Trustee will not be obligated to obtain a bond or insurance, but may do so, in its sole discretion, in which case the expense incurred by such bonding will be paid by the Liquidating Trust.

13.    <u>Post-Confirmation Operating Reports</u>.  Every three months, beginning on the last business day of the third (3rd) month anniversary of the Effective Date, or such other date as shall be determined by the Liquidating Trustee, the Liquidating Trustee shall file a report with the Bankruptcy Court setting forth the assets, liabilities and activities of the Liquidating Trust during the prior three months, including a statement of all amounts paid for compensation of Professionals and the Liquidating Trustee (the "<u>Quarterly Report</u>"), and the Liquidating Trustee shall serve a copy upon all parties entitled to Designated Notice.

14.    <u>Dissolution of Debtor</u>.  Debtor will be dissolved by the Liquidating Trustee (or those to whom the Liquidating Trustee delegates) at any time after the Effective Date, but no later than six (6) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the sixth (6th) anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which will automatically extend the term pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Assets.  After (a) the final Distribution of the Disputed Claims Reserve, the Liquidating Trust Expenses and the balance of the Liquidating Trust Assets pursuant to the Plan and upon the occurrence of the Final Cash Distribution Date, (b) the filing by or on behalf of Debtor of articles of dissolution with the North Carolina Secretary of State in accordance with the Plan and applicable law and, and (c) filing a motion for a final decree and obtaining same in the form of a Final Order of the Bankruptcy Court, the Liquidating Trust will be deemed dissolved for all purposes without the necessity for any other or further actions and the Liquidating Trustee, the Liquidating Trust Committee and their respective Professionals will be discharged and have no further responsibilities or obligations of any kind or character.

15.    <u>Full and Final Satisfaction Against Debtor and Liquidating Trust</u>.  On and after the Effective Date, Debtor, the Liquidating Trust and Liquidating Trustee will have no liability on account of any Claims or Equity Interests except as expressly set forth in the Plan.  All payments and all Distributions made by the Liquidating Trustee under

the Plan will be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against Debtor.

16.    <u>Establishment of Liquidating Trust Expense Reserve and Disputed Claims Reserve</u>.  The Liquidating Trustee is authorized to establish a reserve account in which an amount of Cash is held by the Liquidating Trustee in reserve for Liquidating Trust Expenses, including, without limitation, (a) any litigation expenses, expert witness fees and reasonable legal fees of the Liquidating Trust or Liquidating Trustee; (b) the costs of filing tax returns and other reports that the Liquidating Trustee or Debtor may be required to file; (c) Professionals and the Liquidating Trustee fees and expenses; and (d) such other amounts as determined by the Liquidating Trustee.  Any amounts constituting Unclaimed Property shall be included in the Liquidating Trustee's general operating account.   The Liquidating Trustee is authorized to establish a bank account for the Disputed Claim Reserve and deposit such amounts in accordance with the Plan and Liquidating Trust Agreement.

17.    <u>Limitation on Liability</u>.  The Liquidating Trust, Liquidating Trustee, the Liquidating Trustee's affiliates (as defined in Section 101(2) of the Bankruptcy Code), the Liquidating Trust Committee (including its individual members) and their respective representatives, agents, Professionals, employees, successors or assigns (collectively the "<u>Liquidating Entities</u>") shall not be liable or otherwise responsible in any manner whatsoever for any act or omission of any kind or character, in any capacity, to any Holder of a Claim, Creditor, Person, party in interest, or any third party, with the sole exception for specific acts or omissions determined by Final Order to arise solely from gross negligence, willful misconduct or fraud.  The Liquidating Trustee may, in connection with the performance of its duties and in its sole and absolute discretion, consult with the Liquidating Trustee's Professionals, and will not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Professionals, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Liquidating Trustee will not be under any obligation to consult with the Liquidating Trustee's Professionals, and the determination not to do so will not result in the imposition of liability upon the Liquidating Trustee, its Professionals or any other of the Liquidating Entities.

Notwithstanding anything in the Plan, the Liquidating Trust Agreement, Confirmation Order or otherwise under contract or applicable law to the contrary, neither the Liquidating Trustee nor any

of the other Liquidating Entities shall be liable for (and the Liquidating Trust Assets shall not be burdened or otherwise available to pay or otherwise satisfy any judgment or order from any court of competent jurisdiction related thereto) any act or omission taken or omitted to be taken other than acts or omissions determined by Final Order to have arisen solely from gross negligence, willful misconduct or fraud. No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, the Liquidating Trust or any other of the Liquidating Entities arising from or otherwise related to any legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed or otherwise agreed or consented to, whether expressly or impliedly, by the Liquidating Trustee relating directly or indirectly to the Plan, the Liquidating Trust Agreement or by reason of the creation of any indebtedness by the Liquidating Trustee or otherwise by the Liquidating Trustee carrying out its duties or discretion under the Liquidating Trust Agreement or the Plan. All such liabilities, covenants, and agreements of the Liquidating Entities, or any of them, whether in writing or otherwise, pursuant to or in carrying out the purpose of the Plan or the Liquidating Trust Agreement will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets or such part thereof as will, under the terms of any such agreement or understanding, be liable therefore, or will be evidence only of a right of payment out of the Liquidating Trust Assets, as the case may be. Every undertaking, contract, covenant, agreement or understanding entered into in writing by the Liquidating Trustee may (but will not be necessary to invoke the full protections of these Limitation of Liabilities) provide expressly against the personal liability of the Liquidating Trustee.

The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and all other Liquidating Entities from and against and in respect to any and all liabilities, losses, damages, claims, causes of action, costs and expenses in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Entities, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, provided, however, that no such indemnification will be made for such actions or omissions of the Liquidating Trustee or any other of the Liquidating Entities solely as a result of gross negligence, willful misconduct or fraud as determined by Final Order.

18.   <u>Reliance on Documents</u>.  The Liquidating Trustee may rely, and will be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed by the proper Person or Persons.

19.   <u>Requirement of Undertaking</u>.   The Liquidating Trustee may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under the Plan, or in any suit against the Liquidating Trustee for any act taken or omitted by the Liquidating Trustee, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including, without limitation, reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

20.   <u>Termination of the Liquidating Trust</u>.  In furtherance of Plan Section 8.4.8 the Liquidating Trust shall remain and continue in full force and effect until the earlier of (a) the date on which all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the Bankruptcy Court or the appropriate state, federal or local governmental authorities, and a Final Order has been entered closing the Chapter 11 Case.

21.   <u>Retention of Causes of Action</u>.  Causes of Action and Avoidance Claims compromised and resolved by any settlement approved pursuant to Bankruptcy Rule 9019 by Final Order entered by the Bankruptcy Court, including Claims and Causes of Action described in Section IV.A.8 of the Disclosure Statement, are expressly excluded from the terms and provisions of this paragraph.  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action and Avoidance Claims are hereby preserved by the Plan, notwithstanding the occurrence of the Effective Date. The Liquidating Trust shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action and Avoidance Claims, whether arising before or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action and Avoidance Claims shall be preserved.  No entity may rely on the absence of a specific reference in the Plan, the Disclosure Statement, Bankruptcy Schedules or Statement of Financial Affairs of any Cause of Action or Avoidance Claim against them as any indication that the Liquidating Trust will not pursue any and all available Causes of

Action and Avoidance Claims against them. The Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action and Avoidance Claims. The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment and exhaust appeals relating to any such Causes of Action and Avoidance Claims and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. On the Effective Date, all Causes of Action and Avoidance Claims shall become the sole property of the Liquidating Trust, which shall hold all rights on behalf of the Debtor and its bankruptcy estate, to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal) and Avoidance Claims. The failure to list or describe any unknown Cause of Action and Avoidance Claims herein is not intended to and shall not limit the rights of the Liquidating Trust to pursue any known or unknown Cause of Action and Avoidance Claim. The Liquidating Trustee shall have standing and authority to prosecute any and all Causes of Action and Avoidance Claims on behalf of the Liquidating Trust.

### F.    Risk Factors

The proposed Plan has little risk associated with it due to the pre-Confirmation liquidation of substantially all of Debtor's assets in the Asset Sale. The Net Sale Proceeds from the Asset Sale are currently being held in escrow pending further Order of the Bankruptcy Court, including the Confirmation Order, regarding distribution to Holders of Allowed Claims in order of priority under the Bankruptcy Code. Nevertheless, Holders of Claims who are entitled to vote on the Plan should carefully read and consider the following risk factors when deciding whether to vote to accept or reject the Plan.

1.    <u>Certain Bankruptcy Considerations</u>.    Even if all Impaired Classes vote to accept the Plan, or alternatively Debtor otherwise meets the requirements for "cramdown," the Bankruptcy Court may exercise substantial discretion in determining whether the Plan may be confirmed under Section 1129(a) or (b) of the Bankruptcy Code. Although Plan Proponents believe that the Plan will meet the requirements for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.    <u>Estimation of Claims</u>. There can be no assurance that Debtor's estimation of the Claims in each Class as set forth in the Plan is correct.    Additional Claims may be filed against Debtor after publication of this Disclosure Statement which may affect the projected

distribution provided herein. Any increase in the amount of Claims could result in decreased recoveries to Holders of Claims. In addition, the actual amount of Allowed Claims may differ from Debtor's estimated Claims projected herein.

3.    <u>Estimation of Distribution</u>. There can be no assurance that the Debtor's estimation of distribution to Holders of Claims in certain classes as set forth in the Plan is correct. Distribution will vary depending upon whether additional assets are recovered through Causes of Action. Similarly, the estimation of distribution may vary depending upon the total amount of Cost of Administration Claims paid in the Chapter 11 Case in priority of Holders of Allowed Claims in Class 3, General Unsecured Claims.

## G.    Claims Objection

Debtor shall have the exclusive right and standing to object to and contest the allowance of Claims, compromise and settle any Disputed Claim, subject to Bankruptcy Court approval as set forth in the Plan, and litigate to final resolution any objection to Claim. Except to the extent that a Claim is already Allowed pursuant to a Final Order, Debtor reserves the right to object to Claims for a period of ninety (90) days after the Confirmation Date ("<u>Claim Objection Deadline</u>"), which deadline may be extended upon a motion filed with the Bankruptcy Court by Debtor prior to the expiration of the Claim Objection Deadline. No Distribution shall be made to a Holder of Claim under the Plan unless and until such Claim is an Allowed Claim. Therefore, even if a Claim has been Allowed for voting purposes, the Holder of a Claim may not be entitled to a distribution if an objection to Claim is later filed and sustained by the Bankruptcy Court.

The procedures for resolving Disputed Claims are set forth in Section 6 of the Plan. If the Holder of a Disputed Claim and Debtor reach an agreement regarding the Allowed amount of a Claim and such agreed amount does not exceed $10,000.00 or does not vary from the Claim amount scheduled by Debtor by more than $10,000.00, Debtor shall be authorized to enter into and effectuate a settlement without any further notice to parties in interest or approval and order of the Bankruptcy Court. The settled Claim shall be an Allowed Claim for the amount agreed upon by the Holder of the Claim and Debtor. If the Holder of a Disputed Claim and Debtor reach an agreement regarding the Allowed amount of a Claim and such agreed amount exceeds $10,000.00 or varies from the amount scheduled for the Claim by Debtor by more than  $10,000.00, Debtor shall provide Designated Notice of the proposed settlement consistent with Bankruptcy Rules 2002(a)(3) and 9019(a). If an objection to a proposed settlement is filed within the applicable period provided by Bankruptcy Rule 2002(a)(3), then the Bankruptcy Court shall schedule a hearing to resolve the objection to the compromise and settlement of the Claim and determine the Allowed amount of the Claim. The Liquidating Trustee, after the Effective Date, shall have standing to object or otherwise be heard to any

proposed settled Claim that is filed with the Bankruptcy Court pursuant to the above procedure.

Any unliquidated or contingent Claim will be treated as a Disputed Claim for all purposes until such time as it is Allowed or Disallowed.

### H.    Executory Contracts and Unexpired Leases

The Plan provides that on the Effective Date, all Executory Contracts and Unexpired Leases of Debtor that have not otherwise been assumed and assigned in the Final Sale Order, or rejected, prior to the Effective Date shall be deemed rejected.

For the avoidance of doubt, notwithstanding any provision of the Plan providing for the rejection of Executory Contracts, any insurance policy in which Debtor is an insured or a beneficiary that is deemed to be an Executory Contract, which has not previously been terminated or rejected, shall neither be assumed or rejected by operation of the Plan and the Confirmation Order, but shall remain subject to assumption or rejection by the Liquidating Trust, pursuant to the provisions of Section 365 of the Bankruptcy Code following the Effective Date.

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and the Confirmation Order gives rise to a Rejection Claim for monetary damages by the counterparty to such Executory Contract or Unexpired Lease, such Rejection Claim shall be treated as a General Unsecured Claim in Class 3 consistent with the provisions of Section 502(g)(1) of the Bankruptcy Code.

**A REJECTION CLAIM SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST DEBTOR OR THE LIQUIDATING TRUST UNLESS A PROOF OF CLAIM IS FILED WITH THE BANKRUPTCY COURT AND SERVED ON DEBTOR AND THE LIQUIDATING TRUSTEE AND THEIR RESPECTIVE COUNSEL WITHIN THIRTY (30) DAYS AFTER THE CONFIRMATION DATE.**

### I.    Tax Consequences of Plan

**HOLDERS OF CLAIMS AND EQUITY INTERESTS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

The federal income tax consequences of the Plan are complex and subject to significant uncertainties.  Debtor has not requested a ruling from the Internal Revenue Service ("IRS") or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to any interpretation that the IRS may adopt.  In addition, this summary does not address foreign, state or

local tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers. Furthermore, this discussion assumes that Holders of Allowed Claims hold only Claims in a single Class. Holders of Allowed Claims in multiple Classes should consult their own tax advisors as to the effect such ownership may have on the federal income tax consequences described below.

There are certain anticipated federal income tax consequences of the transactions proposed by the Plan to Debtor and Holders of Allowed Claims and Equity Interests that are Impaired under the Plan. This summary is provided for informational purposes only and is based on the IRC, Treasury regulations promulgated thereunder, judicial authorities and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. It does not address all aspects of federal income taxation that may be relevant to Debtor or to a particular Holder of an Allowed Claim or Equity Interest in light of its particular facts and circumstances or to certain types of Holders of Claims subject to special treatment under the IRC.

Holders of Allowed Claims (whether Priority, Secured or Unsecured) will receive Cash payments as provided in the Plan. The timing for recognition of revenues, gains or losses for income tax purposes is dependent upon the particular Holder of Claim involved and cannot be addressed by Debtor due to the many factors which may be involved. The amount of the income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will depend upon the nature of the Claim of each particular Holder.

The method of accounting utilized by a Holder of Claim for federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Holder of Claim will be the difference between (i) the Holder's basis for federal income tax purposes, if any, in the Claim; and (ii) the amount of the distribution received. Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which would otherwise generate ordinary income on the one hand, or in payment of a Claim which would constitute a return of capital, on the other hand.

## VI.  DISTRIBUTIONS UNDER THE PLAN

### A.    Delivery of Distributions

Distributions to Holders of Allowed Claims shall be made (i) to the addresses set forth on the Proofs of Claim filed by such Holders, (ii) to the addresses set forth in any written notices of address changes that are <u>both</u> filed with the Bankruptcy Court and delivered to Debtor after the date of any related Proofs of Claim and

prior to the Confirmation Date, (iii) to the addresses reflected in the Schedules if no Proof of Claim has been filed and Debtor has not received a written notice of a change of address pursuant to (ii) above, (iv) the addresses set forth in any written notices of address changes that are both filed with the Bankruptcy Court and delivered to the Liquidating Trustee and its counsel and Debtor and its counsel (as set forth in Section 13 of the Plan) subsequent to the Effective Date, or (v) to Debtor's last known address for such Holders, if any, if no Proofs of Claim have been filed, and the addresses in the Schedules are incorrect. Debtor shall provide the Liquidating Trustee with any notices of address changes received pursuant to (ii) above on or within ten (10) days after the Effective Date.

### B.    Transition of Distributions

Prior to delivering Cash and other Liquidating Trust Assets to the Liquidating Trustee on or about the Effective Date (or as soon as practicable thereafter), Debtor shall cause to be paid all Allowed, as of the Effective Date, (i) Administrative Expense Claims; (ii) Priority Tax Claims; (iii) Priority Claims; (iv) Class 2 Convenience Claims; and (v) Statutory Fees.  On or before the Effective Date, Debtor shall account to the Liquidating Trustee for all of the above-described Allowed Claims paid and such of the above Allowed Claims, if any, not paid as of the Effective Date and the reason therefore and status thereof.

Debtor shall reasonably cooperate with the Liquidating Trustee providing information regarding Claims, Liquidating Trust Assets and related information necessary or helpful to transition to the Liquidating Trustee in commencing its role as set forth herein.   The Liquidating Trustee shall compensate Debtor's Professionals and employees for post-Effective Date efforts and cooperation.

### C.    Manner of Payment

Any Cash payment or Distribution to be made under the Plan may be made by check from the Liquidating Trust.

### D.    Distributions to Holders of Unclassified Claims

Distributions to be made to the Holders of Unclassified Claims on account of Claims that are Allowed Claims as of the Effective Date shall be made by Debtor in Cash on the Effective Date, or as soon as practical thereafter.  Distributions to be made to Holders of Unclassified Claims on account of Claims that first become Allowed Claims after the Effective Date shall be made by the Liquidating Trustee in Cash within thirty (30) days after the date that an order allowing such Claim becomes a Final Order.

### E.    Distributions to Holders of Claims in Classes 1 and 2

Except as otherwise ordered by the Bankruptcy Court, and after paying or reserving for payment of Unclassified Claims, Disputed Claims Reserve, and Post-Confirmation Expenses, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date in Classes 1 and 2 shall be made by the Debtor within thirty (30) days after the Effective Date. Distribution on account of Claims that first become Allowed Claims after the Effective Date in Classes 1 and 2 shall be made by the Liquidating Trustee within thirty (30) days, or as soon thereafter as practical, after the date that an order allowing such Claim becomes a Final Order.

### F.    Distributions to Holders of Claims in Class 3

Except as otherwise ordered by the Bankruptcy Court, and after payment of or reservation for payment of Unclassified Claims, Disputed Claims Reserve, and Post-Confirmation Expenses, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date in Class 3 shall be made by the Liquidating Trustee (i) on the Initial Cash Distribution Date, or as soon thereafter as practical, on a *Pro Rata* basis, (ii) on the Final Cash Distribution Date, on a *Pro Rata* basis, and (iii) at such other times between the Initial and Final Cash Distribution Dates as are deemed appropriate by the Liquidating Trustee, in its discretion.

### G.    No Distributions to Holders of Claims in Classes 4 and 5

Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall make no Distributions to Holders of Equity Interests included in Class 4.

### H.    Distribution to the Disputed Claims Reserve

From and after the Effective Date, the Liquidating Trustee shall set aside, segregate, and hold in the Disputed Claims Reserve Cash equal to the amount of Distributions on account of any Disputed Claims that may be distributable if such Disputed Claims become Allowed Claims. The Liquidating Trustee may estimate or approximate Disputed Claims in a manner and amount as it deems appropriate under the circumstances. The Liquidating Trustee is under no obligation to maintain such funds in an interest-bearing account.

