UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                                  §
                                        §
ASCO LIQUIDATING COMPANY,               §        Case Number 18-50018
                                        §        Chapter 11
                          Debtor.       §

---

**MOTION OF DEBTOR-IN-POSSESSION FOR ORDER PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AUTHORIZING
THE PRIVATE SALE OF MOTORCRAFT® INVENTORY TO ELLIOTT
AUTO SUPPLY, INC. d/b/a FACTORY MOTOR PARTS FREE AND CLEAR
OF ALL LIENS, CLAIMS, INTEREST, AND ENCUMBRANCES AND
TRANSFERRING SUCH LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES  TO THE PROCEEDS OF SALE**

---

ASCO Liquidating Company, Debtor-in-Possession herein (the "Debtor"), by and through counsel, and pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1) and (f) and Federal Rule of Bankruptcy Procedure 6004, moves the Court for an order authorizing Debtor to sell the Motorcraft® Inventory, defined below, to Elliott Auto Supply, Inc. d/b/a Factory Motor Parts ("FMP"), free and clear of all liens, claims, interests and encumbrances, and transferring such liens, claims, interests, and encumbrances to the proceeds of sale ("Motion").  In further support of the Motion, Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of Debtor's Chapter 11 case and this Motion in this District is proper pursuant to 28

U.S.C. § 1408.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 363(b)(1) and (f) ("Bankruptcy Code"), as augmented by Federal Rules of Bankruptcy Procedure 2002 and 6004 ("Bankruptcy Rule" or "Bankruptcy Rules").

## FACTS

2.      Debtor is a corporation organized and existing under the laws of the State of North Carolina.  Its principal business was the supply of original equipment manufacturer automotive replacement parts ("OEM Parts") and aftermarket automotive replacement parts ("Aftermarket Parts") for passenger vehicles and light duty trucks to automotive repair professionals.  Its customers ranged from franchised automotive dealers, independent automotive dealers, repair shops, automotive fleets, government garage facilities, to the individual automobile enthusiast.

3.      On January 8, 2018 (the "Petition Date"), Debtor commenced a case under Chapter 11 of Title 11, United States Code in this Court.  Debtor remains in possession of some assets and continues to operate its business to wind down its affairs as Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No trustee or examiner has been appointed in Debtor's Chapter 11 case.  An official committee of unsecured creditors has been appointed herein pursuant to Section 1102 or the Bankruptcy Code.

5.      On January 10, 2018, Debtor filed a motion to sell substantially all of its assets to a stalking horse bidder, or other successful bidder, at an auction sale ("Sale and Auction Bidding Procedures Motion")[Docket No. 38].   The Court entered an interim order on January 31, 2018, approving, *inter alia*, the form of asset purchase agreement, the auction bidding procedures, and the notice of auction sale ("Sale and Auction Bidding Procedures Order") [Docket No. 147].   The Court entered a final order on March 1, 2018, approving the sale of the assets to FMP, the successful bidder at the auction sale, free and clear of liens, claims and encumbrances, transferring liens, claims and encumbrances to the proceeds of sale, and authorizing the assumption and assignment of certain executory contracts and leases in connection with the sale of the assets ("Final Sale Order") [Docket No. 203].

6.      Debtor and FMP closed the sale of the assets on March 12, 2018.

7.      In connection with the sale of the assets, Debtor did not sell its Motorcraft® and Ford Aftermarket Parts and products ("Motorcraft® Inventory"). Debtor remains in possession of the Motorcraft® Inventory.   Attached hereto as **Exhibit A** and incorporated herein by reference is a true and accurate summary of all Motorcraft® Inventory (A detailed listing consisting of 160 pages will be attached to the Purchase Agreement.  If any party in interest would like to review the full inventory listing or obtain a copy thereof, it may contact Ashley S. Rusher, Debtor's counsel, and request such a copy).