## I.      Minimum Distributions and Rounding

In the discretion of the Liquidating Trustee, if the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $25.00 on a particular Distribution Date, the Liquidating Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50.00.  Notwithstanding the preceding sentence, if the aggregate amount of Cash Distribution owed to any Holder of an Allowed Claim never equals or exceeds $25.00, then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

In the discretion of the Liquidating Trustee, if the amount of Cash to be distributed to the Holder of an Allowed Claim would require payment of a fraction of a dollar, the actual Cash payment may reflect a rounding of such fraction to the nearest whole dollar.

## J.      Right of Setoff and Recoupment

Pursuant to Section 553 of the Bankruptcy Code, or other statutory or equitable non-bankruptcy law, Debtor or the Liquidating Trustee, as the case may be, shall withhold payments to any Holder of any Allowed Claim or any Affiliate thereof on account of the existence of any Cause of Action or potential Cause of Action against such Holder of an Allowed Claim or any Affiliate thereof.  The Liquidating Trustee may exercise the right of setoff or recoupment against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that Debtor and/or the Liquidating Trustee may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claims, rights and causes of action that the Liquidating Trust may possess against such Holder.

## K.      Undeliverable Distributions

If any Distribution is returned as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is timely notified in writing of such Holder's then-current address.  Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until such time as a Distribution becomes deliverable. Undeliverable Distributions shall not be entitled to any interest, dividends or other accruals of any kind. Any check that is

not cashed or otherwise deposited within three (3) months after the check's date shall be deemed an undeliverable Distribution under the Plan.

Notwithstanding anything to the contrary in the Plan, the Confirmation Order or the Liquidating Trust Agreement, if any Holder of an Allowed Claim does not provide written notice of such Holder's current address as provided above, and assert such Holder's interest in an undeliverable or unclaimed Distribution within sixty (60) days after any such Distribution Date, such Distribution will be deemed to be Unclaimed Property pursuant to Section 347(b) of the Bankruptcy Code, and such Holder shall be deemed to have forfeited its Distribution and shall be forever barred and enjoined from asserting any claim for an undeliverable or unclaimed Distribution against Debtor, the Liquidating Trustee, the Estate, or their property without further notice, action or Bankruptcy Court Order. In such cases, any Cash held as Unclaimed Property shall become available for Distribution to Class 3 on the Final Cash Distribution Date.

## VII. CONFIRMATION REQUIREMENTS AND PROCEDURES

The Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code to be confirmed. Included among the requirements for confirmation are: (i) the Plan must be proposed in good faith; (ii) the Plan must be accepted by all Impaired classes of Claims entitled to vote, or, if rejected by an Impaired Class, that at least one Impaired Class of Claims has accepted the Plan, without counting votes of Insiders, and as to the rejecting Impaired Class the Plan does not "discriminate unfairly" and is "fair and equitable"; (iii) the Plan is in the best interest of Holders of Claims by distributing to each Holder of a Claim at least as much as the Holder would receive in a Chapter 7 liquidation case, unless the Holder votes to accept the Plan; and (iv) the Plan must be feasible. This is not an exclusive list of requirements for confirmation. Section 1129 of the Bankruptcy Code requires the Bankruptcy Court to find the Plan complies with these and all additional provisions.

### A. Parties Entitled to Vote

Only a Holder of an Allowed Claim in an Impaired Class has the right to vote on the Plan. A Claim is Allowed if either (i) Debtor scheduled the Claim in its Schedules, and such Claim was not listed as disputed, contingent, or unliquidated, or (ii) the Holder has filed a Proof of Claim, unless an objection has been filed by Debtor to such Proof of Claim. When a Claim is disallowed, the Holder of the Claim cannot vote to accept or reject the Plan unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes pursuant to Rule 3018(a) of the Bankruptcy Rules. As noted above, a Claim is Impaired under the Plan if the legal, equitable or contractual rights of the Holders of the Claim are altered by the Plan.

A Holder of a Claim whose Claim has been Allowed in part as a Secured Claim and in part as a General Unsecured Claim, or who otherwise holds Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity, and should cast one Official Ballot for each Claim.

Classes of Claim that are not Impaired under the Plan are conclusively presumed to have accepted the Plan and are not entitled to vote. Classes of Claims that receive no distribution under the Plan are conclusively presumed to have rejected the Plan and are not entitled to vote.

Plan Proponents believe the Impaired Classes entitled to vote to accept or reject the Plan are Classes 1 and 3. Plan Proponents believe that Class 2 is not Impaired by the Plan and, therefore, Holders of Allowed Claims in this Class do not have the right to vote to accept or reject the Plan. Plan Proponents believe that Class 4 is not entitled to vote to accept or reject the Plan because Holders of Equity Interests in such Class will receive no distribution under the Plan.

### B.    Votes Necessary to Confirm the Plan under Section 1129(a)

Section 1129(a) of the Bankruptcy Code requires each Impaired Class of Claims entitled to vote on the Plan to accept the Plan. A Class of Claims accepts the Plan if both of the following occur: (i) the Holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan. Holders of Claims who fail to vote will not be counted as either accepting or rejecting the Plan. A vote may also not be counted if the Bankruptcy Court determines, after notice and hearing, that such vote was not made or solicited in good faith.

### C.    Feasibility Standard

Notwithstanding acceptance of the Plan by the requisite number of Claims in Impaired Classes, the Bankruptcy Court must independently consider and determine whether the Plan meets the "feasibility" standard. To meet the feasibility standard, the Bankruptcy Court must find that confirmation of the Plan will not likely be followed by the liquidation of Debtor's assets or the need for further financial reorganization.

Since the Plan is a Plan of Liquidation, no further liquidation, nor financial reorganization is necessary once the Plan of Liquidation is consummated. Upon consummation of the Plan and filing of a Final Report, Debtor will be deemed dissolved and shall cease to exist. **Exhibit D** attached hereto and incorporated herein by reference demonstrates that Debtor has sufficient funds on hand to pay in full Unclassified Claims and to make a distribution to Classes 1 − 3, as required by Section 1129(a) of the Bankruptcy Code.

Plan Proponents believe the Plan satisfies the "feasibility" standard.

### D.   Best Interest of Creditors Test

In addition, despite acceptance of the Plan by all impaired Classes of Claims, the Bankruptcy Court must independently consider and determine whether the Plan meets the "best interest of creditors" test.  To meet the "best interest of creditors" test, the Plan must provide for each Holder of a Claim in an Impaired Class of Claims that has not voted to accept the Plan will receive or retain property of a value that is not less than the value such Holder would receive or retain in a Chapter 7 liquidation of Debtor.

Debtor has sold substantially all of its tangible assets during the Chapter 11 Case.  Because the Plan is one of orderly liquidation of Debtor's remaining assets, and distribution of the proceeds of such liquidation, each Class of Claims will receive substantially the same treatment that it would receive if Debtor's assets were liquidated in a Chapter 7 case.  Plan Proponents believe the Plan provides the best source of recovery to Holders of Allowed Claims, and achieves the same goal as a Chapter 7 liquidation.  Indeed, the Plan avoids additional cost and delay occasioned by the appointment of a Chapter 7 Trustee, which likely would result in a smaller distribution to Class 3, General Unsecured Creditors.  Additional costs avoided by the Plan include a commission required to be paid to a Chapter 7 Trustee.  Delay in administration of the bankruptcy estate and distribution to Holders of Claims would be inevitable while a Chapter 7 Trustee became familiar with Debtor and the case.

Plan Proponents believe the Plan meets the "best interest of creditors" test.

### E.   Liquidation Analysis

To aide in the determination of the "best interest of creditors" test, attached hereto as **Exhibit E** and incorporated herein by reference is a hypothetical liquidation analysis which demonstrates the effect a Chapter 7 liquidation would have on the recoveries of Holders of Claims as compared to the proposed distribution under the Plan ("Liquidation Analysis").  The Liquidation Analysis utilizes the dollar amount received from a liquidation of Debtor's assets, reduced by the Secured Claims, Priority Claims, and the costs and expenses of liquidation in a Chapter 7.

### F.   Other Requirements of Section 1129(a)

Section 1129(a) of the Bankruptcy Code includes other technical requirements for confirmation of the Plan.  Plan Proponents believe the Plan meets all of the other requirements of Section 1129(a), including that the Plan has been proposed in good faith.

### G.    "Cramdown" Under Section 1129(b)

Even if one or more Impaired Classes rejects the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code.   The process of binding non-accepting Classes of Claims is commonly referred to as a "cramdown" of the Plan.   The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims or Equity Interests if it meets all the requirements for consensual confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan.

1.    Discriminate Unfairly.   The Bankruptcy Code prohibits "unfair" discrimination against a Class of Claims, but does not prevent discrimination outright.   To determine whether the Plan discriminates unfairly, the Bankruptcy Court must consider (i) whether there is a reasonable basis for the discrimination; (ii) whether the Plan can be confirmed and consummated without the discrimination; (iii) whether the discrimination is proposed in good faith; and (iv) the treatment of the Classes discriminated against.

Plan Proponents do not perceive the Plan has discriminated unfairly between Classes 2 and 3, and thus believe the Plan would pass the requirement for cramdown under this standard.

2.    Fair and Equitable Test.   The Bankruptcy Code requires the Plan to treat dissenting Holders of Claims "fair and equitable."   The Plan is "fair and equitable" to a Class of Claims which are Secured Claims if each Holder of a Claim included in the rejecting Class will receive on retain on account of its Claim property that has a value, as of the Effective Date of the Plan, equal to the Allowed Amount of such Claim.   The Plan is "fair and equitable" to a Class of Claims which are Unsecured Claims if no Holder of a Claim or Equity Interest that is junior to the Claims or Equity Interests of such Class receive or retain on account of such junior Claim or Equity Interest any property whatsoever, unless the senior Class is paid in full.   The "fair and equitable" test observes the strict priority scheme developed in the Bankruptcy Code.

**THE PLAN PROPONENTS WILL SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAMDOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IF ALL IMPAIRED CLASSES OF CLAIMS DO NOT VOTE TO ACCEPT THE PLAN.**

## VIII.   EFFECT OF CONFIRMATION OF PLAN

Confirmation of the Plan will authorize (i) the transfer of Debtor's Assets to the Liquidating Trust, (ii) the Liquidating Trustee to pursue Causes of Action, (iii) the Distribution to Holders of Allowed Claims on and after the Effective Date including the Initial Cash Distribution Date and the Final Cash Distribution Date, as applicable, and (iv) the dissolution of Debtor, as provided in the Plan and the Confirmation Order.   Confirmation of the Plan serves to make the Plan binding upon Debtor, all Holders of Claims and Equity Interests, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Committee, and other parties in interest, regardless of whether they cast an Official Ballot to accept or reject the Plan.

### A.    No Discharge of Debtor

In accordance with Section 1141(d)(3) of the Bankruptcy Code, Debtor will not receive a discharge of its indebtedness upon confirmation of the Plan since the Plan provides for the liquidation of all Debtor's assets. Nevertheless, Debtor shall be deemed dissolved, and cease to exist, as provided in the Plan.

No Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than as provided herein. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order

### B.    Modification of Plan

Plan Proponents may modify the Plan at any time before confirmation of the Plan.   However, the Bankruptcy Court may require a new disclosure statement and/or additional voting on the Plan if the modification is material.

Plan Proponents or the Liquidating Trustee, as applicable, may also seek to modify the Plan at any time after confirmation only if (i) the Plan has not been substantially consummated *and* (ii) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### C.    Plan Injunction

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  As of the Effective Date, all Holders of Claims or Equity Interests against Debtor shall be permanently enjoined, from (i) commencing or continuing any action or

proceeding of any kind with respect to any such Claim or taking any act to recover such Claim or Assets outside of the claims allowance procedures in effect in this Chapter 11 Case and set forth in the Plan; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or Order against Debtor, the Liquidating Trust, the Liquidating Trust Assets or the Liquidating Trustee on account of such Claim; (iii) creating, perfecting, or enforcing any lien, claim, interest or encumbrance of any kind against Debtor, property of Debtor the Assets, the Liquidating Trust Assets or Liquidating Trust on account of such Claim; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Debtor, the Liquidating Trust, the Liquidating Trust Assets or Liquidating Trustee on account of any such Claim.

### D.    Exculpation

Except to the extent arising from fraud, willful misconduct or gross negligence, any and all claims, liabilities, causes of action, rights, damages, costs, and obligations held by any party other than the United States of America against Debtor, the Committee and its members, and/or each of their respective attorneys, accountants, agents, and other Professionals, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any manner related to or in connection with (i) the Chapter 11 Case or any act or omission in connection with, arising out of, or related to the Chapter 11 Case; (ii) any act or omission in connection with, arising out of, or related to the Asset Sale; (iii) the formulation, negotiation, prosecution, or implementation of the Plan; (iv) the solicitation of acceptances of the Plan; or (v) the Confirmation, consummation, or implementation of the Plan, will be deemed fully waived, barred, enjoined, released, and discharged in all respects, except as to rights, obligations, duties, claims, and responsibilities preserved, created, or established by terms of the Plan.

### E.    Cancellation of Instruments and Agreements

Except for purposes of evidencing a right to Distributions under the Plan, or as otherwise provided in the Plan, on the Effective Date all agreements and other documents evidencing Claims or rights of any Holder of a Claim against Debtor, including without limitation all indentures, promissory notes, security agreements, financing statements, and deeds of trust evidencing such Claims, shall be canceled, terminated, and deemed null and void and of no force and effect as against Debtor.

### F.    Vesting of Assets

Upon the Effective Date, and pursuant to Section 1141(b) of the Bankruptcy Code,  all property of the Estate shall vest in the Liquidating Trust, free and clear of all Claims, liens, encumbrances, charges, and other interests not specifically set forth in the Plan.  The Liquidating Trustee and its agents or attorneys shall dispose of such property free of any restrictions of the Bankruptcy Code or the Bankruptcy

Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

### G.    Final Decree

Once the Estate has been fully administered, as provided in Rule 3022 of the Bankruptcy Rules, Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Chapter 11 Case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## IX.    ALTERNATIVES TO THE PLAN

Plan Proponents do not believe that any feasible alternative plan structures exist, and that the only alternatives to the Plan are the conversion of the Chapter 11 Case to a Chapter 7 and the liquidation of Debtor pursuant to Chapter 7 or a structured dismissal of the Chapter 11 Case. Plan Proponents do not believe that either of these alternatives is preferable to the Plan, and the Plan, as described herein, enables Holders of Claims to realize the greatest possible value under the circumstances.

## X.    CONCLUSION

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms; therefore, you are urged to review this material and to make such further inquiries as you may deem appropriate, then cast an informed vote on the Plan. Plan Proponents solicit your acceptance of the Plan as being in the best interests of Holders of Claims in this Chapter 11 Case.

Respectfully submitted, this 26 day of July, 2018.

**ASCO LIQUIDIATING COMPANY**


By:    _Charles A. Key Jr._
       Charles A. Key, Jr., President

# EXHIBIT A
# PLAN OF LIQUIDATION

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 18-50018 |
| ASCO LIQUIDATING COMPANY, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## JOINT PLAN OF LIQUIDATION
## PROPOSED BY ASCO LIQUIDATING COMPANY AND THE COMMITTEE
## OF UNSECURED CREDITORS FILED JULY 26, 2018

# TABLE OF CONTENTS

**Page**

SECTION 1    DEFINITIONS ........................................................................ 2

    1.1    Rules of Construction ...................................................... 2

    1.3    Definitions ....................................................................... 2

SECTION 2    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY
                 INTERESTS ............................................................................. 12

    2.1    Unclassified Claims ........................................................ 12

    2.2    Classified Claims and Equity Interests........................... 12

SECTION 3    TREATMENT OF UNCLASSIFIED CLAIMS ........................... 13

    3.1    Administrative Expense Claims ...................................... 13

    3.2    Priority Tax Claims ........................................................ 13

    3.3    Statutory Fees ................................................................ 14

SECTION 4    TREATMENT AND CLASSIFICATION OF CLAIMS AND
                 INTERESTS ............................................................................. 15

    4.1    Class 1: Secured Claim of Ford...................................... 15

    4.2    Class 2: General Unsecured Claims Equal to or Less than
          $1,000.00........................................................................ 16

    4.3    Class 3: General Unsecured Claims in Excess of $1,000.00.............. 16

    4.4    Class 4: Equity Security Interests.................................. 17

SECTION 5    DISTRIBUTIONS UNDER THE PLAN ....................................... 17

    5.1    Delivery of Distributions............................................... 17

    5.2    Transition of Distributions ............................................ 17

    5.3    Manner of Payment ....................................................... 18

    5.4    Distributions to Holders of Unclassified Claims............ 18

    5.5    Distributions to the Holder of Claims in Classes 1 and 2 ............. 18

    5.6    Distributions to the Holder of Claims in Class 3............ 18

    5.7    No Distributions to Holders of Claims in Classes 4 and 5 ............. 19

    5.8    Distribution to the Disputed Claims Reserve ................. 19

    5.9    Minimum Distributions and Rounding ........................... 19

    5.10   Right of Setoff and Recoupment ................................... 19

    5.11   Undeliverable Distributions .......................................... 20

# TABLE OF CONTENTS
## (continued)

**Page**

SECTION 6    PROCEDURES FOR DISPUTED CLAIMS ................................ 20

    6.1    Objections to Claims................................................................ 20

    6.2    Payments and Distributions with Respect to Disputed Claims .......... 21

    6.3    Distribution after Allowance ................................................. 21

SECTION 7    TREATMENT OF EXECUTORY CONTRACTS AND
               UNEXPIRED LEASES ................................................... 22

    7.1    Insurance Contracts ................................................................ 22

    7.2    Rejection Claim Bar Date ....................................................... 22

SECTION 8    MEANS OF IMPLEMENTING THE PLAN............................. 22

    8.1    Creation of the Liquidating Trust ........................................... 23

    8.2    Treatment of the Liquidating Trust for Federal Income Tax
          Purposes................................................................................ 23

    8.3    Termination of the Committee and Creation of Liquidating
          Trust Committee .................................................................... 24

          8.3.1   Operation of the Liquidating Trust Committee ...................... 25

          8.3.2   Rights and Duties of the Liquidating Trust Committee........... 26

          8.3.3   Role of the Liquidating Trust Committee................................ 26

    8.4    Appointment of the Liquidating Trustee ................................. 27

          8.4.1   General Powers of the Liquidating Trustee ............................. 27

          8.4.2   Obligations of the Liquidating Trustee .................................... 30

          8.4.3   Resignation/Removal of the Liquidating Trustee .................... 31

          8.4.4   Appointment of Successor Liquidating Trustee ....................... 31

          8.4.5   Settlement Authority................................................................ 31

          8.4.6   Bonding of Liquidating Trustee .............................................. 32

          8.4.7   Confirmation Operatingn Reports Required by the U.S.
                 Trustee ..................................................................................... 32

          8.4.8   Dissolution of the Debtors....................................................... 32

          8.4.9   Full and Final Satisfaction Against the Debtors and
                 Liquidating Trust ..................................................................... 32

    8.5    Establishment of Liquidating Trust Expense Reserve and
          Disputed Claims Reserve........................................................ 33