8.      Debtor had a Warehouse Distributor Sales Agreement ("Distributor Agreement") with Ford Motor Company ("Ford") to market and sell the Motorcraft® Inventory at its Retail Stores, which Distributor Agreement has been modified, amended and renewed from time to time.   Debtor has been a Motorcraft® distributor since 2002.   Debtor purchased Motorcraft® Inventory on credit terms from Ford ("Ford Credit Account") to secure the debt, Ford asserts that it obtained a purchase money security interest in the Motorcraft® Inventory sold to Debtor pursuant to a Security Agreement executed by Debtor on September 14, 2014.  Ford asserts that the current outstanding balance owed under the Ford Credit Account as of the petition date is $3,040,981.00.  Ford subordinated its liens to Wells Fargo by written Subordination Agreement dated August 28, 2014.  Wells Fargo has been paid in full in this case pursuant to the Final Sale Order.  True and accurate copies of the Security Agreement, UCC-1 Financing Statements and Subordination Agreement are attached to Ford's Proof of Claim [Claim No. 32], which is incorporated herein by reference.

9.      Debtor has received an offer from FMP, to purchase the Motorcraft® Inventory for a purchase price in the amount of $150,000.00.  The purchase price is considerably less than Debtor's cost and book value reflected in its Schedules and the value provided in the Ford Claim.  Attached hereto as **Exhibit B** is a true and accurate copy of the Purchase Offer.

10.     Based upon its due diligence, Debtor is informed and believes that the liquidation value of the Motorcraft® Inventory has been impacted due to three

separate issues.  First, much of the Motorcraft® Inventory consists of superseded and obsolete parts (parts that have been replaced by newer versions and which are no longer marketed and sold by Ford).  Second, yet another category of the Motorcraft® Inventory is stale, inasmuch as it has been sitting on Debtor's shelves awaiting sale for more than twelve (12) months.  While this category of stale inventory is not superseded or obsolete, it consists of parts which do not sell with such frequency that keeping them in stock provides considerable value for Debtor, or a purchaser.  Third, another category of the Motorcraft® Inventory consists of items not supplied directly by Ford, but by other suppliers bearing the Motorcraft® label, such as batteries, oil, and lubricants.  These items have a short shelf life, are not returnable to Ford, and require special and costly disposal methods.

11.    FMP has offered to purchase the entirety of the Motorcraft® Inventory, and has agreed to pay the cost of proper disposal of the superseded and obsolete parts and the safe and proper disposal of the batteries, oil and lubricants, as required.  This provides additional value to Debtor, which will be relieved of the obligation and cost to dispose of such inventory.

12.    The Motorcraft® Inventory has been tested in the marketplace.  It was available for sale in the auction sale separately, or in combination with the other Assets.  Only one bidder, Icahn Automotive Group, included the Motorcraft® Inventory in its bid.  It's opening bid for the Motorcraft® Inventory was in the amount of $150,000.00.  Since the auction sale, Debtor has continued to market the Motorcraft® Inventory to various suppliers in the industry.  It has only received

interest from two other potential purchasers, one offer that was for more than $150,000.00, but then withdrawn, and another for $150,000.00, the amount of the FMP offer. Debtor believes the FMP offer is superior to the other comparable offer, inasmuch as the other offer required shipping and handling charges, and the FMP offer does not. Debtor believes the offer from FMP equals or exceeds any offer which Debtor might otherwise receive in a liquidation of the Motorcraft® Inventory by public auction.

13. Recognizing the depressed liquidation value, and to avoid a surrender of the Motorcraft® Inventory to Ford under a plan of liquidation, and the attendant cost associated with the surrender, Ford has consented to the sale of its collateral for the purchase price of $150,000.00, provided its lien attaches to the sale proceeds, and all sale proceeds are paid over to Ford at closing of the sale to FMP.

14. In addition, Debtor has negotiated with Ford for Ford to credit against its secured claim the additional amount of $350,000.00, thereby acknowledging a total credit against the secured claim of Ford in the amount of $500,000.00. Accordingly, the liquidation value of the Motorcraft® Inventory realized with the combined cash sale price and the Ford credit equal approximately thirty-five percent (35%) of book value.