# TABLE OF CONTENTS
### (continued)

**Page**

8.6 Limitation on Liability ........................................................................ 33

8.7 Reliance on Documents ...................................................................... 34

8.8 Requirement of Undertaking ............................................................. 35

8.9 Termination of the Liquidating Trust .............................................. 35

SECTION 9 EFFECTS OF CONFIRMATION .................................................. 36

9.1 Binding Effect ...................................................................................... 36

9.2 No Discharge of Debtor ...................................................................... 36

9.3 Plan Injunction ..................................................................................... 36

9.4 Exculpation ............................................................................................ 37

9.5 Cancellation of Instruments and Agreements ................................. 37

9.6 Vesting of Assets .................................................................................. 37

SECTION 10 OTHER PROVISIONS OF THE PLAN ........................................ 38

10.1 Exemption from Securities Regulation ............................................. 38

10.2 Effectuating Documents and Further Transactions ....................... 38

10.3 Settlement Authority .......................................................................... 38

10.4 Cooperation .......................................................................................... 38

10.5 Failure to Confirm the Plan or Consummate the Plan ................. 39

10.6 Retention of Causes of Action and Reservation of Rights ........... 39

10.7 Corporate Existence ........................................................................... 40

10.8 Survival of Corporate Indemnities ................................................... 40

10.9 Notice of Effective Date ..................................................................... 40

10.10 Substantial Consummation ................................................................ 40

10.11 Time ........................................................................................................ 40

10.12 Modification of Plan ............................................................................ 41

SECTION 11 VOIDABLE TRANSFERS ............................................................. 41

SECTION 12 RETENTION OF JURISDICTION .............................................. 41

12.1 Bankruptcy Court Jurisdiction .......................................................... 41

12.1.1 Claims Resolution ................................................................... 41

12.1.2 Compensation of Professionals ............................................ 42

# TABLE OF CONTENTS
### (continued)

12.1.3 Controversies and Causes of Action ........................................... 42

12.1.4 Recovery of Assets ........................................................................ 42

12.1.5 Plan Interpretation and Enforcement ...................................... 42

12.1.6 Taxes ................................................................................................ 42

12.1.7 Other Matters Arising in the Chapter 11 Case ........................ 42

12.1.8 Modification ................................................................................... 43

12.1.9 Disputed Claims Reserve ............................................................ 43

12.1.10      Plan Distributions.................................................................... 43

12.1.11      Final Decree .............................................................................. 43

SECTION 13      NOTICES ........................................................................... 43

    13.1   Designated Notice ......................................................................... 44

SECTION 14      MISCELLANEOUS ......................................................... 45

    14.1   Headings ........................................................................................... 45

    14.2   Successors and Assigns .................................................................. 45

    14.3   Entire Agreement ............................................................................ 45

    14.4   Severability ....................................................................................... 45

    14.5   Governing Law ................................................................................. 45

# INTRODUCTION[1]

ASCO Liquidating Company, Debtor in the above-captioned Chapter 11 Case, and the Official Committee of Unsecured Creditors, appointed in this Chapter 11 Case (the "Committee"), as Plan Proponents, jointly propose the following Plan, pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Plan Proponents propose an orderly liquidation of Debtor's remaining assets and a Distribution of Cash to Holders of Claims on account of their Allowed Claims and according to the priorities established by the Bankruptcy Code.

To implement the Plan, a Liquidating Trust will be established on the Effective Date. The Liquidating Trust will be administered by a Liquidating Trustee. MEMA Financial Services Group, Inc. has been selected, and has agreed to serve as, the Liquidating Trustee. On the Effective Date, all of Debtor's assets, including Cash and Causes of Action, will be transferred to the Liquidating Trust for the benefit of Holders of Claims, after payment of Allowed Unclassified Claims required to be paid on the Effective Date. After the Effective Date, the Liquidating Trustee shall have standing and authority to act on behalf of and for the benefit of the Holders of Claims, who are the beneficiaries of the Liquidating Trust.

Transmitted with this Plan is a copy of the Disclosure Statement required by Section 1125 of the Bankruptcy Code. The Disclosure Statement is provided to help Creditors understand this Plan. The Disclosure Statement contains, among other things, a discussion of Debtor's prepetition history, business and operations, certain factors leading to the filing of the Chapter 11 Case, and significant events that have occurred during the pendency of the Chapter 11 Case. The Disclosure Statement also provides a summary of how the Plan proposes to treat Claims and Equity Interests, the Plan confirmation process and the voting procedures that Holders of Claims in Impaired Classes must follow for their votes to be counted, including information on who can vote on or object to the Plan.

The Plan Proponents urge all creditors and other parties in interest to read this Plan and the Disclosure Statement in their entirety. No solicitation materials other than the Plan, Disclosure Statement, a letter from the Committee and any documents, schedules, exhibits, or letters attached to the Plan or the Disclosure Statement or referenced therein, have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan. All Creditors and other parties in interest are encouraged to (i) carefully review the Plan and Disclosure Statement prepared by the Plan Proponents before voting to accept or reject this Plan and (ii) obtain the advice and input from professionals of their choosing.

---

[1] Defined terms used in this Introduction shall have the meaning set forth in Section 1 Definitions, *infra*.

# SECTION 1          DEFINITIONS.

## 1.1    Rules of Construction.

For the purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Section of the Plan.  Any term used in the Plan that is not defined herein, but is a defined term in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  The singular shall include the plural.

## 1.2    Interpretation.

Use of the word "including" necessarily means "including without limitation" without repeating same each time "including" is used in this Plan.  Definitions in this Plan shall include both singular or plural, as necessitated by the context.

## 1.3    Definitions.

"**Administrative Claim Bar Date**" means the date that is thirty (30) days after the Effective Date, which is the last day for filing Administrative Expense Claims entitled to priority under Section 507(a)(2), other than Claims for (a) fees payable to the Bankruptcy Administrator or otherwise payable to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930; (b) any Administrative Expense Claim already fixed and approved by Order of the Bankruptcy Court prior to confirmation of the Plan establishing the Administrative Bar Date; (c) any Administrative Expense Claim that has been paid in full prior to confirmation of the Plan; (d) any Administrative Expense Claim for compensation of Professionals or reimbursement of expenses to Professionals as allowed pursuant to Section 330(a) of the Bankruptcy Code; (e) any Administrative Expense Claim of the Committee members for expenses pursuant to Section 503(b)(3)(F) of the Bankruptcy Code; and (f) any Administrative Expense Claim of a Governmental Unit that is subject to Section 503(b)(1)(D) of the Bankruptcy Code.

"**Administrative Expense Claim**" means the costs and expenses of the Chapter 11 Case that are Allowed under Sections 503(b), 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, (a) Claims for the actual, necessary costs and expenses of preserving the Estate arising or accruing during the period commencing on the Petition Date and ending on the Effective Date; (b) Section 503(b)(9) Claims; (c) any Claim granted administrative priority status by Final Order of the Bankruptcy Court; (d) all fees and charges assessed against the Estate under Chapter 123 Title 28, United States Code, 28 U.S.C. § 1911-1930; (e) Professional compensation and reimbursement Claims; and (f) any and all other costs or expenses of administration of the Chapter 11 Case that are allowed by Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, Priority Claim, Disallowed Claim, or any of the Claims designated in any of the Classes under the Plan. In no event shall any Claim set forth on a Proof of Claim (or otherwise) be deemed to be an Administrative Expense Claim (except for any claim by a governmental unit for taxes (and for interest and/or penalties related to such taxes) due from Debtor for any tax year or period occurring after the Petition Date.

**"Allowed"** means, when used in reference to a Claim within a particular Class, an Allowed Claim in the specified Class.

**"Allowed Claim"** means a Claim or that portion of a Claim against Debtor that is not a Disputed Claim and (a) as to which a Proof of Claim was filed on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed; or (b) as to which no Proof of Claim was filed on or before the Bar Date, but which is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in a Final Order; or (b) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim) has the corresponding meaning. Notwithstanding any other provision of the Plan, the term Allowed Claim shall not include any Claim against which Debtor or the Liquidating Trustee has asserted a Cause of Action against such Holder of a Claim or an Affiliate thereof. An Allowed Claim shall not include any interest accrued after the Petition Date or any penalty.

**"Assets"** means all property, rights, benefits and entitlements, of any kind or character, of Debtor and/or its Estate as defined in Section 541 of the Bankruptcy Code, including all proceeds thereof and all right, title, and interest in and to all Cash, any Avoidance Actions or other Causes of Action that Debtor or its Estate may have as of the Effective Date or any time thereafter as part of the Liquidating Trust.

**"Avoidance Claims"** means those actions arising under Sections 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced to prosecute those actions as of the Effective Date. Such Avoidance Actions shall survive confirmation of the Plan.

"**Bankruptcy Code**" means the provisions of Title 11, United States Code, as enacted by the Bankruptcy Reform Act, Pub. L. No. 95-598, 95th Cong., 2d Sess. (1978), and as amended from time to time.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Middle District of North Carolina, in which the Chapter 11 Case was filed and is pending, or any other Court having primary jurisdiction of the Chapter 11 Case.

"**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court for the Middle District of North Carolina, as applicable to the Chapter 11 Case or proceedings therein.

"**Bar Date**" means May 3, 2018, as set forth in that certain Notice of Chapter 11 Bankruptcy Case [Docket No. 23].

"**Business Day**" means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"**Cash**" means cash or cash equivalents, official bank checks, certified checks and checks drawn on Debtor's properly funded accounts.

"**Causes of Action**" means any and all of the Estate's and/or Debtor's actions, claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoff rights, cross claims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, including all Avoidance Actions, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor, Person, party in interest or other third party, and including, as described, referenced, or otherwise set forth, in the Schedules or Disclosure Statement; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities which are expressly and specifically released or waived pursuant to the Plan or by Final Order of the Bankruptcy Court, and in such event and notwithstanding any other provisions in the Plan the terms and conditions of any such release or waiver as set forth in the Final Order approving any such release or waiver shall control. Certain of the Causes of Action may be described in further detail in the Schedules or Disclosure Statement, which are expressly and specifically incorporated into this definition. A Cause of Action will not under any circumstances be waived, limited or discharged, in whole or in part, as a result of the failure of the Plan Proponents and/ or Debtor, as the case may be, to describe such Cause of Action with specificity in the Plan, Schedules or the Disclosure

Statement. Causes of Action shall include, but not be limited to, those payments and other transactions identified in the Schedules. The Liquidating Trustee will not be estopped, precluded or otherwise limited in any manner whatsoever under any theory from pursuing the Causes of Action. The definition of "Causes of Action" shall be afforded the broadest interpretation allowable under applicable law.

"**Chapter 11 Case**" means the Chapter 11 Case of Debtor captioned *In re ASCO Liquidating Company*, Case No. 18-50018 C-11.

"**Claim**" means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, equitable, secured or unsecured; (b) any right to an equitable remedy for breach of performance if such right to an equitable remedy is reduced to judgment (liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured); or (c) any right to payment deriving from the rejection of an executory contract or unexpired lease as such right is limited by Section 502 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

"**Class**" means a category of Claims or Equity Interests, as described in Section 2 herein.

"**Committee**" shall have the meaning as defined above, at page 1 of this Plan.

"**Confirmation Date**" means the date on which the order is entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"**Confirmation Hearing**" means the hearing to consider confirmation of the Plan under Section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the order entered by the Bankruptcy Court in the Chapter 11 Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to Debtor and the Committee, and will include any amendments, supplements or modifications thereto made with the consent of Debtor and the Committee, or as determined by the Bankruptcy Court.

"**Convenience Claim**" means any Claim that is (a) equal to or less than One Thousand and 00/100 Dollars ($1,000.00); or (b) greater than One Thousand and 00/100 Dollars ($1,000.00) and the Holder of such Claim has voluntarily elected to reduce its Claim to One Thousand and 00/100 Dollars ($1,000.00) for purposes of being treated as a Convenience Claim under the Plan; provided, however, that

"Convenience Claim" does not include any Unclassified Claim, any Priority Claim, or any Secured Claim. All Convenience Claims are deemed Allowed for the purposes of this Plan and Distributions thereunder.

**"Creditor"** means any Person who holds a Claim against Debtor.

**"Debtor"** means ASCO Liquidating Company, f/k/a Auto Supply Company, Inc.

**"Debtor's Claim List"** shall have the meaning as defined in Section 6.1 below.

**"Designated Notice"** means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to Debtor, the Liquidating Trustee, the Bankruptcy Administrator for the Middle District of North Carolina, and the Liquidating Trust Committee, their respective counsel, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the Clerk, include in such request its name, contact person, address, telephone number and facsimile number, and serve a copy of such notice on counsel to Debtor, the Liquidating Trustee and counsel for the Liquidating Trustee at the addresses set forth Section 13 below.

**"Disallowed"** means, with reference to any Claim, a Claim or any portion thereof that is or has been disallowed or expunged by Final Order of the Bankruptcy Court, or is otherwise not Allowed.

**"Disclosure Statement"** means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 as amended, modified or supplemented.

**"Disputed Claim"** means a Claim, or any portion thereof, that has not been Allowed pursuant to the Plan or a Final Order, and includes, without limitation, (a) Claims that have not been scheduled by Debtor; (b) Claims that have been scheduled by Debtor with a zero, "Notice Only" or unknown amount; (c) Claims that have been scheduled by Debtor as contingent, unliquidated or disputed; (d) Claims that are the subject of an objection filed with the Bankruptcy Court that has not been settled, waived through payment, withdrawn or overruled by a Final Order of the Bankruptcy Court; and (e) for purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for objecting to the Allowance of Claims, any Claim that is not identified by Debtor, as an Allowed Claim shall be deemed a Disputed Claim.

**"Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by

Debtor or the Liquidating Trustee, and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by Debtor or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order the Court, zero.

**"Disputed Claims Reserve"** means the reserve to be established by the Liquidating Trustee to provide for payment of Disputed Claims, pending such Claims becoming Allowed or not Allowed.  The amount of the Disputed Claims Reserve shall include the aggregate Disputed Claim Amounts, at any given time, together with such additional amounts as determined by the Liquidating Trustee, in its discretion.

**"Distribution"** means payment of Cash to Holders of Claims pursuant to the terms of this Plan.

**"Distribution Date"** means any date that the Liquidating Trustee, in its discretion, deems it appropriate to make a Distribution or payment to Holders of Allowed Claims, subject to the Liquidating Trustee's right to delay Distributions as set forth in the Plan or as otherwise in the exercise of the Liquidating Trustee's discretion.

**"Effective Date"** means the first Business Day which is fourteen (14) days after the date on which the Confirmation Order becomes a Final Order, or such later date if requested by Plan Proponents and approved by the Court at the Confirmation Hearing.

**"Equity Interest"** or **"Equity Security Interest"** means the legal, equitable and contractual rights of any Person with respect to any or all common stock of, or membership interest or any other equity interest in Debtor.

**"Estate"** means the estate of Debtor in this Chapter 11 Case created as of the Petition Date under Section 541 of the Bankruptcy Code.

**"Executory Contract"** means any executory contract or unexpired lease as of the Petition Date, subject to Section 365 of the Bankruptcy Code, between Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan or subject to Section 1113 of the Bankruptcy Code.

"**Final Cash Distribution Date**" means the date on which a Distribution in Cash is made to Holders of Claims from the Liquidating Trust which exhausts all of the Liquidating Trust Assets and represents the final payment under the Plan.

"**Final Order**" means:

(a)    An order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which:

(1)    No appeal, petition for review, re-argument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, re-argument, rehearing, reconsideration, or certiorari has expired, or

(2)    Such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(b)    A stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

"**Ford**" means Ford Motor Company.

"**Ford Deficiency Claim**" means a General Unsecured Claim in an amount equal to the difference between the total Allowed amount of Ford's Claim (both Secured Claim and Unsecured Claim) and the value of Ford's collateral consisting of the Motorcraft Inventory securing such Claim (i.e., the total Allowed Claim amount minus the allowed Secured Claim amount), as determined consistent with Section 506(a) of the Bankruptcy Code, or otherwise agreed to by the Plan Proponents and Ford, as Holder of the Claim.

"**Health Claims**" mean claims submitted to BC/BS of North Carolina under Debtor's self-insured Health Plan.

"**Holder**" means a legal or beneficial holder of a Claim or Equity Interest.

"**Impaired**" means any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Initial Cash Distribution Date**" means the date on which a Distribution in Cash to Holders of Claims in Classes 1 through 3 is made by the Liquidating Trustee.

**"Liquidating Entities"** shall have the meaning as defined in Section 8.6 below.

**"Liquidating Trust"** means the trust to be established pursuant to this Plan and the Liquidating Trust Agreement that will effectuate the wind down of Debtor and make Distributions pursuant to the terms of the Plan and Liquidating Trust Agreement. With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement. In the event of any conflict between the terms of this Plan and the terms of the Liquidating Trust Agreement, the terms of this Plan shall govern.

**"Liquidating Trust Agreement"** means that certain agreement which will be entered into prior to the Effective Date by Debtor and the Liquidating Trustee pursuant to Section 8 of the Plan, which is subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order. The Liquidating Trust Agreement will be filed with Bankruptcy Court prior to Confirmation as a Plan Document.

**"Liquidating Trust Assets"** means (a) Causes of Action; (b) Assets; and (c) other assets, property or amounts of the Estate that the Liquidating Trustee obtains as part of performing its duties as the Liquidating Trustee pursuant to the Liquidating Trust Agreement, Plan or Confirmation Order, including proceeds of (a) through (c) above.

**"Liquidating Trust Committee"** means the committee of Persons appointed as of the Effective Date to advise the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan and the Liquidating Trust Agreement, as more fully described in Section 8.3 below.

**"Liquidating Trust Expense Reserve"** means the reserve established by the Liquidating Trustee, in its discretion, to pay the Post-Effective Date Expenses.

**"Liquidating Trustee"** means MEMA Financial Services Group, Inc., or such person or entity as may be appointed and approved by the Bankruptcy Court as the trustee of the Liquidating Trust as of the date of execution of the Liquidating Trust Agreement, and any successor Liquidating Trustee appointed as provided in the Liquidating Trust Agreement. Any changes to the identity of the Liquidating Trustee will be subject to approval of the Bankruptcy Court and will become part of the Plan pursuant to the Confirmation Order.

**"Official Ballot"** means the official ballot forms distributed in the Solicitation Package with the Disclosure Statement to Holders of Impaired Claims entitled to vote under Section 2 hereof in connection with the solicitation of acceptances of the Plan.

"**Person**" means an individual, corporation, partnership, governmental unit, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

"**Petition Date**" means January 8, 2018, the date on which Debtor filed its voluntary petition for relief commencing the Chapter 11 Case.

"**Plan**" means this Plan of Liquidation proposed by Debtor and the Committee as Plan Proponents, as such Plan may be amended or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

"**Plan Documents**" means collectively the Liquidating Trust Agreement, disclosure of the members of the Liquidating Trust Committee and the terms of engagement of the Liquidating Trustee.

"**Plan Proponents**" means collectively, Debtor and the Committee.

"**Post-Confirmation Expense(s)**" means the actual and reasonable costs and expenses of the Liquidating Trustee in performing its duties as set forth in this Plan, the Liquidating Trust Agreement and the Confirmation Order, including (a) compensation of the Liquidating Trustee and reimbursement of the Liquidation Trustee's expenses; (b) payment of all expense and other amounts incurred by the Liquidating Trustee in its operation and fulfilling its duties as set forth in the Plan and the Liquidating Trust Agreement; (c) quarterly Statutory Fees; (d) payment of all fees and expenses of the Liquidating Trust's respective Professionals; (e) payment of all costs of litigation, including expert witness fees, court reporter fees and related costs and expenses; and (f) paying and otherwise satisfying any and all other debts, charges and liabilities incurred by the Liquidating Trustee in connection with the performance of its duties and responsibilities related to the Plan and the Liquidating Trust Agreement.