15. Contemporaneous with the filing of this Motion, Debtor has filed a Motion to Approve Compromise and Settlement of the secured claim and unsecured deficiency claim of Ford in this case, based upon the above-stated agreement to provide the additional credit against the Ford secured claim.

## RELIEF REQUESTED

16.    By this Motion, Debtor seeks an order authorizing Debtor to sell the Motorcraft® Inventory to FMP, free and clear of all liens, claims, interests and encumbrances, and transferring such liens, claims, interests, and encumbrances to the proceeds of sale pursuant to Section 363(b)(1) and (f) of the Bankruptcy Code.

17.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, Section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy Rule 6004(f)(1) states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." See Fed. R. Bankr. P. 6004 (f)(1).

18.    Courts within the Fourth Circuit have permitted pre-confirmation sales of the debtor's assets where a "sound business purpose" exists for the sale. See *In re The Lady H. Coal Company, Inc.*, 193 B.R. 233, 243 (Bankr. S.D.W.V. 1996) (applying the "sound business purpose" rule); *In re WBQ P'ship*, 189 B.R. 97, 102-04 (Bankr. E.D.V.A. 1995) (same); *In re Naron & Wagner, Chartered*, 88 B.R. 85, 87-88 (Bankr. D.Md. 1988) (applying the "sound business purpose" rule). See also, *In re Charlotte Commercial Grp., Inc.*, 01-52684, 2002 WL 31055247 (Bankr. M.D.N.C. July 1, 2002).

19.     Once the debtor states a valid business justification for the transaction, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). The business judgment rule creates a presumption of reasonableness and protects a debtor's management from judicial second-guessing. *See id.*

20.     In addition, under Section 105(a) of the Bankruptcy Code, the Court has equitable powers to issue any order or decree that it is in the interest of preserving the value of the debtor's estate. *See, e.g., Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 710 (4th Cir. 2011) (quoting *Menard–Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 701 (4th Cir. 1989)); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988).

21.     In Debtor's business judgment the offer from FMP is the highest and best offer it can achieve for the sale of the Motorcraft® Inventory. In addition, Ford consents to the sale of the Motorcraft® Inventory to FMP and supports the Motion.

22.     Pursuant to Section 363(f) of the Bankruptcy Code, Debtor seeks authority to sell the Motorcraft® Inventory free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens and Encumbrances"), with such Liens and Encumbrances to attach to the proceeds of sale in the same order and

priority as exists on the Motorcraft® Inventory.  Section 363(f) of the Bankruptcy

Code provides as follows:

> 1.     The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (a)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (b)     such entity consents;
>
> (c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
>
> (d)     such interest is in bona fide dispute; or
>
> (e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
> 11 U.S.C. § 363(f).

23.     Ford consents to the sale of the Motorcraft® Inventory to FMP and the

transfer of its lien to proceeds, provided Ford receive at the closing the sale

proceeds.  In addition, Ford has agreed to provide a credit against its secured claim

over and above the purchase price so that Debtor will realize approximately a

thirty-five percent (35%) liquidation value for the Motorcraft® Inventory.

24.     Debtor is not aware of any other Lien and Encumbrance in the

Motorcraft® Inventory.  To the extent that any creditor asserting a valid interest in

and against the Motorcraft® Inventory  does not consent to the sale, Debtor believes

that such creditor could be compelled to accept a money satisfaction of such interest

in accordance with Section 363(f)(5).

25.     Debtor submits that a sale of the Motorcraft® Inventory is in the best interests of the estate and its creditors.  The sale of the Motorcraft® Inventory will meaningfully reduce the allowed claim of Ford by an additional $350,000.00 over the amount of the purchase price, thereby reducing the overall deficiency claim of Ford in the general unsecured creditor class.

26.     The Committee has been involved in the negotiations with Ford, has reviewed the proposed sale and claim resolution with Ford and supports the Motion.