"**Priority Claim**" means an Allowed Claim that is entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code and is not a General Unsecured Claim or Secured Claim.

"**Priority Tax Claim**" means any claim of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any professional (i.e. attorneys, accountants, financial advisors) (a) employed in the Chapter 11 Case with the approval of the Bankruptcy Court pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code; (b) employed by the Liquidating Trustee or the Liquidating Trust Committee, pursuant to this Plan; and (c) Debtor's Post-Confirmation engagement of Professionals, as approved by the Liquidation Trustee, as necessary to complete objections to and reconciliation of Claims.

"**Professional Fees and Expenses Claim**" means a Claim of a Professional pursuant to Sections 330(a) and 503(b)(2) of the Bankruptcy Code for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to the Effective Date.

"**Pro Rata**" means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims plus (b) Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Class as of the date of determination.

"**Quarterly Report**" means as defined in Section 8.4.7 below.

"**Schedules**" means the schedules of assets and liabilities and statement of financial affairs filed by Debtor under Section 521 of the Bankruptcy Code, as supplemented or amended through the Confirmation Date.

"**Section 503(b)(9) Administrative Claim**" means a Claim against Debtor alleged to be entitled to an administrative expense priority under Section 503(b)(9) of the Bankruptcy Code for goods sold to Debtor in the ordinary course of Debtor's business and received by Debtor within 20 days before the Petition Date.

"**Secured Claim**" means an Allowed Claim, that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which Debtor has an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such interest or lien as determined by a Final Order of the Bankruptcy Court under Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"**Statutory Fees**" means the fees and costs due and owing to the Clerk of the Bankruptcy Court for filing fees, mailing costs and other miscellaneous fees incurred by the Estate during the pendency of the Chapter 11 Case, and the quarterly fees due and owing to the Bankruptcy Administrator for the Middle District of North Carolina all as provided for in 28 U.S.C. § 1930.

"**Unclaimed Property**" means any funds payable to Holders of Allowed Claims which are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) funds for checks which have not been presented and paid within sixty (60) days of their issuance, thereby entitling the Liquidating Trustee to stop payment for such checks; (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property as set forth in Section 5.11 of this Plan; and (d) checks (and the funds represented thereby) which are not mailed due to the lack

of required tax identification information, but only following two mailed requests for this tax identification information.

**"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Expense Claims, Priority Claims and Priority Tax Claims.

**"Unsecured Claim"** and **"General Unsecured Claim"** means any Claim that is not an Unclassified Claim, Administrative Expense, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code; and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**"Unsecured Creditor"** means any Holder of an Unsecured Claim.

## SECTION 2    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS.

Claims and Equity Interests are divided into two (2) categories (i) Unclassified Claims and (ii) Classified Claims and Equity Interests. Classified Claims and Equity Interests are further divided into four (4) Classes.

### 2.1    Unclassified Claims.

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain types of Claims are automatically entitled to specific treatment. They are not considered Impaired, and Holders of such Claims do not vote on the Plan. Accordingly, the Plan Proponents have not placed these Claims in a Class, but rather they are Unclassified. The Unclassified Claims consist of (a) Administrative Expense Claims, including: (i) expenses arising in the ordinary course of Debtor's business after the Petition Date, (ii) Health Claims, (iii) Section 503(b)(9) Claims, and (iv) Professional Fees and Expenses Claims; (b) Priority Tax Claims; and (c) Statutory Fees.

### 2.2    Classified Claims and Equity Interests.

Pursuant to Section 1123 of the Bankruptcy Code, all Allowed Claims (other than Unclassified Claims) have been placed in a Class with other substantially similar Claims. The Plan Proponents have identified whether such Class of Claims is Impaired or Unimpaired for voting purposes. The Claims and Equity Interests classified herein consist of: Class 1, the Secured Claim of Ford; Class 2, Convenience Claims; Class 3, Unsecured Claims in an amount greater than $1,000.00; Class 4 , the Equity Interests of Charles A. Key, Jr. and R. Daniel Luper.

**SECTION 3          TREATMENT OF UNCLASSIFIED CLAIMS.**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, Priority Claims and Statutory Fees against Debtor are not classified for purposes of voting on, or receiving Distributions under the Plan.  Holders of such Claims are not considered Impaired and are not entitled to vote on the Plan.  All such Claims are instead treated separately hereby and in accordance with the Section 1129(a)(9)(A) of the Bankruptcy Code.

**3.1     Administrative Expense Claims.**

This category of Claims includes the Holders of all Claims for (a) expenses arising in the ordinary course of Debtor's business after the Petition Date; (b) Health Claims; (c) Section 503(b)(9) Claims; and (d) Professional Fees and Expenses Claims.  Debtor estimates the ordinary course of business expenses of Debtor to be less than the amount of $10,000.00 as of the Effective Date.  Debtor estimates that all Health Claims will have been submitted by the Health Claims Bar Date and will have been paid prior to the Effective Date.  Debtor estimates that Allowed Claims for Section 503(b)(9) Claims as of the Effective Date will be in the amount of $143,576.00.  Debtor estimates that Allowed Claims for Professional Fees and Expenses as of the Effective Date, net of retainer currently held by certain Professionals, will be in the amount of at least $350,000.00.  Professional Fees and Expenses Claims shall be subject to the fee application and allowance procedures of the Bankruptcy Court.  All Professionals seeking payment of Professional Fees and Expenses Claims shall file their respective final Fee Applications no later than sixty (60) days after the Effective Date.

Subject to the allowance procedures and the Administrative Claim Bar Date provided in this Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, on the date that is the later of (i) the  Effective Date (or as soon thereafter as practical) and (ii) a date that is thirty (30) days after entry of a Final Order determining and allowing such Allowed Administrative Expense Claim, or as soon thereafter as is practical.

**3.2     Priority Tax Claims and Priority Claims.**

This category consists of Priority Tax Claims and Priority Claims.  As of the Petition Date, Debtor estimates that the accrued and unpaid Priority Tax Claims consisted of (a) 2013 Federal Excise Taxes in the amount of $113.03 owed to the Internal Revenue Service; (b) 2017 Federal Excise Taxes in the amount $432.89 owed to the Internal Revenue Service; (c) 2017 personal property taxes owed to

North Carolina counties and municipalities in the approximate amount of $10,157.01; and (d) 2017 North Carolina Franchise Tax in the amount of $36,000.00 owed to the North Carolina Department of Revenue.

A Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of its Priority Tax Claim, Cash, in an amount equal to the Allowed amount of such Priority Tax Claim on the Effective Date (or as soon thereafter as practical).

Debtor believes that all pre-petition federal and state unemployment taxes, and federal and state payroll taxes, were paid in full in the ordinary course of Debtor's business. To the extent any Allowed Priority Tax Claim for federal and state unemployment taxes, or federal and state payroll taxes has not been paid in full as of the Effective Date, a Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of its Claim, Cash, in an amount equal to the Allowed amount of such Priority Tax Claim on the date that is the later of (i) the Effective Date (or as soon thereafter as practical) and (ii) a date which is thirty (30) days after entry of a Final Order determining and allowing such Priority Tax Claim, or as soon thereafter as is practical.

This category also consists of any Priority Claims which are not Administrative Expense Claims or Priority Tax Claims. Debtor believes that all pre-petition claims afforded priority under Section 507 the Bankruptcy Code were paid in full in the ordinary course of business prepetition, or post-petition pursuant to the First Day Orders. Debtor is not aware of any Priority Claims which remain unpaid. To the extent any Allowed Priority Claim has not been paid in full as of the Effective Date, a Holder of an Allowed Priority Claim shall receive, in full and final satisfaction of its Claim, Cash, in an amount equal to the Allowed amount of such Priority Claim on the date that is the later of (a) the Effective Date (or as soon thereafter as practical) and (b) a date which is thirty (30) days after entry of a Final Order determining and allowing such Priority Claim, or as soon thereafter as is practical.

### 3.3    <u>Statutory Fees</u>.

This category consists of the fees and costs due and owing to the Clerk of Court for filing fees, mailing costs and other miscellaneous fees incurred by the Estate during the pendency of the Chapter 11 Case, and the quarterly fees due and owing to the Bankruptcy Administrator for the Middle District of North Carolina, all as provided for in 28 U.S.C. § 1930. Debtor estimates that Allowed Statutory Fees as of the Effective Date will be in the amount of $4,875.00.

A Holder of an Allowed Statutory Fee shall receive, in full and final satisfaction of its Claim, Cash, in an amount equal to the Allowed amount of such Statutory Fee on the date that is the later of (a) the Effective Date and (b) the date

such Claim becomes due according to Section 1129(a)(12) and the Chapter 11 Operating Order [Docket No. 13].

## SECTION 4        TREATMENT AND CLASSIFICATION OF CLAIMS AND INTERESTS.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed and has not been paid or otherwise settled or otherwise satisfied prior to the Effective Date.

Class 2 is unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, Class 2 is deemed to accept the Plan and is not entitled to vote to accept or reject the Plan.

Classes 1 and 3 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

Class 4 is Impaired and will not receive or retain any property under the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 4 is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

### 4.1    Class 1: Secured Claim of Ford.

**Classification:** Ford has asserted a claim against Debtor in the amount of $3,041,842.73. Class 1 consists of the Allowed Secured Claim of Ford in the amount of $500,000.00, arising from the Ford Credit Account and Security Agreement, described in Sections III(D)(3) and V(D)(1) of the Disclosure Statement.

**Treatment:** Debtor shall pay Ford its Allowed Secured Claim, in full, from the proceeds of sale of the Motorcraft® Inventory which serves as Ford's collateral, plus an additional credit from Ford to be applied to the Allowed Secured Claim for a total credit of $500,000.00 in full satisfaction of Ford's Allowed Secured Claim. The Ford Deficiency Claim shall be treated and Allowed as a General Unsecured Claim in Class 3 in the Allowed amount of $2,541,842.73.

**Impairment and Voting:** The Claim of Class 1 is Impaired by the Plan. The Holder of the Class 1 Allowed Claim is entitled to vote to accept or reject the Plan.

**4.2**    **Class 2:  General Unsecured Claims Equal to or Less than $1,000.00.**

**Classification**:    Class 2 consists of all Holders of Allowed General Unsecured Claims in an amount of $1,000.00 or less and Holders of General Unsecured Claims in excess of $1,000.00 who agree to be treated as Class 2 Claims by election on the Official Ballot.

**Treatment**:  Each Holder of an Allowed Class 2 Claim shall be paid by the Debtor in full and final satisfaction of such Holder's Allowed General Unsecured Claim, a Cash payment in an amount equal to one hundred percent (100%) of such Holder's Allowed General Unsecured Claim, without interest, on a date that is the later of (a) within thirty (30) days after the Effective Date (or as soon as practical thereafter); and (b) if an objection is filed, a date which is thirty (30) days after entry of a Final Order determining and allowing such Class 2 Claim, or as soon as reasonably practical thereafter.

**Impairment and Voting**: The Claims of Class 2 are not Impaired by the Plan.  Each Holder of an Allowed General Unsecured Claim in Class 2 is deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of the Class 2 Allowed Claims are not entitled to vote to accept or reject the Plan.

**4.3**    **Class 3:  General Unsecured Claims in Excess of $1,000.00.**

**Classification:**    Class 3 consists of all Holders of Allowed General Unsecured Claims in excess of $1,000.00.

**Treatment:** Each Holder of an Allowed General Unsecured Claim in Class 3 shall receive in full and final satisfaction of such Holder's Allowed General Unsecured Claim, and after payment of or reservation for payment of Unclassified Claims, Disputed Claims Reserve, Post-Confirmation Expenses, Class 1 Claims and Class 2 Claims, (a) such Holder's *Pro Rata* share of the Liquidating Trust Assets on each Distribution Date, to be determined under the Plan, ending with a *Pro Rata* share of remaining Liquidating Trust Assets on the Final Cash Distribution Date, or (b) if such Holder makes an election on its Official Ballot to reduce the Allowed amount of its Claim to $1,000.00, and agrees to be treated as a Class 2 Convenience Claim, a payment by the Debtor of $1,000.00 (a) within thirty (30) days after the Effective Date (or as soon as practical thereafter); and (b) if an objection is filed, a date which is thirty (30) days after entry of a Final Order determining and allowing such Class 2 Claim, or as soon as reasonably practical thereafter.

**Impairment and Voting:**  The Claims of Class 3 are Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim in Class 3 is entitled to vote to accept or reject the Plan pursuant to Section 1126 of the Bankruptcy Code.

**4.4**     **Class 4:  Equity Security Interests.**

**Classification:**  Class 4 consists of the Equity Interests of Debtor's shareholders, Charles A. Key, Jr. and R. Daniel Luper.

**Treatment:**  Holders of Equity Interests in Class 4 shall not receive any Distributions on account of their Equity Interests.  Upon entry of a Final Order approving Confirmation of the Plan, the Equity Interests of Class 4 shall be deemed cancelled.

**Impairment and Voting:**  The Equity Interests of Class 4 are Impaired by the Plan.  The Holders of Equity Interests in Class 4 are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Equity Interests in Class 4 are not entitled to vote to accept or reject the Plan.

**SECTION 5        DISTRIBUTIONS UNDER THE PLAN.**

**5.1     Delivery of Distributions.**

Distributions to Holders of Allowed Claims shall be made (a) to the addresses set forth on the Proofs of Claim filed by such Holders; (b) to the addresses set forth in any written notices of address changes that are <u>both</u> filed with the Bankruptcy Court and delivered to Debtor after the date of any related Proofs of Claim and prior to the Confirmation Date; (c) to the addresses reflected in the Schedules if no Proof of Claim has been filed and Debtor has not received a written notice of a change of address pursuant to 5.1(b) above; (d) the addresses set forth in any written notices of address changes that are filed with the Bankruptcy Court and delivered to the Liquidating Trustee and its counsel and Debtor and its counsel (as set forth in Section 13 below) subsequent to the Effective Date; or (e) to Debtor's last known address for such Holders, if any, if no Proofs of Claim have been filed, and the addresses in the Schedules are incorrect.  The Debtor shall provide the Liquidating Trustee with any notices of address changes received pursuant to 5.1(b) on or within ten (10) days after the Effective Date.

**5.2     Transition of Distributions.**

Prior to delivering Cash and other Liquidating Trust Assets to the Liquidating Trustee on or about the Effective Date (or as soon as practicable thereafter), Debtor shall cause to be paid all Allowed, as of the Effective Date, (a) Administrative Expense Claims; (b) Priority Tax Claims; (c) Priority Claims; (d) Class 2 Convenience Claims; and (e) Statutory Fees.  On or before the Effective Date, Debtor shall account to the Liquidating Trustee for all of the above-described Allowed Claims paid and such of the above Allowed Claims, if any, not paid as of the Effective Date and the reason therefore and status thereof.

Debtor shall reasonably cooperate with the Liquidating Trustee providing information regarding Claims, Liquidating Trust Assets and related information necessary or helpful to transition to the Liquidating Trustee in commencing its role as set forth herein.   The Liquidating Trustee shall compensate Debtor's Professionals and employees for post-Effective Date efforts and cooperation.

**5.3    Manner of Payment.**

Any Cash payment or Distribution to be made under the Plan may be made by check from the Liquidating Trust.

**5.4    Distributions to Holders of Unclassified Claims.**

Upon the Confirmation Order becoming a Final Order, Distributions to be made to the Holders of Unclassified Claims on account of Claims that are Allowed Claims as of the Effective Date shall be made by Debtor in Cash within fifteen (15) days of the Effective Date, or as soon as practical thereafter.  Distributions to be made to Holders of Unclassified Claims on account of Claims that first become Allowed Claims after the Effective Date shall be made by the Liquidating Trustee in Cash within thirty (30) days after the date that an order allowing such Claim becomes a Final Order.

**5.5    Distributions to the Holder of Claims in Classes 1 and 2.**

Except as otherwise ordered by the Bankruptcy Court, and after paying or reserving for payment of Unclassified Claims, Disputed Claims Reserve, and Post-Confirmation Expenses, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date in Classes 1 and 2 shall be made by the Debtor within thirty (30) days after the Effective Date.  Distribution on account of Claims that first become Allowed Claims after the Effective Date in Classes 1 and 2 shall be made by the Liquidating Trustee within thirty (30) days, or as soon thereafter as practical, after the date that an order allowing such Claim becomes a Final Order.

**5.6    Distributions to the Holder of Claims in Class 3.**

Except as otherwise ordered by the Bankruptcy Court, and after paying or reserving for payment of Unclassified Claims, Disputed Claims Reserve, and Post-Confirmation Expenses, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date in Class 3 shall be made by the Liquidating Trustee (a) on the Initial Cash Distribution Date, or as soon thereafter as practical, on a *Pro Rata* basis; (b) on the Final Cash Distribution Date, on a *Pro Rata* basis; and (c) at such other times between the Initial and Final Cash Distribution Dates as are deemed appropriate by the Liquidating Trustee, in its discretion.

**5.7    No Distributions to Holders of Claims in Class 4.**

Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall make no Distributions to Holders of Equity Interests included in Class 4.

**5.8    Distribution to the Disputed Claims Reserve.**

From and after the Effective Date, the Liquidating Trustee shall set aside, segregate, and hold in the Disputed Claims Reserve Cash equal to the amount of Distributions on account of any Disputed Claims that may be distributable if such Disputed Claims become Allowed Claims. The Liquidating Trustee may estimate or approximate Disputed Claims in a manner and amount as it deems appropriate under the circumstances. The Liquidating Trustee is under no obligation to maintain such funds in an interest-bearing account.

**5.9    Minimum Distributions and Rounding.**

In the discretion of the Liquidating Trustee, if the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $25.00 on a particular Distribution Date, the Liquidating Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50.00. Notwithstanding the preceding sentence, if the aggregate amount of Cash Distribution owed to any Holder of an Allowed Claim never equals or exceeds $25.00, then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

In the discretion of the Liquidating Trustee, if the amount of Cash to be distributed to the Holder of an Allowed Claim would require payment of a fraction of a dollar, the actual Cash payment may reflect a rounding of such fraction to the nearest whole dollar.

**5.10    Right of Setoff and Recoupment.**

Pursuant to Section 553 of the Bankruptcy Code, or other statutory or equitable non-bankruptcy law, Debtor or the Liquidating Trustee, as the case may be, shall withhold payments to any Holder of any Allowed Claim or any Affiliate thereof on account of the existence of any Cause of Action or potential Cause of Action against such Holder of an Allowed Claim or any Affiliate thereof. The Liquidating Trustee may exercise the right of setoff or recoupment against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that Debtor and/or the Liquidating Trustee may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating

Trustee of any such claims, rights and causes of action that the Liquidating Trust may possess against such Holder.

**5.11   Undeliverable Distributions.**

If any Distribution is returned as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is timely notified in writing of such Holder's then-current address. Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until such time as a Distribution becomes deliverable. Undeliverable Distributions shall not be entitled to any interest, dividends or other accruals of any kind. Any check that is not cashed or otherwise deposited within three (3) months after the check's date shall be deemed an undeliverable Distribution under this Plan.