## NOTICE AND PRIOR APPLICATION

27.     This Motion has been served on the Bankruptcy Administrator for the Middle District of North Carolina, counsel for Committee, FMP, counsel for Ford, and all other parties requesting notice in this case. Notice of this Motion has been served on all creditors and parties requesting notice. In light of the nature of the relief requested herein, Debtor submits that no other or further notice is necessary or required.

WHEREFORE, Debtor respectfully requests the Court enter an order authorizing Debtor to sell the Motorcraft® Inventory to FMP free and clear of liens, claims, interests and encumbrances, and transfer said liens, claims, interests and encumbrances to the proceeds of sale to the same extent and priority as existed in the Motorcraft® Inventory, and for such other and further relief as the court deems just and proper.

This the 16th day of August, 2018.

/s/ Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
*Attorney for Debtor-in-Possession*

OF COUNSEL:

BLANCO TACKABERY
& MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
E-mail: asr@blancolaw.com

# EXHIBIT A

| Whse | On Hand | In Trans | On Hand + InTrans | Exchange Cost | Ext Exchange Cost | Ext Core Price | Total Value |
|---|---|---|---|---|---|---|---|
| **101 Total** | 31,712 | 4 | 31,716 | $ 312,328.11 | $ 924,728.12 | $ 67,407.00 | $ 992,135.12 |
| **103 Total** | 1,262 | - | 1,262 | $ 19,378.58 | $ 24,593.35 | $ 765.00 | $ 25,358.35 |
| **105 Total** | 1,192 | 30 | 1,222 | $ 19,917.60 | $ 24,389.10 | $ 645.00 | $ 25,034.10 |
| **106 Total** | 968 | - | 968 | $ 15,896.66 | $ 18,614.15 | $ 420.00 | $ 19,034.15 |
| **108 Total** | 2,422 | - | 2,422 | $ 21,608.42 | $ 43,195.83 | $ 1,660.00 | $ 44,855.83 |
| **109 Total** | 1,444 | 25 | 1,469 | $ 28,958.13 | $ 34,669.88 | $ 900.00 | $ 35,569.88 |
| **110 Total** | 810 | - | 810 | $ 11,161.50 | $ 14,040.23 | $ 100.00 | $ 14,140.23 |
| **111 Total** | 1,487 | - | 1,487 | $ 23,665.20 | $ 35,912.94 | $ 6,620.00 | $ 42,532.94 |
| **113 Total** | 2,987 | - | 2,987 | $ 47,101.64 | $ 68,215.22 | $ 3,385.00 | $ 71,600.22 |
| **116 Total** | 1,170 | - | 1,170 | $ 15,672.03 | $ 21,088.28 | $ 850.00 | $ 21,938.28 |
| **117 Total** | 1,933 | 33 | 1,966 | $ 24,614.05 | $ 34,387.77 | $ 1,435.00 | $ 35,822.77 |
| **118 Total** | 861 | 1 | 862 | $ 2,613.52 | $ 7,965.06 | $ 120.00 | $ 8,085.06 |
| **122 Total** | 1,094 | - | 1,094 | $ 20,585.28 | $ 24,060.41 | $ 865.00 | $ 24,925.41 |
| **125 Total** | 1,566 | - | 1,566 | $ 30,273.32 | $ 36,385.40 | $ 1,210.00 | $ 37,595.40 |
| **192 Total** | 8 | - | 8 | $ 80.67 | $ 645.36 | $ 120.00 | $ 765.36 |
| **907 Total** | 41 | - | 41 | $ 102.24 | $ 187.07 | $ - | $ 187.07 |
| **992 Total** | 14 | - | 14 | $ 155.13 | $ 1,116.97 | $ 210.00 | $ 1,326.97 |
| **995 Total** | 1 | - | 1 | $ 80.67 | $ 80.67 | $ 15.00 | $ 95.67 |
| **Grand Total** | 50,972 | 93 | 51,065 | $ 594,192.73 | $ 1,314,275.81 | $ 86,727.00 | $ 1,401,002.81 |

# EXHIBIT B

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT ("Agreement") is entered into the 15th day of August, 2018, by and between Elliott Auto Supply Co., Inc., dba Factory Motor Parts, ("FMP"), and ASCO Liquidating Company ("Debtor") for the purchase by FMP of certain inventory from Debtor as describe below.