Notwithstanding anything to the contrary in this Plan, the Confirmation Order or the Liquidating Trust Agreement, if any Holder of an Allowed Claim does not provide written notice of such Holder's current address as provided above, and assert such Holder's interest in an undeliverable or unclaimed Distribution within sixty (60) days after any such Distribution Date, such Distribution will be deemed to be Unclaimed Property pursuant to Section 347(b) of the Bankruptcy Code, and such Holder shall be deemed to have forfeited its Distribution and shall be forever barred and enjoined from asserting any claim for an undeliverable or unclaimed Distribution against Debtor, the Liquidating Trustee, the Estate, or their property without further notice, action or Bankruptcy Court Order.  In such cases, any Cash held as Unclaimed Property shall become available for Distribution to Class 3 on the Final Cash Distribution Date.

**SECTION 6          PROCEDURES FOR DISPUTED CLAIMS.**

**6.1   Objections to Claims.**

From and after the Confirmation Date, Debtor shall have the exclusive right and standing to object to and contest the allowance of Claims, compromise and settle any Disputed Claim, subject to Bankruptcy Court approval as set forth in the Plan, and litigate to final resolution any objection to Claim.  Except to the extent that a Claim is already Allowed pursuant to a Final Order, Debtor reserves the right to object to Claims for a period of ninety (90) days after the Confirmation Date ("Claim Objection Deadline"), which deadline may be extended upon a motion filed with the Bankruptcy Court by Debtor prior to the expiration of the Claim Objection Deadline.  No Distribution shall be made to a Holder of Claim under the Plan unless and until such Claim is an Allowed Claim.   Debtor shall maintain a detailed list of all Claims (the "Debtor's Claims List") including Claims that are Unclassified Claims and Claims in any Class and categorize all claims as Allowed, Disputed, under investigation, subject to pending objection or otherwise and deliver to the Liquidating Trustee (per Section 13) an updated Debtor's Claims List by the end of

each month after the Effective Date.  To prevent duplication of efforts and costs, the Liquidating Trustee shall be entitled to fully rely upon the Debtor's Claims List, without further investigation or diligence, in determining the amount of Allowed Claims, Unclassified Claims, the Disputed Claims Reserve, and as otherwise necessary to fulfill the Liquidating Trustee's duties and obligations under this Plan, the Confirmation Order and the Liquidating Trust Agreement.

If the Holder of a Disputed Claim and Debtor reach an agreement regarding the Allowed amount of a Claim and such agreed amount does not exceed $10,000.00 or does not vary from the Claim amount scheduled by Debtor by more than $10,000.00, Debtor shall be authorized to enter into and effectuate a settlement without any further notice to parties in interest or approval and order of the Bankruptcy Court.  The settled Claim shall be an Allowed Claim for the amount agreed upon by the Holder of the Claim and Debtor.  If the Holder of a Disputed Claim and Debtor reach an agreement regarding the Allowed amount of a Claim and such agreed amount exceeds $10,000.00 or varies from the amount scheduled for the Claim by Debtor by more than $10,000.00, Debtor shall provide Designated Notice of the proposed settlement consistent with Bankruptcy Rules 2002(a)(3) and 9019(a).  If an objection to a proposed settlement is filed within the applicable period provided by Bankruptcy Rule 2002(a)(3), then the Bankruptcy Court shall schedule a hearing to resolve the objection to the compromise and settlement of the Claim and determine the Allowed amount of the Claim.  The Liquidating Trustee, after the Effective Date, shall have standing to object or otherwise be heard to any proposed settled Claim that is filed with the Bankruptcy Court pursuant to the above procedure.

**6.2**     **Payments and Distributions with Respect to Disputed Claims.**

If all or any portion of a Claim is a Disputed Claim, or if Debtor has an unresolved claim or the Liquidating Trustee has a Cause of Action against the Holder of a Disputed Claim or Affiliate thereof, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim by settlement between the parties or Final Order and the Claim has been Allowed.

**6.3**     **Distribution after Allowance.**

After such time as a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall distribute from the Disputed Claims Reserve held by the Liquidating Trust to the Holder thereof the Distribution to which such Holder is entitled under the Plan, within thirty (30) days of entry of a Final Order on the Allowed Claim.

## SECTION 7      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

On the Effective Date, all Executory Contracts and Unexpired Leases of Debtor that have not otherwise been assumed and assigned in the Final Sale Order or any other Final Order, or rejected, prior to the Effective Date, shall be deemed rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of all Executory Contracts and Unexpired Leases, not previously assumed or assumed and assigned by Final Order, as of the Confirmation Date, pursuant to Section 365 of the Bankruptcy Code.

### 7.1    **Insurance Contracts.**

Notwithstanding this Section 7 of the Plan providing for the rejection of Executory Contracts, any insurance policy in which Debtor is an insured or a beneficiary that is deemed to be an Executory Contract, which has not previously been terminated or rejected, shall neither be assumed or rejected by operation of the Plan and the Confirmation Order, but shall remain subject to assumption or rejection by the Liquidating Trustee, pursuant to the provisions of Section 365 of the Bankruptcy Code following the Effective Date.

### 7.2    **Rejection Claim Bar Date.**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and the Confirmation Order gives rise to a Rejection Claim for monetary damages by the counterparty to such Executory Contract or Unexpired Lease, such Claim shall be forever barred and shall not be enforceable against Debtor, the Liquidating Trust, or the Estate unless a Proof of Claim is filed with the Bankruptcy Court and served on Debtor and the Liquidating Trustee and their respective counsel within thirty (30) days after the Confirmation Date. All such Rejection Claims for which Proofs of Claim are required to be filed, if Allowed, will be classified and treated as Class 3 General Unsecured Claims, subject to the provisions of the Plan consistent with the provisions of Section 502(g)(1) of the Bankruptcy Code.

## SECTION 8      MEANS OF IMPLEMENTING THE PLAN.

This Plan provides for the disposition of all Debtor's property, including the Assets, and the Distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the terms of this Plan. A Liquidating Trust shall be created on the Effective Date and a Liquidating Trustee appointed for the purpose of liquidating any remaining Assets of the Estate, investigating and pursuing Causes of Action and distributing to Holders of Allowed Claims Debtor's accumulated Cash and any funds generated from the prosecution of Causes of Action and from other Liquidating Trust Assets administered by the Liquidating Trustee.

**8.1    Creation of the Liquidating Trust.**

Prior to the Effective Date, Plan Proponents shall execute the Liquidating Trust Agreement.  On the Effective Date, the Liquidating Trust shall be created. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

On the Effective Date, Debtor shall transfer all Assets, including Cash and the Causes of Action to the Liquidating Trust and Debtor shall not retain any Assets, unless expressly authorized by the Liquidating Trustee.  On the Effective Date, the Liquidating Trust shall be created.  The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan and the Confirmation Order.  The terms of the employment of the Liquidating Trustee shall be part of the Plan Documents and approved as part of the Confirmation Hearing.  On the Effective Date, Debtor shall, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, transfer the Liquidating Trust Assets to the Liquidating Trust.  All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances of any kind or character.  The Confirmation Order shall constitute a determination that the transfer of the assets to the Liquidating Trust is legal, valid, and binding consistent with the laws of the State of North Carolina and the Bankruptcy Code.  The Liquidating Trust Assets will be held in trust for the benefit of the Holders of Allowed Claims, as the Liquidating Trust beneficiaries, pursuant to the terms of the Plan and the Liquidating Trust Agreement.  Except as specifically set forth herein, Holders of Allowed Claims shall look solely to the Liquidating Trust for the satisfaction of their Claims.  The Liquidating Trustee will make Distributions on account of Holders of Allowed Claims in accordance with the terms of the Plan.  For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability or standing of the Liquidating Trustee to assert any Causes of Action transferred to the Liquidating Trust.  In connection with any Causes of Action that are included in the Liquidating Trust, any attorney-client privilege, work-product privilege or protection, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) applicable to Debtor or the Estate will also exist for the benefit of the Liquidating Trust and will vest in the Liquidating Trustee and its representatives, and will also be preserved for and as to Debtor.  The Liquidating Trust is authorized to take all necessary actions to benefit from such privileges.  For federal income tax purposes, the transfer of the Assets to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Liquidating Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

**8.2    Treatment of the Liquidating Trust for Federal Income Tax Purposes**.

The Liquidating Trust will be established for the primary purpose of liquidating the  remaining assets, including the Causes of Action and distributing

the proceeds thereof along with the Net Sale Proceeds, in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust has no objective to continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust will liquidate the assets and distribute their proceeds in an expeditious but orderly manner, and will make timely Distributions to Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Liquidating Trust Agreement. The Liquidating Trust shall not unduly prolong its duration, and shall not be deemed a successor-in-interest of Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust for federal income-tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "IRC"). If the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Liquidating Trustee shall take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal-tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IRC), including, if necessary, creating or converting it into a North Carolina limited partnership or limited liability company that is so classified. For federal income-tax purposes, Holders of Allowed Claims will be treated as the grantors and owners of the Liquidating Trust; therefore, they will be responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

As soon as reasonably practical after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in his sole discretion) will value the assets transferred to the Liquidating Trust based on the good faith determination of the value of such assets. The valuation will be used consistently by all parties (including Debtor, the Liquidating Trustee, and the Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court will resolve any dispute regarding the valuation of the assets.

**8.3**    **Termination of the Committee and Creation of Liquidating Trust Committee.**

On the Effective Date, the Committee shall be dissolved and the retention and employment of Committee's Professionals shall terminate. The members of the Committee shall be released and discharged of and from (a) any and all claims or causes of action against such members relating directly or indirectly to the Chapter 11 Case and (b) all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case.

On the Effective Date, a Liquidating Trust Committee shall be created. The Liquidating Trust Committee shall consist of not less than three (3) nor more than six (6) members that are Liquidating Trust beneficiaries of the Liquidating Trust. The identity of the members of the Liquidating Trust Committee shall be disclosed by the Committee and filed with the Bankruptcy Court and served via ECF to parties in interest not later than three (3) days prior to the Confirmation Hearing as part of the Plan Documents.

In the event the death or resignation of any member of the Liquidating Trust Committee reduces the total number of members to less than three (3), the remaining members of the Liquidating Trust Committee shall have the right to designate a successor member. If a Liquidating Trust Committee member assigns or releases its Claims against the Liquidating Trust or releases the Liquidating Trust from the obligation to pay its Claims, such act shall constitute a resignation from the Liquidating Trust Committee. Remaining members of the Liquidating Trust Committee shall endeavor to designate a successor within thirty (30) days of any such death or resignation; _provided_, _however_, until a successor member is designated or in the event a successor member is not, after diligent efforts, found, the remaining members of the Liquidating Trust Committee may continue to function despite its reduced number. Upon the Final Cash Distribution Date, the Liquidating Trust Committee, without further action or notice, shall be dissolved and the members thereof shall be released and discharged of and from all further involvement related to and arising from their service as Liquidating Trust Committee members.

### 8.3.1  Operation of the Liquidating Trust Committee.

The members of the Liquidating Trust Committee shall undertake their duties as specified in the Plan and Liquidating Trust Agreement. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability to any Holder of an Allowed Claim, Equity Interest Holder, Debtor, the Liquidating Trust, the Liquidating Trustee, any other parties in interest in the Chapter 11 Case, or any other Person and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions constituting gross negligence, willful misconduct, or fraud. The Liquidating Trust Committee shall have the right to retain counsel and other Professionals without further order of the Bankruptcy Court, which Professionals shall be paid their reasonable fees and expenses by the Liquidating Trust. In addition, the members of the Liquidating Trust Committee shall serve without compensation, but shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Liquidating Trust Committee consistent with the provisions of Section 503(b)(3)(F) of the Bankruptcy Code. The Bankruptcy Court shall retain jurisdiction to hear any disputes relating to the fees and expenses of the

Liquidating Trust Committee's Professionals, which disputes, if any, shall be resolved by the Bankruptcy Court after notice and hearing.

### 8.3.2 <u>Rights and Duties of the Liquidating Trust Committee</u>.

The Liquidating Trust Committee, who shall serve without compensation, shall expressly have no fiduciary duty, responsibility or any other duties of any kind or character to any Creditor, Holder of a Claim, party in interest or any other Person. The sole purpose of the Liquidating Trust Committee is: (a) to provide the Liquidating Trustee with a sounding board should the Liquidating Trustee desire input from representative Creditors; (b) to remove and/or appoint a successor Liquidating Trustee should the Liquidating Trustee appointed in the Confirmation Order resign, be removed, become incapacitated or be otherwise unable to continue to serve as Liquidating Trustee. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability or duty of any kind or character whatsoever to any Holder of a Claim, Person, Interest Holders, Debtor, the Liquidating Trust, the Liquidating Trustee, or any other parties in interest in the Chapter 11 Case and shall not be liable for any acts or omissions of any kind or character whatsoever while acting in that capacity. In addition, the members of the Liquidating Trust Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable out-of-pocket expenses incurred in connection with their involvement as members of the Liquidating Trust Committee. The Liquidating Trust Committee shall have independent standing to appear and be heard and the Bankruptcy Court shall retain jurisdiction to hear, after Designated Notice, any disputes relating to the removal of the Liquidating Trustee, appointment of a successor Liquidating Trustee, and fees and expenses of the Liquidating Trust Committee, its individual members and Professionals.

### 8.3.3 **Role of the Liquidating Trust Committee.** The Liquidating Trust Committee shall:

a. Have no duties or obligations of any kind or character whatsoever to any Holder of a Claim, Interest Holder, Person, or current or former officer, director, shareholder, manager, member or employee of Debtor;

b. Act solely as advisors and to be a sounding board to the Liquidating Trustee, upon the Liquidating Trustee's request;

c. Be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to this Plan and in accordance with the terms of this Plan;

d.    Have authority to appoint a successor Liquidating Trustee and Liquidating Trust Committee members upon the removal, incapacitation or death of the Liquidating Trustee or Liquidating Trust Committee member, as the case may be;

e.    Review, approve, question and, if appropriate, object to the fees and expenses of the Liquidating Trustee and its Professionals; such approval may be by negative notice by the Liquidating Trustee to each of the Liquidating Trust Committee members.

f.    Perform such additional functions, if any, as may be agreed to by the Liquidating Trustee, or as are otherwise provided for in this Plan, the Confirmation Order, or the Liquidating Trust Agreement.

**8.4    Appointment of the Liquidating Trustee.**

On the Effective Date, MEMA Financial Services Group, Inc. shall be appointed as the Liquidating Trustee. The terms of the employment of the Liquidating Trustee shall be approved in the Confirmation Order. The Liquidating Trustee will pay or otherwise make Distributions on account of all Allowed Claims against Debtor in accordance with the terms of the Plan.

**8.4.1    General Powers of the Liquidating Trustee.**

Subject to any limitations expressly and specifically set forth in this Plan, the Confirmation Order, or the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee may take all such actions as it deems necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

a.    Make all Distributions, after reserving amounts deemed appropriate by the Liquidating Trustee in its discretion, as contemplated under the Plan;

b.    Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Liquidating Trust Agreement or this Plan;

c.    Abandon any of the assets of the Liquidating Trust if the Liquidating Trustee, after consultation with the Liquidating Trust Committee, concludes that such assets are of no material benefit to the Creditors;

d.      Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party, intervenor or otherwise in any legal proceeding, administrative proceeding, arbitrative proceeding or other non-judicial proceeding and litigate claims and Causes of Action on behalf of the Liquidating Trust, including without limitation all state and federal causes of action or any other litigation which constitute a Liquidating Trust Asset or otherwise benefits the Creditors and pursue to settlement or judgment such actions. The Liquidating Trustee shall have standing and may engage Professionals to prosecute Causes of Action, and otherwise represent the Liquidating Trust generally;

e.      Participate as a party-in-interest in any proceeding before the Bankruptcy Court involving the Chapter 11 Case;

f.      Act in the name of or in the place of the Liquidating Trust or the Debtor in any action before the Bankruptcy Court or any other judicial or administrative body;

g.      Take actions and exercise remedies against any entity or Person that owes money to or has breached the rights of Debtor, Estate or Liquidating Trust, including the remedies available under any deed of trust, security agreement, contract, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; and, declare, negotiate or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document;

h.      Reach an agreement with Debtor, its former employees or its counsel to take specific action on behalf of the Liquidating Trust or Debtor. Select and employ such Professionals, consultants, agents or employees, whether or not formerly employed or engaged by Debtor, as the Liquidating Trustee deems necessary to assist in the administration of the affairs of the Liquidating Trust and compensate such persons to whom the Liquidating Trustee may delegate actions, including executing tax returns, corporate dissolution instruments or other documents on behalf of Debtor after the Effective Date;

i.      Propose, and if appropriate, take steps to obtain Bankruptcy Court approval, of any amendment, modification or supplement to this Plan or the Liquidating Trust Agreement;

j.    File dissolution/termination documents with the appropriate governmental agencies to dissolve Debtor and the Liquidating Trust;

k.    Receive, conserve and manage the assets of the Liquidating Trust and sell, pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code and this Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

l.    Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

m.    Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Trust;

n.    Pay all lawful expenses, debts, and liabilities of the Liquidating Trust;

o.    Enforce all provisions of this Plan and the Confirmation Order;

p.    Protect, perfect and defend the title to any of the assets of the Liquidating Trust and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Trust;

q.    Carry insurance coverage, including insurance to protect the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Committee against claims brought against the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Committee acting within such capacities, in amounts as the Liquidating Trustee deems advisable. Notwithstanding the above, the Liquidating Trustee shall be under no obligation to obtain or carry such insurance;

r.    Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation the Disputed Claims Reserve and the Liquidating Trust Expense Reserve) as in the Liquidating Trustee's judgment may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust;

s.    Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of this Plan; and

t.　　Consult, in the discretion of the Liquidating Trustee, with the Liquidating Trust Committee regarding material matters relating to the Liquidating Trust, including the retention of, and fee arrangements with Professionals representing the Liquidating Trust.

**8.4.2**　**Obligations of the Liquidating Trustee**.

Notwithstanding anything in this Plan or the Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall have the following duties to:

a.　　To prepare and file with the Bankruptcy Court the Quarterly Report.　In addition, the Liquidating Trustee may, in its discretion, prepare periodic reports, as the Liquidating Trustee deems appropriate, providing information regarding the administration of the Liquidating Trust.　Such reports may include additional information regarding the administration of the Liquidating Trust;

b.　　Maintain records and books of account relating to the Liquidating Trust's assets, the management thereof, Distributions and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust;

c.　　Open, maintain, and close as appropriate bank accounts in the name of the Liquidating Trust and to deposit any Cash in accounts, as it deems appropriate, and, interest earned, if any, shall be added to the Liquidating Trust Assets and distributed in accordance with the Plan.　The Liquidating Trustee shall be authorized, but not obligated, to continue to use any bank accounts used by Debtor prior to the Effective Date.　The Liquidating Trustee shall not be obligated to deposit Cash Assets of the Liquidating Trust into an interest-bearing bank account.

d.　　Establish and maintain the Disputed Claims Reserve, either via bookkeeping entries or bank account;

e.　　File all reports and appropriate tax returns as necessary;

f.　　Take such actions as are necessary to prosecute, determine not to prosecute, resolve or compromise, as appropriate, all Causes of Action;

g.　　Conduct investigations deemed appropriate by the Liquidating Trustee, including, if deemed appropriate, examinations under Bankruptcy Rule 2004; and

h.　　Conduct the administration of the Chapter 11 Case and the Plan, including to obtain a Final Decree and to pay any Statutory Fees.