## RECITALS

DEBTOR owns and is in possession of certain Ford Motorcraft® branded inventory set forth on Exhibit A (collectively the "Motorcraft® Inventory");

DEBTOR wishes to sell, transfer, convey, assign and deliver such Motorcraft® Inventory to FMP as set forth in this Agreement; and

FMP has offered to purchase the Motorcraft® Inventory upon the terms and subject to the conditions as provided herein.

DEBTOR has commenced a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Middle District of North Carolina, Winston-Salem Division (the "Bankruptcy Court"); and

THE TRANSACTION contemplated by this Agreement (the "Transaction") will be consummated pursuant to a Sale Order (as hereinafter defined) to be entered in the Bankruptcy Case under Section 363 and other applicable provisions of the Bankruptcy Code, and the Transaction and this Agreement are subject to the approval of the Bankruptcy Court.

NOW THEREFORE, IN CONSIDERATION OF the foregoing premises and the following promises, the parties agree as follows:

1.    **Purchase of Inventory**.  Debtor agrees to sell, transfer and deliver to FMP, and FMP agrees to purchase, acquire and accept from Debtor, all right, title and interest of Debtor in and to all of the Motorcraft® Inventory owned by Debtor.

2.    **Purchase Price**.  In consideration for the sale, transfer and delivery of the Motorcraft® Inventory, at the Closing, FMP shall deliver to Seller ONE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($150,000.00) (the "Purchase Price") by wire transfer to a bank account (or accounts) designated by Debtor in writing no later than one (1) day prior to the Closing Date.

3.    **363 Sale**.  The Motorcraft® Inventory shall be sold pursuant to, and to the fullest extent permitted by, 11 U.S.C. § 363(f) and all other applicable laws free and clear of any and all liens, security interests, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), and interests, and in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on, or subsequent to the date on which Debtor filed the Bankruptcy Case, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims"), with any Liens and Claims to attach only to the proceeds of sale with the same priority, validity, force and effect as they existed with respect to the Motorcraft® Inventory prior to Closing.

BTM:717623v2

4.  **Closing and Transfer of Inventory to FMP.** The closing of the purchase and sale of the Motorcraft® Inventory may take place immediately after, but in no event later than fourteen (14) days after the entry of an order approving the sale by the Bankruptcy Court (the "Closing"). FMP shall take possession of the Motorcraft® Inventory at Closing.

5.  **Bill of Sale.** Debtor will deliver to FMP at Closing a Bill of Sale in a form reasonabley satisfactory to Debtor and FMP, duly executed by Debtor.

6.  **Bankruptcy Court Approval Required.** Debtor and FMP acknowledge and agree that the Bankruptcy Court's entry of an order approving the sale and the Transaction contemplated hereby (the "Sale Order") is required in order for Debtor and FMP to consummate the Transaction contemplated hereby and that the requirement that the Sale Order be entered is a condition that cannot be waived by any party hereto. The Sale Order shall be reasonably satisfactory to FMP and contain certain findings, including without limitation that (i) FMP is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and is thereby entitled to the protection afforded a good faith, arms'-length purchaser; (ii) the Purchase Price is fair and reasonable; (iii) this Agreement was negotiated at arms' length; and (iv) the sale of the Assets hereunder was conducted in a "non-collusive manner" within the meaning of Section 363(n) of the Bankruptcy Code.