### 8.4.3    Resignation/Removal of the Liquidating Trustee.

The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court, and providing the Designated Notice.  Any such resignation shall become effective on the earlier to occur of (a) sixty (60) days after the filing date of such notice or (b) the appointment of a successor Liquidating Trustee. The Liquidating Trust Committee may remove the Liquidating Trustee at its discretion upon unanimous vote of all members and upon approval of the Bankruptcy Court after the Designated Notice and opportunity for a hearing before the Bankruptcy Court, provided, however, that the Liquidating Trust Committee shall provide the Liquidating Trustee with thirty (30) days written notice of its intent to remove the Liquidating Trustee.  If the Liquidating Trustee believes that its removal is not in the best interests of the Creditors, then the Liquidating Trustee may oppose such removal and be heard by the Bankruptcy Court.  All reasonable fees and expenses incurred by the Liquidating Trustee and the Liquidating Trust Committee in pursuit of the removal or continuation of the Liquidating Trustee shall be paid by the Liquidating Trust.

### 8.4.4    Appointment of Successor Liquidating Trustee.

In the event of the death or resignation of the Liquidating Trustee, the Liquidating Trust Committee shall designate a successor Liquidating Trustee.  Any successor Liquidating Trustee appointed hereunder shall execute and file with the Bankruptcy Court and provide Designated Notice of a statement accepting such appointment, setting forth the terms of engagement, and agreeing to be bound by the terms of the Plan, Confirmation Order and the Liquidating Trust Agreement and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.  In the case of a removal of the Liquidating Trustee, then such successor shall be effective upon order of the Bankruptcy Court.

### 8.4.5    Settlement Authority.

After consultation with the Liquidating Trust Committee (including by negative notice), the Liquidating Trustee shall be authorized to resolve and enter into settlements of Causes of Action and otherwise resolve disputes, without notice or further order of the Bankruptcy Court; provided, however, that, with respect to matters involving more than $100,000.00 in controversy, the Liquidating Trustee shall only be authorized to resolve such matters upon approval by Final Order of the Bankruptcy Court after providing Designated Notice.  Notwithstanding the foregoing, in the event the Liquidating Trustee resolves, settles or otherwise compromises any Cause of Action any matter in which the amount in controversy is less than $10,000.00, then the Liquidating Trustee may finalize same without either Bankruptcy Court Order or prior notice to the Liquidating Trust Committee.

### 8.4.6   Bonding of Liquidating Trustee.

The Liquidating Trustee will not be obligated to obtain a bond or insurance, but may do so, in its sole discretion, in which case the expense incurred by such bonding will be paid by the Liquidating Trust.

### 8.4.7   Post-Confirmation Operating Reports.

Every three months, beginning on the last business day of the third (3rd) month anniversary of the Effective Date, or such other date as shall be determined by the Liquidating Trustee, the Liquidating Trustee shall file a report with the Bankruptcy Court consistent with the requirements of the Chapter 11 Operating Order [Docket No. 13] setting forth the assets, liabilities and activities of the Liquidating Trust during the prior three months, including a statement of all amounts paid for compensation of Professionals and the Liquidating Trustee (the "Quarterly Report"), and the Liquidating Trustee shall serve a copy upon all parties entitled to Designated Notice.

### 8.4.8   Dissolution of Debtor.

Debtor will be dissolved by the Liquidating Trustee (or those to whom the Liquidating Trustee delegates) at any time after the Effective Date, but no later than six (6) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the sixth (6th) anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which will automatically extend the term pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Assets.  After (a) the final Distribution of the Disputed Claims Reserve, the Liquidating Trust Expenses and the balance of the Liquidating Trust Assets pursuant to this Plan and upon the occurrence of the Final Cash Distribution Date; (b) the filing by or on behalf of Debtor of articles of dissolution with the North Carolina Secretary of State in accordance with this Plan and applicable law and; and (c) filing a motion for a final decree and obtaining same in the form of a Final Order of the Bankruptcy Court, the Liquidating Trust will be deemed dissolved for all purposes without the necessity for any other or further actions and the Liquidating Trustee, the Liquidating Trust Committee and their respective Professionals will be discharged and have no further responsibilities or obligations of any kind or character.

### 8.4.9   Full and Final Satisfaction Against Debtor and Liquidating Trust.

On and after the Effective Date, Debtor, the Liquidating Trust and Liquidating Trustee will have no liability on account of any Claims or Equity Interests except as expressly set forth in the Plan.  All payments and all Distributions made by the Liquidating Trustee under the Plan will be in full and

final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against Debtor.

**8.5** **Establishment of Liquidating Trust Expense Reserve and Disputed Claims Reserve**.

The Liquidating Trustee is authorized to establish a reserve account in which an amount of Cash is held by the Liquidating Trustee in reserve for Liquidating Trust Expenses, including, without limitation, (a) any litigation expenses, expert witness fees and reasonable legal fees of the Liquidating Trust or Liquidating Trustee; (b) the costs of filing tax returns and other reports that the Liquidating Trustee or Debtor may be required to file; (c) Professionals and the Liquidating Trustee fees and expenses; and (d) such other amounts as determined by the Liquidating Trustee.  Any amounts constituting Unclaimed Property shall be included in the Liquidating Trustee's general operating account.  The Liquidating Trustee is authorized to establish a bank account for the Disputed Claim Reserve and deposit such amounts in accordance with the Plan and Liquidating Trust Agreement.

**8.6** **Limitation on Liability**.

The Liquidating Trust, Liquidating Trustee, the Liquidating Trustee's affiliates (as defined in Section 101(2) of the Bankruptcy Code), the Liquidating Trust Committee (including its individual members) and their respective representatives, agents, Professionals, employees, successors or assigns, expressly including Mr. Daniel Lee Pike, as a representative of the Liquidating Trustee (collectively the "Liquidating Entities") shall not be liable or otherwise responsible in any manner whatsoever for any act or omission of any kind or character, in any capacity, to any Holder of a Claim, Creditor, Person, party in interest, or any third party, with the sole exception for specific acts or omissions determined by Final Order to arise solely from gross negligence, willful misconduct or fraud.  The Liquidating Trustee may, in connection with the performance of its duties and in its sole and absolute discretion, consult with the Liquidating Trustee's Professionals, and will not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Professionals, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, the Liquidating Trustee will not be under any obligation to consult with the Liquidating Trustee's Professionals, and the determination not to do so will not result in the imposition of liability upon the Liquidating Trustee, its Professionals or any other of the Liquidating Entities.

Notwithstanding anything in this Plan, the Liquidating Trust Agreement, Confirmation Order or otherwise under contract or applicable law to the contrary, neither the Liquidating Trustee nor any of the other Liquidating Entities shall be liable for (and the Liquidating Trust Assets shall not be burdened or otherwise

available to pay or otherwise satisfy any judgment or order from any court of competent jurisdiction related thereto) any act or omission taken or omitted to be taken other than acts or omissions determined by Final Order to have arisen solely from gross negligence, willful misconduct or fraud.  No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, the Liquidating Trust or any other of the Liquidating Entities arising from or otherwise related to any legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed or otherwise agreed or consented to, whether expressly or impliedly, by the Liquidating Trustee relating directly or indirectly to this Plan, the Liquidating Trust Agreement or by reason of the creation of any indebtedness by the Liquidating Trustee or otherwise by the Liquidating Trustee carrying out its duties or discretion under the Liquidating Trust Agreement or this Plan.  All such liabilities, covenants, and agreements of the Liquidating Entities, or any of them, whether in writing or otherwise, pursuant to or in carrying out the purpose of this Plan or the Liquidating Trust Agreement will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets or such part thereof as will, under the terms of any such agreement or understanding, be liable therefore, or will be evidence only of a right of payment out of the Liquidating Trust Assets, as the case may be.  Every undertaking, contract, covenant, agreement or understanding entered into in writing by the Liquidating Trustee may (but will not be necessary to invoke the full protections of these Limitation of Liabilities) provide expressly against the personal liability of the Liquidating Trustee.

The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and all other Liquidating Entities from and against and in respect to any and all liabilities, losses, damages, claims, causes of action, costs and expenses in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Entities, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, provided, however, that no such indemnification will be made for such actions or omissions of the Liquidating Trustee or any other of the Liquidating Entities solely as a result of gross negligence, willful misconduct or fraud as determined by Final Order.

**8.7    Reliance on Documents.**

The Liquidating Trustee may rely, and will be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed by the proper Person or Persons.

**8.8      Requirement of Undertaking.**

The Liquidating Trustee may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Liquidating Trustee for any act taken or omitted by the Liquidating Trustee, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including, without limitation, reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

**8.9      Termination of the Liquidating Trust.**

In furtherance of Section 8.4.8 above, the Liquidating Trust shall remain and continue in full force and effect until the earlier of (a) the date on which all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the Bankruptcy Court or the appropriate state, federal or local governmental authorities, and a Final Order has been entered closing the Chapter 11 Case.

**8.10      Retention of Causes of Action.**

Causes of Action and Avoidance Claims compromised and resolved by any settlement approved pursuant to Bankruptcy Rule 9019 by Final Order entered by the Bankruptcy Court, including Claims and Causes of Action described in Section IV.A.8 of the Disclosure Statement, are expressly excluded from the terms and provisions of this paragraph.  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action and Avoidance Claims are hereby preserved by the Plan, notwithstanding the occurrence of the Effective Date. The Liquidating Trust shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action and Avoidance Claims, whether arising before or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action and Avoidance Claims shall be preserved. No entity may rely on the absence of a specific reference in the Plan, the Disclosure Statement, Bankruptcy Schedules or Statement of Financial Affairs of any Cause of Action or Avoidance Claim against them as any indication that the Liquidating Trust will not pursue any and all available Causes of Action and Avoidance Claims against them. The Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action and Avoidance Claims.  The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment and exhaust appeals relating to any such Causes of Action and Avoidance Claims and to decline to do any of the foregoing without the consent or approval of

any third party or further notice to or action, order, or approval of the Bankruptcy Court. On the Effective Date, all Causes of Action and Avoidance Claims shall become the sole property of the Liquidating Trust, which shall hold all rights on behalf of the Debtor and its bankruptcy estate, to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal) and Avoidance Claims. The failure to list or describe any unknown Cause of Action and Avoidance Claims herein is not intended to and shall not limit the rights of the Liquidating Trust to pursue any known or unknown Cause of Action and Avoidance Claim. The Liquidating Trustee shall have standing and authority to prosecute any and all Causes of Action and Avoidance Claims on behalf of the Liquidating Trust.

## SECTION 9          EFFECTS OF CONFIRMATION.

### 9.1     **Binding Effect.**

Confirmation of the Plan will authorize (a) the transfer of Debtor's Assets to the Liquidating Trust; (b) the Liquidating Trustee to pursue Causes of Action; (c) the Distribution to Holders of Allowed Claims on and after the Effective Date, including the Initial Cash Distribution Date and the Final Cash Distribution Date, as applicable; and (d) the dissolution of Debtor, as provided in the Confirmation Order. Confirmation of the Plan serves to make the Plan binding upon Debtor, all Holders of Claims and Equity Interests, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Committee, and other parties in interest, regardless of whether they cast an Official Ballot to accept or reject the Plan.

### 9.2     **No Discharge of Debtor.**

In accordance with Section 1141(d)(3) of the Bankruptcy Code, Debtor will not receive a discharge of its indebtedness upon confirmation of the Plan. Nevertheless, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than as provided herein. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

### 9.3     **Plan Injunction**.

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. As of the Effective Date, all Holders of Claims or Equity Interests against Debtor shall be permanently enjoined, from (a) commencing or continuing any action or proceeding of any kind with respect to any such Claim or taking any act to recover

such Claim or Assets outside of the claims allowance procedures in effect in this Chapter 11 Case and set forth in the Plan; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or Order against Debtor, the Liquidating Trust, the Liquidating Trust Assets or the Liquidating Trustee on account of such Claim; (c) creating, perfecting, or enforcing any lien, claim, interest or encumbrance of any kind against Debtor, property of Debtor, the Assets, the Liquidating Trust Assets or Liquidating Trust on account of such Claim; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Debtor, the Liquidating Trust, the Liquidating Trust Assets or Liquidating Trustee on account of any such Claim.

**9.4    Exculpation.**

Except to the extent arising from fraud, willful misconduct or gross negligence, any and all claims, liabilities, causes of action, rights, damages, costs, and obligations held by any party other than the United States of America against Debtor, the Committee and its members, and/or each of the attorneys, accountants, agents, and other Professionals of Debtor, the Committee and its members, respectively, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any manner related to or in connection with (a) the Chapter 11 Case or any act or omission in connection with, arising out of, or related to the Chapter 11 Case; (b) any act or omission in connection with, arising out of, or related to the pre-confirmation sale of Debtor's assets pursuant to Section 363 of the Bankruptcy Code; (c) the formulation, negotiation, prosecution, or implementation of the Plan; (d) the solicitation of acceptances of the Plan; or (e) the Confirmation, consummation, or implementation of the Plan, will be deemed fully waived, barred, enjoined, released, and discharged in all respects, except as to rights, obligations, duties, claims, and responsibilities preserved, created, or established by terms of the Plan.

**9.5    Cancellation of Instruments and Agreements.**

Except for purposes of evidencing a right to Distributions under the Plan, or as otherwise provided in the Plan, on the Effective Date all agreements and other documents evidencing Claims or rights of any Holder of a Claim against Debtor, including without limitation all indentures, promissory notes, security agreements, financing statements, and deeds of trust evidencing such Claims, shall be canceled, terminated, and deemed null and void and of no force and effect as against Debtor.

**9.6    Vesting of Assets.**

Upon the Effective Date, and pursuant to Section 1141(b) of the Bankruptcy Code,  all property of the Estate shall vest in the Liquidating Trust, free and clear of all Claims, liens, encumbrances, charges, and other interests not specifically set forth in the Plan.  The Liquidating Trustee and its agents or attorneys shall dispose

of such property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

## SECTION 10      OTHER PROVISIONS OF THE PLAN.

### 10.1    Exemption from Securities Regulation.

To the extent the provisions of the Plan would, under applicable non-bankruptcy law, require registration for the offer or sale of a security, Plan Proponents shall be entitled to rely on the provisions of Section 1145(a) of the Bankruptcy Code.

### 10.2    Effectuating Documents and Further Transactions.

The Debtor shall file with the Court, and serve by ECF only, the Plan Documents no less than three (3) days prior to the commencement of the Confirmation Hearing.  Debtor and its agents and attorneys, and Liquidating Trustee and its agents and attorneys are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan.

### 10.3    Settlement Authority.

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), Debtor may compromise and settle objections to Claims against the Estate and as set forth herein, the Liquidating Trustee may compromise and settle various claims and Causes of Action that it may have against any Persons, whether or not specifically identified herein and notwithstanding any other provisions in the Plan the terms and conditions of any such compromise and settlement as set forth in the Final Order approving such compromise and settlement shall control.  Debtor and/or the Liquidating Trustee, as applicable, expressly reserve the right to seek Bankruptcy Court approval to compromise and settle Claims after the Effective Date consistent with the provisions of this Plan.

### 10.4    Cooperation.

The Liquidation Trust and Debtor agree and are obligated to cooperate with the other to fulfill and satisfy the terms of this Plan.  For example and not by way of limitation, as part of Debtor's responsibility to object to Claims, the Liquidating Trust shall keep Debtor advised of any impact upon Claims caused by the Liquidating Trust's resolution of Avoidance Actions.  Debtor shall protect and safeguard (and transition as requested by the Liquidating Trustee) all of its accounting records, electronic information and other information helpful to the

performance of the Liquidating Trust's duties.    Further, Debtor shall make reasonable effort to facilitate the Liquidating Trustee's retention of Debtor's former employees and access to information as may be necessary to aid the Liquidation Trustee's fulfillment of its duties, including the pursuit of Causes of Action.    The Liquidating Trustee shall reasonably compensate Debtor's current or former employees and Professionals with regard to aiding the Liquidating Trustee.

**10.5    Failure to Confirm the Plan or Consummate the Plan.**

If Confirmation or Consummation of the Plan or the Effective Date does not occur, then (a) the Plan shall be null and void; (b) any settlement or compromise embodied in the Plan, assumption or rejection of an executory contract or lease effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; (c) nothing contained herein or in the Plan shall constitute a waiver or release of any Claims or Causes of Action by or against Debtor or any other Person; (d) nothing contained in the Plan shall prejudice in any manner the rights of Debtor or any other Person; and (e) nothing contained herein or in the Plan shall constitute an admission of any sort by Debtor or any other Person.

**10.6    Retention of Causes of Action and Reservation of Rights.**

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court has entered the Confirmation Order. Neither the filing of the Plan, any statement or provision contained in the Plan, nor Debtor's taking of any action with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of Debtor's rights with respect to the Holders of Claims prior to the Effective Date.

In the event the Plan is not confirmed as described herein, including any modifications hereto, for any reason, nothing contained herein or in the Disclosure Statement shall be deemed to be a waiver or the relinquishment of any rights, claims or Causes of Action that Debtor, the Estate, or the Liquidating Trustee may have or which Debtor or the Liquidating Trustee may choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (a) any and all claims against any Person, to the extent such Person asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against Debtor, its officers, directors, or representatives and (b) the turnover of any property of the Estate.    In the event the Plan is confirmed, Debtor and the Liquidating Trustee shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff, and other legal or equitable defenses which Debtor had immediately prior to the Petition Date or the Estate had thereafter as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's legal and equitable rights may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.    Pursuant to

Section 1123(b) of the Bankruptcy Code, all Causes of Action, including Avoidance Actions, are hereby preserved by this Plan for all purposes notwithstanding the entry of the Confirmation Order occurrence of the Effective Date.  Further, the Liquidating Trust by and through the Liquidating Trustee shall constitute a representative of the Estate for purposes of Section 1123(b) and shall have standing for all purposes to pursue, prosecute, litigate and compromise Causes of Action.

## 10.7    Corporate Existence.

Debtor will continue to exist after the Effective Date to wind down its affairs, including investigating and filing objection to Claims.  It shall have all the powers of a corporation under applicable law.  Upon entry of the Confirmation Order, the Articles of Incorporation, By-Laws, and other corporate governance documents shall be deemed to be amended, if necessary, to conform to the provisions of the Plan and provide for the establishment of the Liquidating Trust to accept all of its assets, and the appointment of the Liquidating Trustee to administer the Liquidating Trust.

Upon entry of an appropriate order by the Bankruptcy Court approving the Final Report and closing the Chapter 11 Case, the corporate charter of Debtor shall be canceled.

## 10.8    Survival of Corporate Indemnities.

Any obligations of Debtor pursuant applicable state law, to indemnify directors, officers, agents, and/or employees, with respect to all present and future claims, actions, suits, and proceedings against Debtor or such directors, officers, agents, and/or employees, based upon any action or omission for or on behalf of Debtor shall not be discharged or impaired by Confirmation of the Plan.

## 10.9    Notice of Effective Date.

Debtor shall file a notice of the Effective Date as soon as practical after the Effective Date and shall serve such notice on all parties that are entitled to notice under Bankruptcy Rule 2002.