7.  **Debtor's Warranties and Representations.** Debtor does hereby covenant, represent, and warrant to FMP that, as of the Closing Date and subject to the approval of the Bankruptcy Court, Debtor will convey at the Closing title to all the Motorcraft® Inventory free and clear of all Liens and Claims of any kind whatsoever. **The Motorcraft® Inventory is being sold "as is" and "where is" and FMP hereby acknowledges and agrees that, except as otherwise expressly provided herein, Debtor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Motorcraft® Inventory. This includes any representation as to the merchantability or fitness of the Motorcraft® Inventory for any particular purpose. Without in any way limiting the foregoing, Debtor hereby disclaims any warranty, expressed or implied, of merchantability or fitness for any particular purpose as to any portion of the Motorcraft® Inventory. FMP further acknowledges that it has conducted an independent inspection and investigation of the physical condition of the Motorcraft® Inventory and all such matters relating to or affecting the Motorcraft® Inventory as said party deems necessary or appropriate to the extent that they desire such. FMP will accept the Motorcraft® Inventory at Closing "as is" and "where is."**

8.  **Incorporation by Reference.** The Recitals are hereby incorporated into and made a part of this Agreement by this reference.

THE PARTIES have made this Agreement effective as of the date first written above.

ELLIOTT AUTO SUPPLY CO., INC.

By: _____

Printed Name: Richard S. Lonson

Title: Chief Financial Officer

ASCO LIQUIDATING COMPANY

By: _Charles A. Key Jr._

Printed Name: Charles A. Key, Jr.

Title: President

BTM:717623v2

**EXHIBIT A**

**Motorcraft® Branded Inventory**

(see attached)

| Whse | On Hand | In Trans | On Hand + InTrans | Exchange Cost | Ext Exchange Cost | Ext Core Price | Total Value |
|---|---|---|---|---|---|---|---|
| **101 Total** | 31,712 | 4 | 31,716 | $ 312,328.11 | $ 924,728.12 | $ 67,407.00 | $ 992,135.12 |
| **103 Total** | 1,262 | - | 1,262 | $ 19,378.58 | $ 24,593.35 | $ 765.00 | $ 25,358.35 |
| **105 Total** | 1,192 | 30 | 1,222 | $ 19,917.60 | $ 24,389.10 | $ 645.00 | $ 25,034.10 |
| **106 Total** | 968 | - | 968 | $ 15,896.66 | $ 18,614.15 | $ 420.00 | $ 19,034.15 |
| **108 Total** | 2,422 | - | 2,422 | $ 21,608.42 | $ 43,195.83 | $ 1,660.00 | $ 44,855.83 |
| **109 Total** | 1,444 | 25 | 1,469 | $ 28,958.13 | $ 34,669.88 | $ 900.00 | $ 35,569.88 |
| **110 Total** | 810 | - | 810 | $ 11,161.50 | $ 14,040.23 | $ 100.00 | $ 14,140.23 |
| **111 Total** | 1,487 | - | 1,487 | $ 23,665.20 | $ 35,912.94 | $ 6,620.00 | $ 42,532.94 |
| **113 Total** | 2,987 | - | 2,987 | $ 47,101.64 | $ 68,215.22 | $ 3,385.00 | $ 71,600.22 |
| **116 Total** | 1,170 | - | 1,170 | $ 15,672.03 | $ 21,088.28 | $ 850.00 | $ 21,938.28 |
| **117 Total** | 1,933 | 33 | 1,966 | $ 24,614.05 | $ 34,387.77 | $ 1,435.00 | $ 35,822.77 |
| **118 Total** | 861 | 1 | 862 | $ 2,613.52 | $ 7,965.06 | $ 120.00 | $ 8,085.06 |
| **122 Total** | 1,094 | - | 1,094 | $ 20,585.28 | $ 24,060.41 | $ 865.00 | $ 24,925.41 |
| **125 Total** | 1,566 | - | 1,566 | $ 30,273.32 | $ 36,385.40 | $ 1,210.00 | $ 37,595.40 |
| **192 Total** | 8 | - | 8 | $ 80.67 | $ 645.36 | $ 120.00 | $ 765.36 |
| **907 Total** | 41 | - | 41 | $ 102.24 | $ 187.07 | $ - | $ 187.07 |
| **992 Total** | 14 | - | 14 | $ 155.13 | $ 1,116.97 | $ 210.00 | $ 1,326.97 |
| **995 Total** | 1 | - | 1 | $ 80.67 | $ 80.67 | $ 15.00 | $ 95.67 |
| **Grand Total** | 50,972 | 93 | 51,065 | $ 594,192.73 | $ 1,314,275.81 | $ 86,727.00 | $ 1,401,002.81 |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                                      §
                                            §
ASCO LIQUIDATING COMPANY,                   §         Case Number 18-50018
                                            §              Chapter 11
                            Debtor.         §