## 10.10    Substantial Consummation.

Upon the Initial Cash Distribution Date the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

## 10.11    Time.

In computing any period of time allowed or prescribed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply.  Debtor or the Liquidating Trustee,

as applicable, may seek the extension or modification of any period of time allowed or prescribed by the Plan, upon application to the Bankruptcy Court.

## 10.12  Modification of Plan.

The Plan Proponents may modify the Plan at any time before the entry of the Confirmation Order pursuant to Section 1127(a) of the Bankruptcy Code; and after the entry of the Confirmation Order, the Plan Proponents, or the Liquidating Trustee, as applicable, may, upon Order of the Bankruptcy Court, amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## SECTION 11        VOIDABLE TRANSFERS.

Debtor has not determined the existence or likely recovery of any preferential transfers under Section 547 of the Bankruptcy Code or fraudulent transfers under Section 548 of the Bankruptcy Code.  After the Effective Date, the Liquidating Trustee shall have the standing and authority to investigate and pursue all Avoidance Actions, including making demand upon Persons, compromising and settling claims and Causes of Action and asserting Causes of Action for the recovery of the Liquidating Trust.  The Plan reserves for the Liquidating Trustee the right to pursue Avoidance Actions and institute Causes of Action.  To the extent such recoveries are had, the recoveries, after deducting the costs of prosecution, shall be available for Distribution to Class 3 Claims on the Final Cash Distribution Date.

## SECTION 12        RETENTION OF JURISDICTION.

## 12.1  Bankruptcy Court Jurisdiction.

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, assets of Debtor shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date.  Except as otherwise provided in this Plan, subsequent to the Effective Date and until closing of the Chapter 11 Case by the Bankruptcy Court pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Bankruptcy Court shall retain exclusive jurisdiction over Debtor and the Chapter 11 Case, as well as the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Assets, to the fullest extent permitted by law, to determine all matters arising in, arising under, arising out of, or related to the Chapter 11 Case and the Plan, including without limitation, jurisdiction as follows:

### 12.1.1     Claims Resolution.

To liquidate all Disputed, contingent, or unliquidated Claims, to determine the type of Claims, to determine the allowance or disallowance of Claims, to approve the compromise and settlement of any Claims, to determine any

objections to the allowance of Claims, including issues relating to the subordination of Claims pursuant to Section 510 of the Bankruptcy Code and the amount thereof, and to determine any and all disputes among Holders of Claims with respect to their Claims or the ownership thereof.

### 12.1.2    Compensation of  Professionals.

To hear and determine applications for Professional Fees and Expenses and to resolve any dispute relating to any bills submitted by any Professional employed pursuant to order of the Bankruptcy Court and to hear and determine disputes relating to the fees and expenses of the Liquidating Trust Professionals, and post-Effective Date fees and expenses of Debtor's Professionals.

### 12.1.3    Controversies and Causes of Action.

To decide or resolve all controversies arising in any motions, adversary proceedings, contested or litigated matters, and any other matters that may be pending on or instituted by Debtor or the Liquidating Trustee, as applicable, after the Effective Date.

### 12.1.4    Recovery of Assets.

To determine any Causes of Action not compromised, released, or otherwise provided for by the Plan to recover all assets of Debtor and property of the Estate, wherever located.

### 12.1.5    Plan Interpretation and Enforcement.

To hear and determine all disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or any documents executed and delivered in connection with the Plan,  and to issue such orders, consistent with Section 1142 of the Bankruptcy Code, as may be necessary to effectuate Consummation and full and complete implementation of the Plan, including, without limitation, appropriate orders to protect Debtor and/or the Liquidating Trustee against actions taken by Holders of Claims.

### 12.1.6    Taxes.

To hear and determine matters concerning federal, state, and/or local taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

### 12.1.7    Other Matters Arising in the Chapter 11 Case.

To enforce, interpret, and determine any disputes arising in connection with any stipulations, Final Orders, the Final Sale Order, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter

11 Case (whether or not the Chapter 11 Case has been closed), including requests by the Liquidating Trustee for approval to act, and to hear and determine any other matter not inconsistent with the Bankruptcy Code and consistent with fulfilling the purpose and intentions set forth in the Plan.

### 12.1.8 **Modification.**

To confirm the Plan as modified pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect, omission or reconcile any inconsistency in the Confirmation Order, and for such other purposes as are set forth in Section 1127(b) of the Bankruptcy Code or in the Confirmation Order

### 12.1.9 **Disputed Claims Reserve.**

To resolve disputes concerning any reserve with respect to Disputed Claims and the administration thereof.

### 12.1.10 **Plan Distributions.**

To enforce the provisions of the Plan and the Liquidating Trust regarding Distributions to Holders of Allowed Claims.

### 12.1.11 **Final Decree.**

To enter a Final Decree closing the Chapter 11 Case.

## SECTION 13    NOTICES.

Any pleading, notice, or other document required or permitted to be made in accordance with this Plan shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid; and any such notice or request shall be deemed to have been given when actually received or when receipt is refused.  Notices and requests shall be delivered as follows:

If to Debtor:

Ashley S. Rusher
Blanco Tackabery & Matamoros, P.A.
P.O. Drawer 25008
Winston-Salem, NC  27114-5008
asr@blancolaw.com
Facimile:  336-293-9030
Street Address:  110 S. Stratford Road, Suite 500
Winston-Salem, NC  27104

If to Liquidating Trust Committee:

_____

_____

_____

With copy to:

Joseph M. Coleman
Kane Russell Coleman Logan PC
5051 Westheimer Road, 10th Floor
Houston, TX 77056
jcoleman@krcl.com
Facsimile:  214-777-4299

If to Liquidating Trustee:

Dan Pike
MEMA Financial Services Group, Inc.
PO Box 13966
Research Triangle Park, NC  27709-3966
dpike@memafsg.com
Facsimile:  919-549-8496

With copy to:

Joseph M. Coleman
Kane Russell Coleman Logan PC
5051 Westheimer Road, 10th Floor
Houston, TX 77056
jcoleman@krcl.com
Facsimile:  214-777-4299

## 13.1    **Designated Notice.**

Except as otherwise limited by prior Final Order of the Bankruptcy Court, Plan Proponents shall serve a copy of the Confirmation Order on all Holders of Claims and other parties in interest who have entered an appearance or filed a notice of appearance in this Chapter 11 Case.  From and after the Effective Date, Plan Proponents shall serve all future pleadings and notices by Designated Notice and any Holder of a Claim or other party directly impacted by such pleading or notice.

## SECTION 14          MISCELLANEOUS.

### 14.1    Headings.

The headings in the Disclosure Statement and Plan, including the headings of the Exhibits, are for convenience of reference only and shall not limit or otherwise affect the meanings thereof.

### 14.2    Successors and Assigns.

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, and lawful successor or assign of such Person.

### 14.3    Entire Agreement.

The Plan, and any supplements or amendments hereto, as confirmed, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

### 14.4    Severability.

Should any provision of the Plan be determined invalid, void, or unenforceable by the Bankruptcy Court prior to the Confirmation Date, Debtor may amend or modify the Plan to correct or delete the offending provision, or Debtor may request that the Bankruptcy Court alter and interpret such provision held to be invalid, void or unenforceable so that such provision shall then be applicable as so altered or interpreted.

The remainder of the provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by any holding, alteration or interpretation by the Bankruptcy Court regarding the invalidity or unenforceability of a discrete Plan provision.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.5    Governing Law.

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and the Bankruptcy Rules, the rights, duties, and obligations arising under the Plan and the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan

and corporate governance matters shall be governed by the law of the State of North Carolina, without giving effect to the principles of conflicts of law thereof.

*[Remainder of This Page Intentionally Left Blank – Signature Pages Follow]*

Respectfully submitted, this the ___ day of July, 2018.

**ASCO LIQUIDATING COMPANY**

By:    _____
        Charles A. Key, Jr., President

**COMMITTEE OF UNSECURED CREDITORS**

By:    _____
        James Stewart, Chairman

**EXHIBIT B**
**OPERATING REPORT**

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

IN RE:                              §
                                    §
ASCO LIQUIDATING COMPANY,           §        Case Number 18-50018
                                    §        Chapter 11
            Debtor.                 §

## MONTHLY OPERATING REPORT

Month: June, 2018                    Date Filed: January 8, 2018

Line of Business: Wholesale Auto Parts       NAISC Code: __4413__

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_Charles A. Key Jr._
Original Signature of Responsible Party

Charles A. Key, Jr.
Printed Name of Responsible Party

Questionnaire: *(All questions to be answered on behalf of the debtor.)*

| | | YES | NO |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☐ | ☒ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☒ | ☐ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME? No longer have employees | ☒ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☒ | ☐ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH? | ☒ | ☐ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☒ | ☐ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☒ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☐ | ☒ |

BTM:714721v1

Case 18-50018    Doc 348    Filed 07/26/18    Page 118 of 140
Case 18-50018    Doc 334    Filed 07/18/18    Page 2 of 20

| | | |
|---|---|---|
| 9. ARE YOU CURRENT ON YOUR CHAPTER 11 QUARTERLY FEE PAYMENT? | ☒ | ☐ |
| 10. HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☒ | ☐ |
| 11. DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☒ |
| 12. HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☒ |
| 13. DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? **As per court order [Docket Nos. 156 and 203]** | ☒ | ☐ |
| 14. HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH? | ☐ | ☒ |
| 15. DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH? **Debtor has canceled all insurance policies at this time.** | ☐ | ☒ |
| 16. HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH? | ☐ | ☒ |
| 17. HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY? | ☐ | ☒ |

### TAXES

| | | |
|---|---|---|
| DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX OBLIGATIONS? | ☐ | ☒ |

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR THE PAYMENT.

*(Exhibit A)*

### INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. A SUMMARY STATEMENT OF INCOME AND EXPENSES MAY BE SUBMITTED WITH THE PRIOR APPROVAL OF THE BANKRUPTCY ADMINISTRATOR.

TOTAL INCOME $ 10,302.68

#### SUMMARY OF CASH ON HAND

Cash on Hand at Start of Month $3,218,684.07

Cash on Hand at End of Month $3,085,406.46

PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU

TOTAL $3,085,406.46*

*(Exhibit B)*

*Includes funds held in trust at The Finley Group representing the Net Sale Proceeds from the Asset Sale

BTM:714721v1

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK ACCOUNTS THIS MONTH.  INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE PURPOSE AND THE AMOUNT.  A SUMMARY STATEMENT OF INCOME AND EXPENSES MAY BE SUBMITTED WITH THE PRIOR APPROVAL OF THE BANKRUPTCY ADMINISTRATOR.

TOTAL EXPENSES $   143,580.29

*(Exhibit C)*

## CASH PROFIT

INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)*                          $    10,302.88

EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)*                        $   143,580.29

CASH PROFIT (LOSS) FOR THE MONTH      $   (133,278.61)

*(Subtract Line C from Line B)*

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID.  THE LIST MUST INCLUDE THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE DEBT AND WHEN THE DEBT IS DUE. A SUMMARY STATEMENT OF ACCOUNTS PAYABLE, WITH AGEING INFORMATION, MAY BE SUBMITTED WITH THE PRIOR APPROVAL OF THE BANKRUPTCY ADMINISTRATOR. ALL UNPAID NON-TRADE PAYABLES MUST BE LISTED SEPARATELY IN DETAIL.

TOTAL PAYABLES     $    20,517.67

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD.  YOU SHOULD INCLUDE WHO OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE.  A SUMMARY STATEMENT OF ACCOUNTS RECEIVABLE, WITH AGEING INFORMATION, MAY BE SUBMITTED WITH THE PRIOR APPROVAL OF THE BANKRUPTCY DMINISTRATOR.  ALL UNPAID NON-TRADE RECEIVABLES MUST BE LISTED SEPARATELY, IN DETAIL.

TOTAL RECEIVABLES      $28,623.93

**Reimbursement due from FMP for Credit Card and Bank Fees – April, May and June, 2018**

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED BY THIS REPORT.

*(Exhibit F)*

BTM:714721v1

B 25C (Official Form 25C) (12/08)

## EMPLOYEES

NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED?                    284

NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT?                    0

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                                                      $119,641.65

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE? (includes $175,000 paid to Finley for sale related fees)
                                                                                             $556,077.84

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                                            $0.00

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                                            $0.00

## ADDITIONAL INFORMATION

(1) PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT, BALANCE
SHEET, STATEMENT OF CASH FLOWS, AND STATEMENT OF SHAREHOLDERS/PARTNER'S EQUITY
WHICH YOU PREPARE INTERNALLY.

(2) PLEASE ADD ANY INFORMATION, SUCH AS A REPORT OF ACTIVITIES, WHICH WOULD ASSIST A
REASONABLY INFORMED REVIEWER TO FULLY UNDERSTAND THE STATUS OF THIS BANKRUPTCY
CASE.

Debtor has continued to work during the month of June on formulating and drafting its
Disclosure Statement and Plan of Liquidation. Debtor has also worked on various claims
resolution matters.

BTM:714721v1

B 25C (Official Form 25C) (12/08)

# EXHIBIT A

## [TAXES]

## [NONE TO REPORT]

BTM:714721v1

B 25C (Official Form 25C) (12/08)

# EXHIBIT B AND C

## [CASH BASIS INCOME STATEMENT]

BTM:714721v1

EXHIBIT B

| | |
|---|---|
| IN RE: | Auto Supply Company, Inc. |
| CASE NO: | 18-50018 |

## CASH RECEIPTS AND DISBURSEMENTS

BEGINNING CASH POSITION is the same figure as the ENDING CASH POSITION of the prior month.

| | | |
|---|---|---|
| Lockbox | $ | (0.00) |
| Operating Account | | 201,145.75 |
| Group Health Care Account | | |
| FNB | | 3,017,538.32 |
| Total Beginning Balance | $ | 3,218,684.07 |

**Total**
**BEGINNING CASH POSITION**

Date:                              June 1, 2018

| | Lockbox 9133 | Wells Fargo Operating Account 8836 | Group Health Care Account 8828 | FNB 0093 Finley/Auto Disbursement Account | Total |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Redeposit | $ 157.15 | | | $ | 157.15 |
| Deposits | | 10,145.53 | | | 10,145.53 |
| **Total Cash Receipts** | | 10,302.68 | | | 10,302.68 |
| | | | | | |
| Transfer to Health Insurance Account | | (33.52) | 33.52 | | |
| **Total Transfers** | | (33.52) | 33.52 | | |
| | | | | | |
| Cash Disbursements: | | | | | |
| | | | | | |
| Sales Taxes | | | | | |
| Credit Card Fees/Bank Fees - Due from FMP | | (6,330.20) | | | (6,330.20) |
| | | | | | |
| Inventory Purchases | | | | | |
| | | | | | |
| Selling Expenses: | | | | | |
| Loyalty/Growth Incentives | | | | | |
| Promotions/Marketing | | | | | |
| | | | | | |
| Employee Expenses: | | | | | |
| Salaries, Wages and Fees | | (5,737.08) | | | (5,737.08) |
| Employment Benefits | | (8,488.21) | (33.52) | | (8,521.73) |
| Employee Reimbursements | | | | | |
| | | | | | |
| Delivery, Vehicle and Store Expenses: | | | | | |
| Delivery and Vehicle Fuel | | | | | |
| Delivery and Vehicle Maintenance | | | | | |
| Vehicle Leases | | | | | |
| Delivery Supplies | | | | | |
| Delivery and Freight | | | | | |
| Store Expenses | | (245.02) | | | (245.02) |
| | | | | | |
| Operating Expenses: | | | | | |
| Rents | | | | | |
| Utilities | | | | | |
| Telecommunications/Cell Phones | | | | | |
| Repairs | | | | | |
| Insurance | | (1,626.54) | | | (1,626.54) |
| Other Operating Leases/Contracts | | | | | |
| Hardware/Software Ecommerce Data | | | | | |
| Other General and Admin Expenses | | | | | |
| Janitorial | | | | | |
| Bank and Payroll Service Fees | | (1,294.92) | | (26.00) | (1,320.92) |
| E-Commerce | | (157.15) | | | (157.15) |
| | | | | | |
| Professional Fees/Court Fees | | | | (119,641.65) | (119,641.65) |
| US Bankruptcy Fees | | | | | |
| Other | | | | | |
| **Total Cash Disbursements** | $ | $ (23,879.12) | $ (33.52) | $ (119,667.65) | $ (143,580.29) |

**ENDING CASH POSITION**
**CASH BANK BALANCE**

Date:                              June 30, 2018

| | | |
|---|---|---|
| Lockbox Acct | $ | |
| Operating Account | | 187,535.79 |
| Group Health Care Account | | |
| FNB | | 2,897,870.67 |
| Total Ending Balance | $ | 3,085,406.46 |

**EXHIBIT B&C**

IN RE:                          Auto Supply Company, Inc.