---

## CERTIFICATE OF SERVICE

---

The undersigned does hereby certify that she has this date served a copy of the **MOTION OF DEBTOR-IN-POSSESSION FOR ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE PRIVATE SALE OF MOTORCRAFT® INVENTORY TO ELLIOTT AUTO SUPPLY, INC. d/b/a FACTORY MOTOR PARTS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTEREST, AND ENCUMBRANCES AND TRANSFERRING SUCH LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO THE PROCEEDS OF SALE** through the Court's CM/ECF system on those parties on the attached list, and placing said copies in a first-class mail envelope, postage prepaid, and depositing same with the United States Postal Service, addressed to the parties on the attached list designated as "First Class Mail".

This the 16th day of August, 2018.

/s/Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
*Proposed Attorney for Debtor-in–Possession*

OF COUNSEL:

**BLANCO TACKABERY
& MATAMOROS, P.A.**
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
E-mail: asr@blancolaw.com

BTM: 706550v2

PARTIES SERVED
PAGE 1 OF 2
CASE NO. 18-50018

William P. Miller
U.S. Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC  27401

Wells Fargo Bank, NA
Attn:  Susan C. Carr
301 South College Street, 5th Floor
Charlotte, NC  28202

William H. Schrag, Esq.
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017

Kevin L. Denny, Esq.
McGuireWoods, LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202

Felton E. Parrish, Esq.
Hull & Chandler, P.A.
1001 Morehead Square Drive,
Suite 450
Charlotte, NC 28203

Jennifer B. Lyday, Esq.
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104

John J. Kane, Esq.
Kane Russell Coleman Logan PC
1601 Elm Street, Suite 3700
Dallas, TX 75201

Joseph M. Coleman, Esq.
Kane Russell Coleman Logan PC
1601 Elm Street, Suite 3700
Dallas, TX 75201

Ashley A. Edwards
PARKER POE
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202

Duane M. Geck
Donald H. Cram, III
SEVERSON & WERSON
One Embarcadero Center, Suite 2600
San Francisco, CA  94111

Thomas L. Ogburn, III
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601

Jeremy M. Downs
GOLDBERG KOHN LTD
55 East Monroe Street
Chicago, IL  60603-5792

Lawrence A. Lichtman
E. Todd Sable
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226

Adam Lawton Alpert, Esq.
BUSH ROSS, P.A.
P.O. Box 3913
Tampa, FL 33601-3913

John H. Maddock, III, Esq.
McGuireWoods, LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219

<u>Via First Class Mail</u>
North Carolina Department of
Revenue
Bankruptcy Unit
P.O. Box 1168
Raleigh, NC  27602

<u>Via First Class Mail</u>
Internal Revenue Service
P.O. Box 7364
Philadelphia, PA  19101

Angela N. Offerman, Esq.
Kane Russell Coleman Logan PC
5051 Westheimer Road, 10th Floor
Houston, TX 77056

John A. Northen
Vicki L. Parrott
NORTHEN BLUE, LLP
1414 Raleigh Road, Suite 435
Chapel Hill, NC 27517

William Robert Cherry, Jr.
Marshall, Williams & Gorham, LLP
14 S. Fifth Avenue
Wilmington, NC 28401