CASE NO:                        18-50018

FINANCIAL STATEMENTS

as of                  6/30/2018

**INCOME STATEMENT - CASH BASIS**

| | | |
|---|---|---|
| Cash Receipts | $ | 10,303 |
| Cost of Goods Sold | | - |
| Gross Profit | | 10,303 |
| | | |
| Selling Expenses: | | |
| Loyalty/Growth Incentives | | - |
| Promotions/Marketing | | - |
| | | |
| Employee Expenses: | | |
| Salaries, Wages and Fees | | 5,737 |
| Employment Benefits | | 8,522 |
| Employee Reimbursements | | - |
| | | |
| Delivery, Vehicle and Store Expenses: | | |
| Delivery and Vehicle Fuel | | - |
| Delivery and Vehicle Maintenance | | - |
| Vehicle Leases | | - |
| Delivery Supplies | | - |
| Delivery and Freight | | - |
| Store Expenses | | 245 |
| | | |
| Operating Expenses: | | |
| Rents | | - |
| Utilities | | - |
| Telecommunications/Cell Phones | | - |
| Repairs | | - |
| Insurance | | 1,627 |
| Other Operating Leases/Contracts | | - |
| Hardware/Software Ecommerce Data | | - |
| Other General and Admin Expenses | | - |
| Janitorial | | - |
| Bank and Payroll Service Fees | | 1,321 |
| E-Commerce | | 157 |
| Credit Card Fees | | 6,330   Due from FMP |
| Professional Fees/Court Fees (Carve Out) | | 119,642 |
| US Bankruptcy Fees | | - |
| Other | | |
| **Total Expenses** | | 143,580 |
| | | |
| **Net Profit** | | (133,278) |

**EXHIBIT C**
Automotive Supply Company, Inc.
Cash Disbursements

Case #
6/1/2018 - 6/30/2018

18-50018

| Check # | Check Date | Total Amount | ACH/Wire | Checks | Cleared | Vendor Name | Line Item Description | outstanding |
|---|---|---|---|---|---|---|---|---|
| 300046 | 6/1/2018 | 79.56 | | 79.56 | 79.56 | ARCO Gases | Store Expense | |
| 300047 | 6/1/2018 | 157.15 | | 157.15 | 157.15 | Automotive Dist Netw | E-Commerce | |
| 300048 | 6/12/2018 | 920.00 | | 920.00 | 920.00 | Cliff Metcalf | Chapter 11 Team | |
| 300049 | 6/12/2018 | 900.00 | | 900.00 | 900.00 | Denise L Harris | Chapter 11 Team | |
| 300050 | 6/12/2018 | 1,626.54 | | 1,626.54 | 1,626.54 | DFB Corporation | Insurance | |
| 300051 | 6/12/2018 | 3,450.00 | | 3,450.00 | 3,450.00 | Karl Kapp | Chapter 11 Team | |
| 300052 | 6/12/2018 | 8,488.21 | | 8,488.21 | 8,488.21 | MetLife - Group Benefits | Employee Benefits | |
| 300053 | 6/12/2018 | 467.08 | | 467.08 | 467.08 | Sandra Huile | Chapter 11 Team | |
| 300054 | 6/12/2018 | 19.80 | | 19.80 | 19.80 | ADP Box #42875 | Payroll Fees | |
| 300055 | 6/22/2018 | 165.46 | | 165.46 | 165.46 | B & H Heating-Air Co | Store Expense | |
| | 6/1/2018 | 1,557.32 | 1,557.32 | | 1,557.32 | | Merchant Services - Due from FMP | |
| | 6/11/2018 | 1,275.12 | 1,275.12 | | 1,275.12 | | Analysis Fees - Bank Fees | |
| | 6/12/2018 | 4,712.48 | 4,712.48 | | 4,712.48 | | Merchant Services - Due from FMP | |
| | 6/22/2018 | 60.40 | 60.40 | | 60.40 | | TeleCheck Services- Due from FMP | |
| | 6/7/2018 | 33.52 | 33.52 | | 33.52 | | BCBS | |
| | 6/27/2018 | 119,641.65 | 119641.65 | | 119,641.65 | Kane, Russell Coleman | Professional Fees | |
| | 6/27/2018 | 26.00 | 26.00 | | 26.00 | | bank fee | |
| | | 143,580.29 | 127,306.49 | 16,273.80 | 143,580.29 | | | |

06/22/18 Deposits

| | | |
|---|---|---|
| Duke Energy - utility refunds | | 3,248.31 |
| Duke Energy - utility refunds | | 3,114.10 |
| Utica - auto property claim payments | | 2,000.00 |
| Municipalities - utility refunds | | |
| - City of Greensboro - $317.60 | | 317.60 |
| - City of Greensboro - $555.77 | | 555.77 |
| - City of Hickory - $68.11 | | 68.11 |
| Piedmont Natural Gas - utility refunds | | 838.51 |
| American Express - credit card rewards | | 3.13 |
| | | 10,145.53 |

B 25C (Official Form 25C) (12/08)

# EXHIBIT D

## [ACCOUNTS PAYABLE REPORT]

BTM:714721v1

**EXHIBIT D**
Auto Supply Company, Inc.
18-50018

Accounts Payable as of June 2018

| Amount | Vendor Name | Line Item Description | Comments |
|--------|-------------|----------------------|----------|
| 14,591.00 | Utica | Workers Comp Insurance | 2017 policy year premium audit results |
| 837.50 | Denise L Harris | Chapter 11 Team | |
| 4,162.50 | Karl Kapp | Chapter 11 Team | |
| 926.67 | Cliff Metcalf | Chapter 11 Team | |

$    20,517.67  Total Accounts Payable Post-Petition As of 06/30/2018

B 25C (Official Form 25C) (12/08)

# EXHIBIT E

# [ACCOUNTS RECEIVABLE REPORT]

BTM:714721v1

**EXHIBIT F**
**Auto Supply Company, Inc.**                        18-50018
**Cash Reconciliation**
**6/30/2018**

| | | |
|---|---|---:|
| Bank Balance -- Operating -- Wells Fargo | $ | 187,535.79 |
| Bank Balance -- Lockbox -- Wells Fargo | | - |
| FNB Disbursing Account | | 2,897,870.67 |
| Bank Balance -- Group Health Care Plan -- Wells Fargo | | - |
| | | 3,085,406.46 |
| Outstanding Checks | | (1,955.12) |
| Book Balance | | $ 3,083,451.34 |

**EXHIBIT F**
**Auto Supply Company, Inc.**
**18-50018**

Outstanding Checks as of          30-Jun-18

| Check # | Check Date | Check Amount | Vendor Name |
|---|---|---|---|
| 21778 | 1/2/2018 | 243.74 | ADP |
| 217781 | 1/2/2018 | 90.90 | CenturyLink |
| 217793 | 1/2/2018 | 1,094.21 | Piedmont Natural Gas |
| 217810 | 1/2/2018 | 44.23 | Charter Communications |
| 217811 | 1/2/2018 | 60.00 | Ed Chappell |
| | | **1,533.09** | **Pre-petition Checks Approved to Clear Post-Petition Still Outstanding** |
| | | | |
| 217993 | 2/16/2018 | 149.04 | Family Auto Service |
| 218035 | 2/19/2018 | 171.38 | Keith Miller |
| 218084 | 3/2/2018 | 73.60 | Tracie Binkley |
| 218140 | 3/19/2018 | 23.23 | O. F. Forrest, Jr. |
| 300022 | 4/25/2018 | 4.78 | City of Burlington(52 |
| | | **422.03** | **Post-Petition Checks Outstanding** |
| | $ | **1,955.12** | **Total Outstanding Checks** |

B 25C (Official Form 25C) (12/08)

# EXHIBIT F

# [BANK ACCOUNT STATEMENTS]

BTM:714721v1

Case 18-50018   Doc 334   Filed 07/18/18   Page 16 of 20

# WellsOne® Account

Account number: **432006**▪▪▪▪ ▪ June 1, 2018 - June 30, 2018 ▪ Page 1 of 1



AUTO SUPPLY COMPANY INC
GROUP HEALTH CARE PLAN
3740 N PATTERSON AVE
WINSTON SALEM NC 27105-3540

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

Write: Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA  94163

## Account summary

### WellsOne® Account

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 432006▪▪▪ | $0.00 | $33.52 | -$33.52 | $0.00 |

## Credits

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/07 | 33.52 | ZBA Balance Account Transfer From 432006▪▪▪▪ |
| | | $33.52 | Total electronic deposits/bank credits |
| | | $33.52 | Total credits |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/07 | 33.52 | < Business to Business ACH Debit - Blue NC Asoclaim AR Payment 0030-072109 Auto Supply Inc |
| | | $33.52 | Total electronic debits/bank debits |
| | | $33.52 | Total debits |

< *Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date.  This time frame does not apply to consumer accounts.*

## Daily ledger balance summary

| Date | Balance | Date | Balance |
|---|---|---|---|
| 05/31 | 0.00 | 06/07 | 0.00 |
| **Average daily ledger balance** | **$0.00** | | |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

(182)
Sheet Seq = 0173087
Sheet 00001 of 00001

# WellsOne® Account

Account number:   432006███   ■   June 1, 2018 - June 30, 2018   ■   Page 1 of 3



AUTO SUPPLY COMPANY INC
OPERATING ACCOUNT
3740 N PATTERSON AVE
WINSTON SALEM NC 27105-3540

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

Write:  Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA  94163

## Account summary

*WellsOne® Account*

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 432006███ | $201,145.75 | $10,302.68 | -$23,912.64 | $187,535.79 |

## Credits

### Deposits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| 06/19 | 06/20 | 157.15 | Reversal of Check Posted 6-19-18 Refer to Maker Our Ref: 6-19-18 00000000 |
| | | **$157.15** | **Total deposits** |

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/22 | 3,248.31 | Over The Counter Deposit |
| | 06/22 | 3,114.10 | Over The Counter Deposit |
| | 06/22 | 2,000.00 | Over The Counter Deposit |
| | 06/22 | 941.48 | Over The Counter Deposit |
| | 06/22 | 838.51 | Over The Counter Deposit |
| | 06/22 | 3.13 | Over The Counter Deposit |
| | | **$10,145.53** | **Total electronic deposits/bank credits** |
| | | **$10,302.68** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/01 | 1,557.32 | 06/01Bankcard Deposit -5021000118 |
| | 06/07 | 33.52 | ZBA Funding Account Transfer to 432006███ |
| | 06/11 | 1,275.12 | Client Analysis Srvc Chrg 180608 Svc Chge 0518 00000432006███ |
| | 06/12 | 660.54 | Bankcard Interchange Fee - 5021000117 |

(182)
Sheet Seq = 0173088
Sheet 00001 of  00003

Case 18-50018   Doc 334   Filed 07/18/18   Page 18 of 20

Account number:      8836  ▪  June 1, 2018 - June 30, 2018  ▪  Page 2 of 3



*Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/12 | 473.02 | Bankcard Interchange Fee - 5021000111 |
| | 06/12 | 471.89 | Bankcard Interchange Fee - 5021000103 |
| | 06/12 | 377.36 | Bankcard Interchange Fee - 5021000101 |
| | 06/12 | 341.37 | Bankcard Interchange Fee - 5021000125 |
| | 06/12 | 288.96 | Bankcard Interchange Fee - 5021000113 |
| | 06/12 | 276.90 | Bankcard Interchange Fee - 5021000109 |
| | 06/12 | 175.10 | Bankcard Interchange Fee - 5021000116 |
| | 06/12 | 144.40 | Bankcard Interchange Fee - 5021000108 |
| | 06/12 | 124.81 | Bankcard Discount Fee - 5021000117 |
| | 06/12 | 118.46 | Bankcard Interchange Fee - 5021000105 |
| | 06/12 | 95.69 | Bankcard Discount Fee - 5021000111 |
| | 06/12 | 81.98 | Bankcard Interchange Fee - 5021000106 |
| | 06/12 | 67.50 | Bankcard Discount Fee - 5021000103 |
| | 06/12 | 61.24 | Bankcard Discount Fee - 5021000101 |
| | 06/12 | 58.56 | 06/12Bankcard Chargeback -5021000117 |
| | 06/12 | 56.14 | Bankcard Discount Fee - 5021000125 |
| | 06/12 | 49.37 | Bankcard Discount Fee - 5021000113 |
| | 06/12 | 48.95 | Bankcard Fee - 5021000111 |
| | 06/12 | 45.24 | Bankcard Fee - 5021000117 |
| | 06/12 | 42.90 | Bankcard Discount Fee - 5021000109 |
| | 06/12 | 40.83 | Bankcard Fee - 5021000113 |
| | 06/12 | 40.33 | Bankcard Fee - 5021000105 |
| | 06/12 | 40.30 | Bankcard Fee - 5021000125 |
| | 06/12 | 37.31 | Bankcard Interchange Fee - 5021000190 |
| | 06/12 | 37.25 | Bankcard Fee - 5021000103 |
| | 06/12 | 36.76 | Bankcard Fee - 5021000116 |
| | 06/12 | 34.82 | Bankcard Fee - 5021000106 |
| | 06/12 | 34.66 | Bankcard Fee - 5021000108 |
| | 06/12 | 33.99 | Bankcard Fee - 5021000101 |
| | 06/12 | 33.05 | Bankcard Fee - 5021000109 |
| | 06/12 | 31.23 | Bankcard Discount Fee - 5021000116 |
| | 06/12 | 30.45 | Bankcard Interchange Fee - 5021000107 |
| | 06/12 | 29.06 | Bankcard Fee - 5021000190 |
| | 06/12 | 28.19 | Bankcard Fee - 5021000107 |
| | 06/12 | 27.39 | Bankcard Fee - 5021000122 |
| | 06/12 | 26.57 | Bankcard Fee - 5021000110 |
| | 06/12 | 23.59 | Bankcard Discount Fee - 5021000108 |
| | 06/12 | 22.66 | Bankcard Discount Fee - 5021000105 |
| | 06/12 | 17.00 | Bankcard Discount Fee - 5021000106 |
| | 06/12 | 16.50 | Bankcard Interchange Fee - 5021000122 |
| | 06/12 | 13.21 | Bankcard Interchange Fee - 5021000110 |
| | 06/12 | 5.89 | Bankcard Discount Fee - 5021000190 |
| | 06/12 | 5.55 | Bankcard Discount Fee - 5021000107 |
| | 06/12 | 2.89 | Bankcard Discount Fee - 5021000110 |
| | 06/12 | 2.62 | Bankcard Discount Fee - 5021000122 |

Account number:   8836   ■   June 1, 2018 - June 30, 2018   ■   Page 3 of 3



WELLS FARGO

*Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/21 | 30.40 | < Business to Business ACH Debit - Telecheck Inv062018D 180620 0380266524 Loop Road Auto Parts |
| | 06/21 | 30.00 | < Business to Business ACH Debit - Telecheck Inv062018D 180620 0380266485 Auto Supply CO Retail |
| | | **$7,638.84** | **Total electronic debits/bank debits** |

*< Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

**Checks paid**

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 300046 | 79.56 | 06/15 | 300050 | 1,626.54 | 06/18 | 300053 | 467.08 | 06/25 |
| 300047 | 157.15 | 06/19 | 300051 | 3,450.00 | 06/14 | 300054 | 19.80 | 06/18 |
| 300048 | 920.00 | 06/15 | 300052 | 8,488.21 | 06/18 | 300055 | 165.46 | 06/27 |
| 300049 | 900.00 | 06/12 | | | | | | |
| | | | | **$16,273.80** | **Total checks paid** | | | |
| | | | | **$23,912.64** | **Total debits** | | | |

**Daily ledger balance summary**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/31 | 201,145.75 | 06/14 | 189,217.31 | 06/21 | 178,022.80 |
| 06/01 | 199,588.43 | 06/15 | 188,217.75 | 06/22 | 188,168.33 |
| 06/07 | 199,554.91 | 06/18 | 178,083.20 | 06/25 | 187,701.25 |
| 06/11 | 198,279.79 | 06/19 | 177,926.05 | 06/27 | 187,535.79 |
| 06/12 | 192,667.31 | 06/20 | 178,083.20 | | |
| | Average daily ledger balance | **$191,185.27** | | | |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

 **First National Bank**

**Statement Ending 06/29/2018**

THE FINLEY GROUP INC                                    Page 1 of 2
Primary Account Number: 9552

4140 E. State Street
Hermitage, PA 16148

ADDRESS SERVICE REQUESTED

>031748 8879183 0001 092543 10Z

THE FINLEY GROUP INC
AUTOMOTIVE SUPPLY CO. INC.
212 S TRYON ST STE 1050
CHARLOTTE NC 28281-0003

### Managing Your Accounts

| | | |
|---|---|---|
| Online | | www.fnb-online.com |
| By Phone | | 1 800-555-5455 |
| By Mail | | 4140 E. State Street Hermitage, PA 16148 |

## Summary of Accounts

| Account Type | Account Number | Balance This Statement |
|---|---|---|
| FREE SMALL BUSINESS CHECKING | 9552 | $2,897,870.67 |

## FREE SMALL BUSINESS CHECKING - 9552

### Account Summary

| Date | Description | Amount | | |
|---|---|---|---|---|
| 06/01/2018 | Balance Last Statement | $3,002,538.32 | Minimum Balance | $2,897,870.67 |
| | 1 Credit(s) This Period | $15,000.00 | Average Ledger Balance | $2,995,331.32 |
| | 2 Debit(s) This Period | $119,667.65 | Average Available Balance | $2,995,331.32 |
| 06/29/2018 | Balance This Statement | $2,897,870.67 | | |

### Account Activity

| Post Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| | | | | $3,002,538.32 |
| 06/01/2018 | Balance Last Statement | | | $3,002,538.32 |
| 06/20/2018 | DEPOSIT | | $15,000.00 | $3,017,538.32 |
| 06/27/2018 | WIRE/OUT-201817800906;BNF KANE RUSSELL COLEMAN & LOGAN PC | $119,641.65 | | $2,897,896.67 |
| 06/27/2018 | FEE/DB-201817800906;Outgoing Domestic | $26.00 | | $2,897,870.67 |
| 06/29/2018 | Balance This Statement | | | $2,897,870.67 |

### Daily Balances

| Date | Amount | Date | Amount |
|---|---|---|---|
| 06/20/2018 | $3,017,538.32 | 06/27/2018 | $2,897,870.67 |



 Member FDIC

# EXHIBIT C
## SUMMARY OF MONTHLY REPORTS

## ASCO SUMMARY OF MONTHLY REPORTS

|  | INCOME | EXPENSE | CASH PROFIT | ACCOUNTS PAYABLES | ACCOUNTS RECEIVABLES |
|---|---|---|---|---|---|
| JANUARY | $1,651,595.00 | $1,317,204.11 | $372,604.00 | $34,224.69 | $2,236,205.52 |
| FEBRUARY | $2,038,207.16 | $1,619,013.00 | $419,194.00 | $372,827.93 | $1,864,238.54 |
| MARCH | $18,118,156.00 | $15,149,466.40 | $2,968,689.60 | $29,041.98 | $0.00 |
| APRIL | $13,626.26 | $119,928.74 | -$106,302.48 | $7,879.93 | $0.00 |
| MAY | $1,069.62 | $202,205.87 | -$201,136.25 | $22,211.13 | $22,293.75 |
| JUNE | $10,302.68 | $143,580.29 | -$133,278.61 | $20,517.67 | $28,623.93 |

**EXHIBIT D**
**LIQUIDATION ANALYSIS**

**ASCO LIQUIDATING COMPANY**
Chapter 11 Debtor in Possession, Case No. 18-50018

Liquidation Analysis as of June 30, 2018

| | LIQUIDATION PURSUANT TO PROPOSED PLAN | LIQUIDATION PURSUANT TO CHAPTER 7 |
|---|---|---|
| **CURRENT ASSETS:** | | |
| Cash on Hand | 3,085,406.46 | 3,085,406.46 |
| Pro Ration Escrow | 40,999.55 | 40,999.55 |
| Partland Contribution | 437,000.00 | 437,000.00 |
| Avoidance Actions Estimated Recovery | 300,000.00 | 300,000.00 |
| Total Current Assets | 3,863,406.01 | 3,863,406.01 |
| **FIXED ASSETS** | | |
| Motorcraft Inventory | 500,000.00 | 500,000.00 |
| Total Fixed Assets | 500,000.00 | 500,000.00 |
| **TOTAL ASSETS** | **4,363,406.01** | **4,363,406.01** |
| **CLAIMS:** | | |
| LESS SECURED CLAIM: | | |
| GM | 285,000.00 | 285,000.00 |
| Ford | 500,000.00 | 500,000.00 |
| Auto Plus Settlment | 50,000.00 | 50,000.00 |
| Total Secured Claims | **835,000.00** | **835,000.00** |
| LESS CH. 11 ADMINISTRATIVE CLAIMS: | | |
| Administrative Expenses | 180,000.00 | 180,000.00 |
| Professional Fees and Expenses | 500,000.00 | 265,000.00 |
| Statuory Fees | 17,875.00 | 0.00 |
| Priority Tax Claims | 46,703.00 | 46,703.00 |
| Total Ch. 11 Administrative Claims | **744,578.00** | **491,703.00** |
| LESS ESTIMATED CH. 7 ADMINISTRATIVE CLAIMS: | | |
| Trustee's Commission | 0.00 | 155,502.00 |
| Professional Fees | 0.00 | 200,000.00 |
| Total Ch. 7 Administrative Claims | 0.00 | **355,502.00** |
| **TOTAL SECURED AND ADMINISTRATIVE CLAIMS:** | **1,579,578.00** | **1,682,205.00** |
| Estimated General Unsecured Claims | 6,901,286.66 | 6,901,286.66 |
| DEBTOR'S ASSETS AVAILABLE FOR DISTRUBUTION ON ALLOWED UNSECURED CLAIMS: | **2,783,828.00** | **2,681,201.00** |
| **Distribution as a percentage of total claims** | **0.40** | **0.39** |

LIQUIDATION ANALYSIS NOTES AND ASSUMPTIONS: